## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————
)
MAMADOU ALPHA BAH, individually )
and on behalf of all other similarly )
situated individuals, )
)
    Plaintiff, )
)
    v. )       Civil Action No. 1:17-cv-12542
)
ENTERPRISE HOLDINGS, INC. and )
ENTERPRISE RENT-A-CAR )
COMPANY OF BOSTON, LLC., )
)
    Defendants. )
———————————————————————)

## DEFENDANT ENTERPRISE HOLDINGS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, <u>MOTION FOR SUMMARY JUDGMENT</u>

### (Leave to File Granted on February 15, 2018)

Jason C. Schwartz (admitted *pro hac vice*)
Joshua S. Lipshutz, BBO #675305
Ryan C. Stewart (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

Barry J. Miller (BBO No. 661596)
Hillary J. Massey (BBO No. 669600)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Fax: (617) 946-4801
bmiller@seyfarth.com
hmassey@seyfarth.com

*Counsel for Defendant Enterprise Holdings, Inc.*

February 15, 2018

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ..................................................................... 3

ARGUMENT .......................................................................................... 8

I.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST EHI FOR
     FAILURE TO STATE A CLAIM AND FOR LACK OF STANDING ............................. 8

     A.   Standard of Review ..................................................................... 8

     B.   Plaintiff Bah Has Not Met His Burden of Pleading EHI's Joint Employer
          Status Under the FLSA ................................................................ 10

          1.   Plaintiff does not allege that EHI had authority to hire or fire him. ................. 12

          2.   Plaintiff does not allege that EHI supervised him or had control over his
               work schedule or conditions of employment. ...................................... 13

          3.   Plaintiff does not plausibly allege that EHI determined his rate or
               method of payment. .............................................................. 16

          4.   Plaintiff does not allege that EHI maintained his employment records............. 18

     C.   The Complaint Also Fails to Plead Joint Employer Status Under
          Massachusetts Law ..................................................................... 20

II.  IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY
     JUDGMENT IN EHI'S FAVOR BECAUSE EHI CANNOT BE HELD LIABLE
     AS PLAINTIFF BAH'S JOINT EMPLOYER AS A MATTER OF LAW ....................... 22

          1.   EHI Did Not Have the Power to Hire or Fire Plaintiff Bah............................ 23

          2.   EHI Did Not Supervise Plaintiff Bah or Control His Work Schedules or
               Conditions of Employment. ....................................................... 24

          3.   EHI Did Not Determine Plaintiff's Rate or Method of Payment....................... 26

          4.   ERAC-Boston, Not EHI, Maintained Plaintiff's Employment Records............ 28

CONCLUSION ...................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adedapoidle-Tyehimba v. Crunch, LLC*,
  2013 WL 4082137 (N.D. Cal. Aug. 9, 2013) .........................................................................19

*Anderson v. Davis Polk & Wardwell LLP*,
  850 F. Supp. 2d 392 (S.D.N.Y. 2012)....................................................................................15

*Anderson v. Kimberly–Clark Corp.*,
  570 Fed. Appx. 927 (Fed. Cir. 2014)......................................................................................17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................8, 9, 18

*Baystate Alternative Staffing, Inc. v. Herman*,
  163 F.3d 668 (1st Cir. 1998)............................................2, 11, 15, 17, 18, 21, 22, 29

*Beck v. Boce Group, L.C.*,
  391 F. Supp. 2d 1183 (S.D. Fla. 2005) ............................................................................16, 28

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................8

*Bonnette v. California Health & Welfare Agency*,
  704 F.2d 1465 (9th Cir. 1983) ...............................................................................................11

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  137 S. Ct. 1773 (2017)..............................................................................................................5

*Cavallaro v. UMass Mem. Healthcare, Inc.*,
  678 F.3d 1 (1st Cir. 2012).................................................................................................10, 12

*Cavallaro v. UMass Meml. Health Care, Inc.*,
  971 F. Supp. 2d 139 (D. Mass. 2013) ............................................1, 10, 11, 12, 13, 17, 18, 19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................................................................22

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*,
  228 F.3d 24 (1st Cir. 2000).......................................................................................................9

*Davis v. Abington Mem'l Hosp.*,
  817 F. Supp.2d 556 (E.D. Pa. 2011) ......................................................................................12

## TABLE OF AUTHORITIES *(continued)*

**Page(s)**

*De Giovanni v. Jani-King Intern., Inc.*
    968 F. Supp. 2d 447 (D. Mass. 2013) ...................................................................21

*Doe I. v. Wal-Mart Stores, Inc.,*
    572 F.3d 677 (9th Cir. 2009) ............................................................................19

*In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.,*
    683 F.3d 462 (3d Cir. 2012)...........................................2, 3, 11, 16, 26, 30

*In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.,*
    MDL No. 2056, Misc. No. 2:09-mc-00210-JFC (W.D. Pa. 2010) .....................2, 5, 23, 26, 28

*Gallagher v. Cerebral Palsy of Massachusetts, Inc.*
    86 N.E.3d 496 (Mass. App. 2017) ........................................................................21

*Garcia v. Right at Home, Inc.,*
    2016 WL 3144372 (Mass. Super. Jan. 19, 2016)....................................................20

*George v. Nat'l Water Main Cleaning Co.,*
    2011 WL 841226 (D. Mass. Mar. 23, 2011)..........................................................20

*GFF Corp. v. Associated Wholesale Grocers, Inc.,*
    130 F.3d 1381 (10th Cir. 1997) ........................................................................9, 14

*Hamilton v. Partners Healthcare System, Inc.,*
    209 F. Supp. 3d 379 (D. Mass. 2006), *aff'd,* 879 F.3d 407 (1st Cir. 2018)......................10, 12

*Henning v. Wachovia Mort.,*
    FSB, 969 F. Supp. 2d 135 (D. Mass. 2013) ............................................................17

*Hosseini v. Capital One, N.A.,*
    217 F. Supp. 3d 441 (D. Mass 2016) ..................................................................9, 14

*Hukill v. Auto Care, Inc.,*
    192 F.3d 437 (4th Cir. 1999) ............................................................................27

*Jean-Louis v. Metro Cable Cmmcs., Inc.,*
    838 F. Supp. 2d 111 (S.D.N.Y. Sept. 30, 2011) ....................................................11

*L'Esperance v. Manhattan Mortg. Corp.,*
    2012 WL 3839376 (D.N.H. Sept. 5, 2012)..........................................................15

*Leuenberger v. Spicer,*
    2016 WL 355090 (W.D. Va. Jan. 28, 2016) ........................................................14

## TABLE OF AUTHORITIES *(continued)*

**Page(s)**

*Lewis v. Vollmer of Am.*,
    2008 WL 355607 (W.D. Pa. Feb. 7, 2008) ............................................................................30

*Lin v. Comprehensive Health Mgmt., Inc.*,
    2009 WL 976835 (S.D.N.Y. Apr. 9, 2009) ...................................................................19, 24

*Local 773 Int'l Bhd. Of Teamsters v. Cotter & Co.*,
    691 F. Supp. 875 (E.D. Pa. 1988) ....................................................................................30

*Maddock v. KB Homes, Inc.*,
    631 F. Supp. 2d 1226 (C.D. Cal. 2007) ...................................................................15, 16, 28

*Martin v. Sprint United Mgt. Co.*,
    273 F. Supp. 3d 404 (S.D.N.Y. 2017) ...............................................................................26, 28

*McBain v. Behr Paint Corp.*,
    2017 WL 1208074 (N.D. Cal. Apr. 23, 2017) ...................................................................12, 19

*Medina-Munoz v. R.J. Reynolds Tobacco Co.*,
    896 F.2d 5 (1st Cir. 1990) ..................................................................................................22

*Nevada v. U.S. Dept. of Lab.*,
    218 F. Supp. 3d 520 (E.D. Tex. 2016) ...............................................................................3

*Orell v. Umass Mem. Med. Ctr., Inc.*,
    203 F. Supp. 2d 52 (D. Mass. 2002) ..................................................................................10

*Platten v. HG Bermuda Exempted Ltd.*,
    437 F.3d 118 (1st Cir. 2006) ..............................................................................................21

*Pruell v. Caritas Christi*,
    2013 WL 2420918 (D. Mass. May 31, 2013) ...................................................................1, 9, 19

*Quinteros v. Sparkle Cleaning, Inc.*,
    532 F. Supp. 2d 762 (D. Md. 2008) ..................................................................................19

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    355 F.3d 370 (5th Cir. 2004) ............................................................................................15

*Rogier v. Chambers*,
    2016 WL 5890024 (Mass. Super. Sept. 1, 2016) ...............................................................20, 21, 22

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) ..............................................................................................9, 14

## TABLE OF AUTHORITIES *(continued)*

**Page(s)**

*Scott v. Harris*,
    550 U.S. 372 (2007).................................................................................22

*State of Nevada v. U.S. Dept. of Lab.*,
    Dkt. No. 4:16-cv-00731 (E.D. Tex.)........................................................4

*United States v. AVX Corp.*,
    962 F.2d 108 (1st Cir. 1992)....................................................................10

*Wenokur v. AXA Equitable Life Ins. Co.*,
    2017 WL 4357916 (D. Ariz. Oct. 2, 2017).............................................5

*Zabady v. Enterprise Rent-A-Car Company*,
    No. 4:07-cv-00494-SNLJ (E.D. Mo.) (July 17, 2008)............................2

*Zhao v. Bebe Stores, Inc.*,
    247 F. Supp. 2d 1154 (C.D. Cal. 2003) ..................................................24

**Statutes**

29 U.S.C. §203(d) .......................................................................................10

29 U.S.C. § 207(a)(1)..............................................................................1, 9, 10

29 U.S.C. § 213(a)(1).................................................................................3

M.G.L. c. 149 ..............................................................................................20

M.G.L. c. 151 ..............................................................................................20

M.G.L. c. 151, § 1A...............................................................................1, 9, 20

**Other Authorities**

Kirk Kazanjian, *Exceeding Customer Expectations* (2007) ........................5

Staples, Inc. (NYSE: SPLS), Proxy Statement on Form DEF14A dated Apr. 20,
    2017...........................................................................................................7

Waters Corporation (NYSE: WAT), Proxy Statement on Form DEF 14A dated
    Mar. 29, 2017 ...........................................................................................7

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................22

**PRELIMINARY STATEMENT**

Plaintiff Mamadou Bah ("Plaintiff" or "Plaintiff Bah") worked as an Assistant Branch Manager—one of the highest ranking employees—at the Enterprise Rent-A-Car of Boston rental branch in Lowell, Massachusetts from May 2016 to January 2017.  In this lawsuit, Plaintiff Bah claims that he was incorrectly classified as exempt from receiving overtime pay for five of those months.  He now brings this action under the Fair Labor Standards Act ("FLSA") and Massachusetts overtime law against both his direct employer, Enterprise Rent-A-Car Company of Boston, LLC ("ERAC-Boston"), and Enterprise Holdings, Inc. ("EHI"), a completely separate parent company.  EHI is the parent corporation and sole owner of numerous subsidiary operating companies (including ERAC-Boston) around the world that are in the business of renting cars, among other things.  EHI, however, neither operates car rental branches nor rents cars.

To state viable overtime claims against EHI, Plaintiff Bah must present well-pled factual allegations that permit the Court to draw a plausible inference that EHI was his "joint employer." *Pruell v. Caritas Christi*, 2013 WL 2420918 at *3 (D. Mass. May 31, 2013); *see also* 29 U.S.C. § 207(a)(1); M.G.L. c. 151, § 1A.  In other words, Plaintiff must "set forth a plausible claim that [EHI] exercised sufficient control over h[is] employment conditions to be considered an employer."  *Cavallaro v. UMass Meml. Health Care, Inc.*, 971 F. Supp. 2d 139, 150 (D. Mass. 2013).

Plaintiff has not met that burden.  Based on the Complaint, we do not know who hired Plaintiff Bah; who fired him; who set his work schedule and work hours; who supervised and directed his daily work; who determined his salary rate and compensation plan; who determined or implemented the timekeeping policies applicable to him; who paid him; or who maintained his employment file.  The Complaint forces this Court to speculate about even these most basic facts, despite the fact that they are all central indicia of the joint employment standard established by the

First Circuit.  *See Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998).

Because the Complaint's allegations do not plausibly suggest that Plaintiff Bah had a relationship

with EHI at all—much less an employer-employee relationship as required to state the causes of

action he advances here—his claims against EHI should be dismissed under Rule 12(b)(6).

Plaintiff has not adequately alleged joint employer status for the simple reason that he

cannot do so.  Indeed, whether EHI jointly employs Assistant Branch Managers like Plaintiff Bah

is an issue that has already been extensively litigated and decided in EHI's favor.  Most recently,

in 2009, fifteen separate lawsuits raising nearly identical claims regarding the classification of

Assistant Branch Managers were consolidated in a multi-district-litigation proceeding.  *See In re*

*Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.* (hereafter *"In re Enterprise"*), MDL No.

2056, Misc. No. 2:09-mc-00210-JFC (W.D. Pa.).  After ***multiple years*** of litigation and extensive

discovery, both the District Court and the United States Court of Appeals For the Third Circuit—

applying a joint employer test nearly identical to that applied in this Circuit—held that EHI did

not jointly employ Assistant Branch Managers as a matter of law.  *Id.*, 735 F. Supp. 2d 277, 346

(W.D. Pa. 2010); *In re Enterprise*, 683 F.3d 462, 471 (3d Cir. 2012) (affirming district court's

holding that EHI was not a joint employer because, among other reasons, EHI "ha[s] no authority

to hire or fire assistant managers, no authority to promulgate work rules or assignments, no

authority to set compensation, benefits, schedules, or rates or methods of payment, [and] was not

involved in employee supervision or employee discipline").[1]

EHI's relationships with ERAC-Boston and its other operating groups, and their respective

Assistant Branch Managers (including Plaintiff), have not materially changed since *In re*

---

[1]   In a prior, separate lawsuit, plaintiff Assistant Branch Managers voluntarily dismissed any and all collective action
allegations and claims based on "the discovery done to date."  *Zabady v. Enterprise Rent-A-Car Company*, No.
4:07-cv-00494-SNLJ (E.D. Mo.) (July 17, 2008) (Dkt. No. 98).

*Enterprise* was decided.  Thus, Plaintiff has not provided (and could not provide) a single, well-pled factual allegation that demonstrates any material change from the extensive record on which those opinions were based.  Accordingly, if the Court does not grant EHI's motion to dismiss under Rule 12(b)(6), EHI respectfully requests, *in the alternative*, that the Court grant summary judgment in EHI's favor on the issue of its joint employment status.  EHI is entitled to judgment as a matter of law based on the material facts submitted herewith and for the same reasons on which it previously prevailed.  *See id.*

## FACTUAL BACKGROUND

Plaintiff Bah alleges that he worked in multiple Enterprise-Rent-a-Car branch locations in and around Boston from May 2014 through January 2017.  Compl. ¶ 4.[2]  In July 2016, he was promoted to the position of Assistant Branch Manager.  *See id.*  As an Assistant Branch Manager, Plaintiff Bah was paid on a salary basis, at a flat weekly rate, plus a bonus based on his branch's net profits.  Compl. ¶ 21.  And, as a manager, he was classified as exempt for purposes of overtime pay under federal and state law.  *Id.; see also* 29 U.S.C. § 213(a)(1) (establishing the overtime pay exemption for employees employed in a bona fide executive, administrative, or professional capacity, so long as they are paid at least a threshold salary basis).  On November 27, 2016, in light of impending changes to the exemption regulations,[3] Plaintiff (along with other ERAC-

---

[2]  EHI assumes the truth of the Complaint's factual allegations for purposes of its Motion to Dismiss only.  EHI reserves all defenses to Plaintiff's allegations.

[3]  In May 2016, the United States Department of Labor announced that it intended to publish and implement a Final Rule revising the applicable exemptions to minimum wage and overtime.  *See* 81 Fed. Reg. 32,391 at 32,550. Specifically, the new regulations revised the salary basis requirement by nearly doubling the set salary required to qualify as an exempt executive, administrative, or professional employee.  81 Fed. Reg. 32,391.  The new regulations were set to become effective on December 1, 2016.  As explained in Ex. 3, ERAC-Boston's Reclassification Memorandum at 3, incorporated by reference into Plaintiff's Complaint (Compl. ¶ 22), Plaintiff Bah was reclassified because "the new regulation" would not permit exempt status while still maintaining his "profit-based bonus" "pay structure"—not because his prior classification under the old regulations was incorrect. The new regulations, however, have not yet taken effect:  on November 22, 2016, the United States District Court for the Eastern District of Texas granted a motion filed by twenty-one state governments to preliminarily enjoin the implantation and enforcement of the new regulations.  *Nevada v. U.S. Dept. of Lab.*, 218 F. Supp. 3d 520

Boston Assistant Branch managers) was re-classified as non-exempt for purposes of overtime pay. Compl. ¶ 22.

Plaintiff now claims that his original exempt classification from May through November of 2016 was unlawful and that he is therefore owed back pay damages for overtime compensation. Compl. at 9-10. He also claims that EHI is liable for any overtime violation as his joint employer under the FLSA and state law. Compl. ¶¶ 7, 23. As detailed below (*see infra* at 8-21), however, Plaintiff's Complaint falls woefully short of alleging an employer-employee relationship between himself and EHI. Accordingly, the claims against EHI should be dismissed under Rule 12.

*   *   *

EHI also includes this factual background in support of its Alternative Motion for Summary Judgment and for the purpose of outlining the relationships between the parties in this action.[4]

**EHI's Business Model.** EHI is a privately held holdings company. Dkt. 11. EHI does not operate car rental branches or rent cars. SOF ¶¶ 109-110. Rather, EHI owns over 40 operating subsidiaries worldwide that are themselves in the business of renting vehicles, among other things. *Id.* ¶ 1. Each of EHI's operating subsidiaries are separately formed companies, distinct from each other and from EHI. *Id.* ¶ 2. EHI regularly refers to its operating subsidiaries (or, in some cases, to their operating divisions) as operating "groups." *Id.* ¶ 5. As relevant here, for example, Defendant ERAC-Boston is one of EHI's operating subsidiaries. *Id.* ¶ 4. EHI and ERAC-Boston (which is also called "Group 10") are separate and distinct companies. *Id.* ¶¶ 2-4, 6, 9.

The structure of the Enterprise-affiliated companies is uniquely entrepreneurial:

[Enterprise founder,] Jack Taylor first got a taste of what it was like to be an owner

---

(E.D. Tex. 2016). That litigation is still pending. *See State of Nevada v. U.S. Dept. of Lab.*, Dkt. No. 4:16-cv-00731 (E.D. Tex.).

[4]   For a complete recitation of material facts, EHI respectfully refers the Court to EHI's Statement of Material Facts Pursuant to Local Rule 56.1 ("SOF"), filed contemporaneously herewith.

> when running his small package delivery business.  He also saw the benefits as an
> employee at Lindburg Cadillac, where he received a base salary and 15 percent cut
> of the profits from all the sales he brought in.  [Thus,] [w]hen he founded Enterprise,
> Jack wanted to give his own employees a similar compensation plan and the same
> feeling of ownership.  He wanted them to share in the company's success.

Kirk Kazanjian, *Exceeding Customer Expectations*, 114-15 (2007).  Moreover, EHI's operating

groups were structured to be decentralized and independent to further promote a sense of

ownership and to allow each group the flexibility to tailor its operations to meet the particular

needs of its business and, thereby, maximize its success.  SOF ¶¶ 8, 11-12.  Each group builds its

own rental (and car sales or other) business according to strategies and policies that it ultimately

chooses based on its preferences, strategies, and business circumstances.  *Id.* ¶ 10.

The operating groups, therefore, run their own operations under the direction of a General

Manager, the functional head of operations, and a highly compensated executive who has

enormous discretion to control and shape the business to maximize its profits.  *Id.* ¶¶ 16-17.  For

example, each operating group decides where and when it will open new branch locations, which

and how many vehicles it will operate at its locations, which and how many employees it will hire

to staff its locations, what hours its branches will operate, and whether and how it will expand or

contract its business, including by opening new locations or new lines of business, such as car

sales or truck rental.  *Id.* ¶¶ 13-15.[5]

---

[5]  Under this decentralized structure, EHI does not have sufficient contacts with Massachusetts to be subject to
personal jurisdiction therein.  Personal jurisdiction over EHI outside of Missouri was extensively briefed and
argued in *In re Enterprise*.  *See* 735 F. Supp. 2d at 336.  Ultimately, the court determined it did not need to reach
the issue because it granted EHI's motion for summary judgment on the issue of joint employer status, dismissing
all claims against EHI.  *Id.*  For efficiency's sake, EHI has agreed to waive the personal jurisdiction defense for
the same reason here.  To be clear, however, EHI's waiver of personal jurisdiction applies only to Mr. Bah's
claims in this case and not to any future case in Massachusetts or any other state.  Furthermore, EHI does not
waive any such defense to the claims of any future out-of-state plaintiffs, opt-ins, or class members in this case.
*See Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct.  1773, 1781 (2017) (holding court did not have jurisdiction
over nonresident plaintiffs' claims against a nonresident defendant even though the Court had specific jurisdiction
over resident plaintiffs' claims); *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916, at *4 (D. Ariz. Oct.
2, 2017) (noting the court "lacks personal jurisdiction over the claims of putative class members with no
connection to Arizona and therefore would not be able to certify a nationwide class").

**EHI's (Lack of) Control Over Assistant Branch Managers.**  Consistent with the decentralized structure detailed above, EHI has no control or oversight over the work of Assistant Branch Managers employed by its operating groups.  *Id.* ¶¶ 21, 45, 87, 89, 91, 101.  Rather, the groups alone control the terms of employment for their Assistant Branch Managers.  *Id.* ¶¶ 22, 65-66.  Specifically, the groups hire and fire, discipline, and promote their own respective Assistant Branch Managers.  *Id.* ¶¶ 24-26.  The groups also assign Assistant Branch Managers to their rental branch locations, select which days and hours they will work, set their compensation levels, and select and implement employment policies applicable to Assistant Branch Managers.  *Id.* ¶¶ 41-43, 45-46, 69-71, 76-80.

As the sole owner of its operating subsidiaries, EHI undoubtedly has an interest in their profitability.  For that reason, EHI offers services to its operating groups for a fee—including offering Business Ethics and Personnel Policy handbooks that are compilations of best practices based on input from the groups—enabling the groups to benefit from economies of scale, reduce transaction costs, and present a consistent brand image despite their independent operations.  *Id.* ¶¶ 20, 48, 59-61, 67-68, 72-73, 81.  These interactions, however, are no more than the ordinary incidents of any parent-subsidiary relationship.  And each operating group has final discretion to revise, supplement, disregard, or implement whatever policies it deems appropriate for its own business.  *Id.* ¶¶ 10, 49, 63, 69-71, 74-80, 82.  EHI does not approve or reject such decisions.  *Id.* ¶¶ 50, 71, 75.  Thus, EHI has no control or oversight over the Assistant Branch Managers its groups employ.  *Id.* ¶ 21, 45, 87, 89, 91, 101.  It has no role in hiring, firing, promoting, or disciplining them.  *Id.* ¶¶ 27, 29, 36, 116.  And it does not pay them or maintain their personnel records.  *Id.* ¶¶ 103-105.

**Jack Taylor's Innovative Strategy Proved to Be Successful.**  Today, EHI owns over 40

operating subsidiaries worldwide. *Id.* ¶ 1. By running their own successful businesses, General Managers are able to earn annual compensation ranging from the low-seven figures to the upper-seven figures. *Id.* ¶ 19. Consistent with the "very large responsibilities" General Managers carry and the "significant decisions" they must make for their respective, independent groups (*id.* ¶ 17), their compensation is comparable to that earned by chief executive officers of major public corporations.[6] The annual revenues of each operating group are also comparable to large corporations. *See, e.g.,* Ex. 6, Duffy Decl. ¶ 35 (providing ERAC-Boston's revenue under seal).

**The Relationships Between EHI, ERAC-Boston, and Plaintiff Bah.** As applicable to the instant action, ERAC-Boston is a Delaware LLC and one of EHI's operating groups. *Id.* ¶¶ 4, 121. ERAC-Boston rents cars and operates rental car locations throughout Massachusetts, Maine, and New Hampshire. *Id.* ¶¶ 14, 122. ERAC-Boston currently employs approximately 108 Assistant Branch Managers. *Id.* ¶ 23. Brian Duffy is the Vice President/General Manager (*id.* ¶ 18) and, in that role, directs ERAC-Boston's business operations and strategy and "has ultimate responsibility for management of the day-to-day operations of ERAC-Boston." Ex. 6, Duffy Decl. ¶ 30.

Mr. Duffy's sworn declaration establishes—consistent with EHI's other groups—that ERAC-Boston makes all decisions with respect to hiring, firing, and staffing its Assistant Branch Managers. SOF ¶¶ 24, 41 45; Ex. 6, Duffy Decl. ¶ 72 ("My reports and I decide which ERAC-Boston branches the company's Assistant Branch Managers will be assigned to, and my reports and I decide whether to transfer our Assistant Branch Managers from one branch to another."), ¶ 39 ("ERAC-Boston hires its own Assistant Branch Managers through its own interview process);

---

[6] Major companies based in Massachusetts provide a telling comparison. *See, e.g.* Staples, Inc. (NYSE: SPLS), Proxy Statement on Form DEF14A dated Apr. 20, 2017, at 45 (CEO total compensation of $3,773,894); Waters Corporation (NYSE: WAT), Proxy Statement on Form DEF 14A dated Mar. 29, 2017, at 43 (CEO total compensation $7,631,015). Mr. Duffy's precise salary is disclosed under seal. Ex. 6, Duffy Decl. ¶ 34.

¶ 43 ("ERAC-Boston decides when to discipline and, if necessary, terminate Assistant Branch Managers.").  Mr. Duffy also made clear that ERAC-Boston has full discretion to set the compensation plans for its employees (including Assistant Branch Managers) and determine how to classify them for purposes of wage and hour laws (SOF ¶¶ 46, 49-51, 52, 55-57) and that ERAC-Boston management employees direct and supervise the work of their Assistant Branch Managers on a day-to-day basis (*id.* ¶¶ 89, 91, 102).

Accordingly, ERAC-Boston exercised discretion and control over all of these important terms and conditions of employment with respect to *Plaintiff Bah's* employment as an ERAC-Boston Assistant Branch Manager.  *Id.* ¶¶ 30-35, 44, 93.  Meanwhile, EHI did not interview Plaintiff Bah, hire him, promote him to Assistant Branch Manager, fire him, supervise or direct his work, order or administer the drug test that ultimately led to his termination, set his work schedule or terms and conditions of his employment, maintain his personnel files, or set his compensation level or classification as an Assistant Branch Manager.  *Id.* ¶¶ 36, 88, 102, 105.

These facts demonstrate clearly and beyond any material dispute that ERAC-Boston—not EHI—was Plaintiff Bah's sole and exclusive employer for purposes of his work as an Assistant Branch Manager.  Accordingly, if the Court does not grant EHI's Motion to Dismiss, EHI is entitled to summary judgment on the issue of joint employer status.

## ARGUMENT

## I.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST EHI FOR FAILURE TO STATE A CLAIM AND FOR LACK OF STANDING

### A.   Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  "Threadbare recitals of the elements of a cause of action . . . do not suffice."  *Id.*

Rather, the plaintiff bears the burden of pleading facts that "allow[] the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In applying this standard, the Court "isolate[s] and ignore[s] statements in the complaint

that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  *Schatz*

*v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  Then, the remaining

"well-pled (i.e., non-conclusory, non-speculative) facts [are taken] as true" to "see if they plausibly

narrate a claim for relief."  *Id.*  In addition to the complaint's factual allegations, the Court may

also consider "implications from documents attached to or fairly incorporated into the complaint"[7]

and "facts susceptible to judicial notice."  *Id.*  Where a conflict exists between the complaint's

factual allegations and cognizable extrinsic documents, "the documents trump the complaint's

allegations."  *See Hosseini v. Capital One, N.A.*, 217 F. Supp. 3d 441, 445 n.2 (D. Mass 2016)

(quoting *Schatz*, 669 F.3d at 55 n.3); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d

1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict . . . a properly considered

document are not well-pleaded facts that the court must accept as true.").

Here, to state a viable overtime claim, Plaintiff must adequately allege that he was

employed by *each* defendant.  *Pruell v. Caritas Christi*, 2013 WL 2420918 at *1, *3 (D. Mass.

May 31, 2013); *see also* 29 U.S.C. § 207(a)(1) (only an "employer" can be liable for unpaid

overtime), M.G.L. c. 151 § 1A (same).  Indeed, a plaintiff's standing to bring employment law

claims "is predicated on the existence of an employer-employee relationship," because "plaintiff's

injuries are only traceable to, and redressable by, those defendants who are deemed by law to have

---

[7]  Here, the Court may consider Ex. 1, Business Ethics Guide Excerpts, Ex. 2, Personnel Policies Summary
Excerpts, and Ex. 3, ERAC-Boston Reclassification Memorandum in its ruling on EHI's Motion to Dismiss
because each document was "explicitly relied upon" in the Complaint.  *Clorox Co. Puerto Rico v. Proctor &
Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000); *see also* Compl. ¶¶ 22-23.

employed [him]." *Cavallaro v. UMass Mem. Health Care, Inc.*, 971 F. Supp. 2d 139, 146 (D. Mass. 2013).

Standing is a threshold issue in every action: "if [Plaintiff Bah] lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992). "As a result, if Plaintiff[] ha[s] failed to allege a plausible FLSA employment relationship, there is no case or controversy and Plaintiff[] do[es] not have standing." *Hamilton v. Partners Healthcare System, Inc.*, 209 F. Supp. 3d 379, 389 (D. Mass. 2006), *aff'd,* 879 F.3d 407 (1st Cir. 2018) (noting "[t]he questions of whether there is standing and whether Plaintiffs have alleged an employment relationship under FLSA are here essentially the same").

Whether Plaintiff Bah has adequately alleged that EHI was his joint employer with ERAC-Boston, and thus whether he has standing, "is a question of law" ripe for determination on a motion to dismiss. *Cavallaro v. UMass Mem. Healthcare, Inc.*, 678 F.3d 1, 9 (1st Cir. 2012); *see also*, *e.g.*, *Cavallaro*, 971 F. Supp.2d at 147 (dismissing claim on motion to dismiss for failing to adequately allege joint employment relationship); *Orell v. Umass Mem. Med. Ctr., Inc.*, 203 F. Supp. 2d 52, 62-63 (D. Mass. 2002) (same). For the reasons below, Plaintiff Bah has not sufficiently pled joint employer status, and therefore his claims against EHI must be dismissed.

## B.    Plaintiff Bah Has Not Met His Burden of Pleading EHI's Joint Employer Status Under the FLSA

**The Joint Employer Standard**. Only an "employer" can be liable for violations of the FLSA's overtime provisions. 29 U.S.C. § 207(a)(1). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). "Because the statute defines employer in such broad terms, and its definitional section uses the term it purports to define, [it] offers little guidance on whether a given individual

is or is not an employer." *Jean-Louis v. Metro Cable Cmmcs., Inc.*, 838 F. Supp. 2d 111, 120 (S.D.N.Y. Sept. 30, 2011) (citing *Herman v. RSR Security Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). Here, the parties do not dispute that Plaintiff Bah was employed by ERAC-Boston. *See* Compl. ¶ 3. Theoretically, however, an employee may have "several simultaneous employers, each responsible for compliance" with the wage laws. *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *see* 29 C.F.R. § 791.2(a). EHI therefore can also be liable as Plaintiff's employer if it qualified as Plaintiff's "joint employer," with ERAC-Boston. *See id.*; Compl. ¶¶ 7, 23.

The FLSA applies an "economic realit[ies]" test based on "the totality of the circumstances" to determine whether an entity constitutes an individual's joint employer. *Cavallaro v. UMass Meml. Health Care, Inc.*, 917 F. Supp. 2d 139, 147 (D. Mass. 2013) (citing *Baystate*, 163 F.3d at 675). The First Circuit has instructed courts to consider four factors relevant to the economic reality analysis, whether the alleged joint employer:

> (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.

*Baystate*, 163 F.3d at 675.[8] No one factor is dispositive. *Id.* The purpose of the economic realities test is to ensure that the FLSA is read neither too narrowly nor too broadly. The first two factors "address the extent of a putative employer's control over the nature and structure of the working relationship," while the last two factors "address the extent of a putative employer's control over the economic aspects of the working relationship." *Id.* Thus, while the FLSA's statutory definition of "employer" is broad, "the cases are clear that joint employment exists only when there is an

---

[8] The First Circuit drew these factors from the Ninth Circuit's decision in *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). These factors are also largely consistent with those used by other Circuits. *See*, *e.g.*, *In re Enterprise*, 683 F.3d 462 (3d Cir. 2012).

actual employment relationship between the employee [here, Plaintiff] and *each* joint employer [here, EHI]." *Hamilton v. Partners Healthcare System, Inc.*, 209 F. Supp. 3d 379, 390 (D. Mass. 2016), *aff'd*, 879 F.3d 407 (1st Cir. 2018) (emphasis added).

**The Complaint Fails to Address the Relevant *Baystate* Factors.**[9] Here—contrary to his conclusory recitations that EHI and ERAC-Boston "are joint employers" (Compl. ¶¶ 7, 23)— Plaintiff's well-pled factual allegations do not plausibly state a claim for joint employer status under the FLSA.  As a result, his FLSA claims against EHI must be dismissed.  *Cavallaro*, 971 F. Supp. 2d at 147; *see also, e.g., McBain v. Behr Paint Corp.*, 2017 WL 1208074, at *5 (N.D. Cal. Apr. 23, 2017) (applying the *Bonnette* factors and dismissing joint employer claim against parent corporation).

### 1.  Plaintiff does not allege that EHI had authority to hire or fire him.

In short, "the [] complaint makes no specific allegations that any corporate defendant other than [ERAC-Boston] had the power to hire or fire" him.  *Cavallaro*, 971 F. Supp. 2d at 148-49 (dismissing claims for failure to adequately plead joint employer status).  The Complaint does not allege that Plaintiff Bah entered into any employment contracts with EHI or that EHI otherwise had the authority to hire him or terminate him.  In fact, the Complaint is surprisingly devoid of *any* factual allegations regarding which entity or individuals were involved in his hiring process (*see* Compl. ¶ 11) or his eventual "promot[ion] to the position of Assistant Branch Manager" (see *id.* ¶

---

[9]   As an initial matter, Plaintiff Bah does not specifically allege which of the two Defendants was his direct employer.  Instead, the Complaint states that EHI and ERAC-Boston are "joint employers," and then proceeds to refer "collectively" to both Defendants as "Enterprise" throughout the Complaint. Compl. ¶ 7.  On this basis alone, the Court can dismiss Plaintiff's claims. *See Cavallaro*, 678 F.3d at 10 (holding that to successfully plead a "joint employer" claim, "some direct employer needs to be identified before anyone in the group could be liable on the theory that some or all were responsible"); *Davis v. Abington Mem'l Hosp.*, 817 F. Supp.2d 556, 563-64 (E.D. Pa. 2011) (dismissing joint employer claim because complaint failed to specify which defendant employed plaintiffs or identify the basic terms of the joint employer relationship).  Indeed, the First Circuit has noted that it and other "courts have made clear they will not put up with [these kinds of] game-playing omissions of plainly relevant detail." *Id.*

12).  This is likely because—as set forth in EHI's Alternative Motion for Summary Judgment (*see infra* at 23-24)—ERAC-Boston, and ERAC-Boston alone, had the authority to and, in fact, did hire, promote, and fire Plaintiff Bah.  Regardless, the Complaint's failure to plead the first *Baystate* factor necessarily weighs in favor of dismissal.

### 2. Plaintiff does not allege that EHI supervised him or had control over his work schedule or conditions of employment.

The second *Baystate* factor also favors dismissal.  Plaintiff Bah has put forward no allegations that make it plausible either (1) that EHI supervised his work or (2) that EHI played any role in—much less had control over—setting his work schedule.  Again, the Complaint is astonishingly bereft of a single allegation regarding these essential facts.  For example, Plaintiff Bah does not allege who his immediate supervisor was, who directed and oversaw his work on a day-to-day basis, who told him when he needed to work, who set his daily and/or hourly work schedule, who decided to which branch he would be assigned as an Assistant Branch Manager, or who instructed him regarding appropriate dress, work habits, or interactions with customers—all facts which are directly relevant and indeed critical to this inquiry.  *See Cavallaro*, 971 F. Supp. 2d at 149 (D. Mass. 2013) (dismissing claims for failure to allege joint employer status and noting that plaintiffs had failed to allege these facts, which were relevant to the First Circuit's analysis of this factor in *Baystate*).

The *only* allegation potentially relevant to this factor—and, even then, to just one subpart thereof—is Plaintiff's cursory and repeated assertion that EHI "dictates" or otherwise "imposes" "employment policies" on all of its operating groups.  Compl. ¶¶ 7, 23.  Specifically, Plaintiff alleges that EHI "has issued a Business Ethics & Personnel Policies Summary dictating policy for all of Enterprise's US employees," thereby "control[ling] and direct[ing]" ERAC-Boston and other operating groups.  Compl. ¶ 23.

Plaintiff's claim that EHI dictates employment policies is not only incorrect (*see* Alternative Motion for Summary Judgment *infra* at 24-26), but it is also resoundingly belied by the text of the very documents incorporated by reference in the allegation. *See* Ex. 1, Business Ethics Guide Excerpts; Ex. 2, Personnel Policies Summary Excerpts.[10] Indeed, the *title pages* of both handbooks expressly state that all operating groups (including ERAC-Boston) are free to vary from, supplement, or disregard the policies "at their own discretion." Ex. 1, Business Ethics Guide Excerpts at 3; Ex. 2, Personnel Policies Summary Excerpts at 3. While these handbooks—which compile and provide "sound business practices"—apply to EHI's own employees, each operating group "at [its] own discretion . . . may elect to implement its own business practices unique to its operations and employees." Ex. 1, Business Ethics Guide Excerpts at 3; *see also* Ex. 2, Personnel Policies Summary Excerpts at 3 ("At their own discretion, each group may elect to implement its own personnel policies unique to its operations and employees").

Because Plaintiff's allegations that these policies were "impose[d]" or "dictate[d]" on all operating groups are plainly inconsistent with the text of the policies themselves, the allegations "are not well-pleaded facts that the [C]ourt must accept as true." *GFF Corp.*, 130 F.3d at 1385. This maxim is well-settled in this Circuit and others. *See, e.g., Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55-56 & n.3 (1st Cir. 2012) (noting that "implications from documents" that are "incorporated into the complaint" "may trump the complaint's allegations if a conflict exists"); *Hosseini v. Capital One, N.A.*, 217 F. Supp. 3d 441, 445 n.2 (D. Mass. 2016) (refusing to credit allegation because it conflicted with a document attached to the complaint); *Leuenberger v. Spicer*, 2016 WL 355090, at *9 (W.D. Va. Jan. 28, 2016) ("If there is a conflict

---

[10]   As noted above (*supra* n. 7), the Court may consider Exs. 1 and 2 on EHI's Motion to Dismiss because they are expressly relied upon and incorporated by reference into Plaintiff's Complaint. *See* Compl. ¶ 23.

between the bare allegations of the complaint and any attached or incorporated document, then the document prevails."); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). In *L'Esperance v. Manhattan Mortg. Corp.*, for example, the court refused to credit on a motion to dismiss an allegation that the mortgagor defendant had told the plaintiff "it could successfully effectuate a modification of [her] loans" because the text of a properly considered document demonstrated that the plaintiff had acknowledged the defendant had made no guarantees as to the outcome. 2012 WL 3839376, at *3 (D.N.H. Sept. 5 2012).

Likewise, here, Plaintiff Bah's contradicted allegation cannot reasonably be credited with an inference that EHI mandated the implementation and enforcement of the published policies. Rather, considering the incorporated documents in Plaintiff's favor, the Court could, at most, infer that EHI provided ERAC-Boston with recommended policies but that ERAC-Boston had "discretion . . . to implement its own business practices [and personnel policies] unique to its operations and employees." The Complaint simply provides *no* factual allegation that merits any other inference. *See Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 407-08 (S.D.N.Y. 2012) (refusing to credit allegation that conflicted with properly considered documents because, contrary to plaintiff's allegation, "no one could plausibly infer an inequitable practice, let alone gender discrimination" based on the contents of the documents).

Critically, that EHI publishes and offers consolidated policies does not constitute "control over . . . the conditions of [Plaintiff Bah's] employment." *See Baystate*, 163 F.3d at 375. Courts have consistently held that any indirect effects a parent company may have on its subsidiary's employees—for example, by recommending policies or training to the subsidiary—are insufficient to make the parent a joint employer. *See, e.g., Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1235-37 (C.D. Cal. 2007). In *Maddock*, for example, the court held a parent company in a closely

analogous FLSA lawsuit was not the joint employer of its subsidiary's employee despite that the parent "conveyed training materials, procedures, and other information to management personnel in its subsidiaries, and that these personnel would sometimes pass along this information to [its employees] such as plaintiff." *Id.* at 1236. Although those facts "perhaps support the assertion that [the parent company] possesses influence over management personnel at [its] subsidiaries . . . they do not permit the further inference . . . that [the parent company] supervised and controlled the scheduling or working conditions of [employees] such as plaintiff," especially given that the plaintiff did not show the subsidiaries were required to use the parent company's training materials or procedures. *Id.* at 1236-37; *see also Beck v. Boce Group, L.C.*, 391 F. Supp. 2d 1183, 1188-90 (S.D. Fla. 2005) (holding that a company's distribution of an employee handbook was not evidence that it had "the power to hire, fire, or modify the [p]laintiffs' employment conditions," where the handbook merely contained formulaic policies that the plaintiffs' direct employer could change, add to, alter, or dismiss).

As the Third Circuit explained in addressing the very same issue in *In re Enterprise*, EHI's provision of "*suggested* policies and practices" (the adoption of which are "entirely discretionary on the part of the subsidiaries") gives EHI "no more authority over the conditions of [Plaintiff Bah's] employment than would a third-party consultant who made suggestions for improvements to the subsidiaries' business practices." 683 F.3d at 471 (holding each of the joint employment factors "indicates that [EHI] was not an employer of . . . assistant managers, a conclusion that is bolstered by the readily apparent fact that [EHI] exercised *no* control, let alone *significant* control, over the assistant managers").

### 3.  Plaintiff does not plausibly allege that EHI determined his rate or method of payment.

The third *Baystate* factor is whether the alleged employer "determined the rate and method

of payment." 163 F.3d at 675.  In *Baystate*, for example, the joint employer defendant "determined the worker's hourly wages, chose a method of payment, collected time sheets, and issued worker's paychecks."  *Cavallaro*, 971 F. Supp. 2d at 149-50.  Here, however, the Complaint contains no such allegation:  Plaintiff does not allege that EHI determined his compensation structure, collected time sheets or otherwise oversaw his work schedule, or issued him his paycheck.

Plaintiff does allege that, after November 27, 2016, EHI imposed a "nationwide policy . . . reclassifying [him] as non-exempt from overtime."  Compl. ¶ 23.  This allegation, however, does not establish a joint employer relationship for three independent reasons.

*First*, Plaintiff's allegation expressly incorporates by reference a memorandum informing all ERAC-Boston Assistant Branch Managers of their reclassification as non-exempt.  *See* Compl. ¶ 22; Ex. 3, ERAC-Boston Reclassification Memorandum.  Again, Plaintiff's allegation conflicts with the document on which it is based:  the memorandum was directed specifically "To: All [ERAC-Boston] Assistant Managers," *not* to all Assistant Branch Managers on a nationwide basis. *Cf.* Compl. ¶¶ 22-23.  Plaintiffs will likely point to the fact that the memorandum refers to ERAC-Boston as "Enterprise Holdings," in an attempt to muddle the issue.  *See* Ex. 3 at 1.  But the Court can take judicial notice of the facts that (1) since 2009, EHI has provided ERAC-Boston (and other subsidiaries) with express written license to use "Enterprise Holdings," as a doing business as ("d/b/a") name, *see* Ex. 7, Master Licensing Agreement at  1, 10; and that (2) ERAC-Boston registered a Business Certificate with the Commonwealth of Massachusetts under the name "Enterprise Holdings," *see* Ex. 8, Business Certificate Registration at 1.[11]  Considered together, Plaintiff's bare, one-sentence allegation, the incorporated ERAC-Boston reclassification

---

[11]  "When such [judicially noticed, public] documents contradict allegations in the complaint, the documents trump the allegations." *Henning v. Wachovia Mort.*, FSB, 969 F. Supp. 2d 135, 147 (D. Mass. 2013); *Anderson v. Kimberly–Clark Corp.*, 570 Fed. Appx. 927, 931 (Fed. Cir. 2014) ("A court need not accept as true allegations that contradict matters properly subject to judicial notice.").

memorandum itself, and these judicially noticeable facts do not "permit a reasonable inference" that EHI (rather than ERAC-Boston) made and implemented the decision to reclassify Plaintiff Bah. *Iqbal*, 556 U.S. at 679.

*Second*, even assuming that EHI did mandate Plaintiff's re-classification (which it did not, *see* Alternative Motion for Summary Judgment, *infra* at 26-28), that re-classification had *no bearing* on Plaintiff's alleged harm. Indeed, Plaintiff's entire case is premised on the argument that he should have been classified as non-exempt *before* November 27, 2016. *See* Compl. ¶¶ 1-3. Plaintiff has made no allegation that EHI determined his method of payment during the relevant (pre-November 2016) time frame. *See Baystate*, 163 F.3d at 675 (including "had the power to" only in the first, not the third, relevant factor).

*Third*, regardless, even assuming that the Court were to draw an inference that Plaintiff has adequately pled that EHI "determined the rate and method of [Plaintiff Bah's] payment," the Complaint still fails to plead joint employer status. Indeed, courts in this District have held dismissal of joint employer claims is proper on a Rule 12 motion even where the alleged facts support "a reasonable inference that [the defendant, parent company] was at least partly responsible for determining how, and how much, plaintiff was paid." *Cavallaro*, 971 F. Supp. 2d at 149-50.

### 4. Plaintiff does not allege that EHI maintained his employment records.

Finally, the Complaint lacks any allegation that EHI (or any entity, for that matter), kept, maintained, or stored Plaintiff Bah's personnel or employment files. "Without any evidence of active involvement, the facts as pleaded do not indicate that [EHI] exercised control over the economic aspects of plaintiff's employment relationship." *Cavallaro*, 971 F. Supp. 2d at 150.

\* \* \*

In sum, the Complaint contains no allegations that plausibly suggest that Plaintiff Bah had

an employment relationship with EHI, as is required to state the claims Plaintiff advances here.[12]

Indeed, except for a few repetitive and contradicted statements, the Complaint is virtually devoid

of any allegations specific to EHI.  Courts routinely dismiss joint employer wage and hour claims

in similar circumstances, and this Court should do the same.  *See, e.g., Pruell*, 2013 WL 2420918,

at *3 (dismissing claims under Rule 12(b)(6) for failure to adequately plead joint employer status

despite allegations that defendant manages "a centralized [] system that handles payroll and human

resources globally"); *Lin v. Comprehensive Health Mgmt., Inc*., 2009 WL 976835, at *2 (S.D.N.Y.

Apr. 9, 2009) (dismissing complaint that lacked any allegation that defendant "had power to

mak[e] hiring or firing decisions").[13]

At most Plaintiff Bah's complaint "include[s] allegations against [EHI] that are relevant to

[one subpart of] one of the *Baystate* factors"—Plaintiff's "method of payment."  *Cavallaro,* 971

F. Supp. 2d at 150.  "However, based on the totality of the circumstances, that one factor is not

sufficient to demonstrate that [Plaintiff Bah] was 'economically dependent' on [EHI]."  *Id.*

"Simply put, the [C]omplaint does not set forth a plausible claim that [EHI] exercised sufficient

control over [his] employment conditions to be considered an employer under the FLSA."  *Id.*

---

[12]  The Complaint includes a handful of sentences alleging "on information and belief" that EHI and ERAC-Boston's "operations are interrelated." Compl. ¶ 7. The Complaint alleges that EHI and ERAC-Boston "share common management and directors, and as EHI owns ERAC-Boston, they share common ownership and centralized control of labor relations." *Id.* These allegations do not apply to any of the *Baystate* factors, which look to the relationship between the alleged joint employer and the employee, not between the alleged joint employer and the direct employer. For that reason, courts in this District have consistently dismissed joint employer claims predicated on similar allegations. *E.g., Cavallaro*, 971 F. Supp.2d at 147-49 (rejecting argument that court should consider "an additional list of factors" including "whether the employers [themselves] are 'completely disassociated'" and "whether there is common ownership among the employers"); *see also Pruell*, 2013 WL 2420918, at *3.

[13]  *See also, e.g., McBain*, 2017 WL 1208074, at *5 (dismissing joint employer claim against parent company); *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 775-76 (D. Md. 2008); *Doe I. v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (affirming dismissal of joint employer claim); *Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 WL 4082137, at *3, 5 (N.D. Cal. Aug. 9, 2013) (dismissing joint employer claim).

**C.      The Complaint Also Fails to Plead Joint Employer Status Under Massachusetts Law**

While the applicable joint employer test is not particularly well-settled under Massachusetts law, Plaintiff Bah has failed to adequately plead joint employer status under all possible standards.

Like the FLSA, Massachusetts wage laws require that no "employer" fail to provide overtime pay to non-exempt employees.  M.G.L. c. 151 § 1A.  However, "[i]n contrast to the FLSA, the Massachusetts statutes . . . do not define the term 'employer.'"  *Rogier v. Chambers*, 2016 WL 5890024, at *3 (Mass. Super. Sept. 1, 2016).  Nor do the statutes define the term "joint employer" in the wage and hour context.  *See* M.G.L. c. 149 & 151.  But "Massachusetts courts look to cases interpreting the [FLSA] for guidance."  *Garcia v. Right at Home, Inc.*, 2016 WL 3144372, at *3 (Mass. Super. Jan. 19, 2016).  Thus, many Massachusetts courts analyzing joint employer status under Massachusetts wage law have simply applied the joint employer standard set out by the First Circuit in *Baystate*.  *See, e.g., id.*; *George v. Nat'l Water Main Cleaning Co.*, 2011 WL 841226, at *7 (D. Mass. Mar. 23, 2011).

However, at least one court—in Massachusetts's specialized Business Litigation Session—carefully analyzed the state wage statutes and held that those statutes, unlike the FLSA, "do not recognize the concept of multiple and simultaneous employers of a single employee based on a test of what entity exercises control over policy and economic reality."  *Rogier*, 2016 WL 5890024, at *4.  The *Rogier* court therefore held that "the potential liability of an entity that allegedly controls the economic reality of an employee's work but is not the direct employer must be analyzed under common-law principles."  *Id.*  This standard requires plaintiffs to plead a "compelling reason of equity"—"generally including nonobservance of corporate formalities, confused intermingling of business assets and use of the corporation in promoting fraud"—that

would permit the court to look beyond the corporate form. *Id.* This joint employer standard is "significantly narrower than the economic reality test under the FLSA." *Id.*

Finally, the Massachusetts Appeals Court has recently applied a different joint employer standard in the wage and hour context. *See Gallagher v. Cerebral Palsy of Massachusetts, Inc.* 86 N.E.3d 496, 501-02 (Mass. App. 2017). In *Gallagher*, the appellate court held that "[t]he basis of a joint employer finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Id.* at 502. This standard—which essentially mirrors the second *Baystate* factor—is therefore also necessarily narrower than that used under the FLSA. *See Baystate*, 163 F.3d at 675.

Because the broadest construction of any joint employer standard under Massachusetts law is the same as that used under the FLSA, Plaintiff's claims must also be dismissed under state law for the same reasons set out above. In any event, the Complaint does not contain any allegations that EHI and ERAC-Boston intermingle their corporate assets or otherwise disregard their separate corporate formalities such that EHI could plausibly be considered a joint employer under the standard common law standard. *See Rogier*, 2016 WL 5890024, at *4-5 (noting that allegations of "common ownership and control" are insufficient).[14]

---

[14] Plaintiff may argue that M.G.L. c. 149 §148B should be applied to determine EHI's status as a joint employer. This statute is generally used to determine whether an individual is an employee or an independent contractor. As this Court has previously noted, however, it is unclear that §148B would apply where, as here, one defendant has already been distinguished from the other as a direct employer. *See De Giovanni v. Jani-King Intern., Inc.* 968 F. Supp. 2d 447, 449 (D. Mass. 2013). Indeed, the Massachusetts Appeals Court has still not addressed "whether the statutory 'provision of services' test in § 148B supplants the common-law 'right to control' test for purposes of a joint employment theory of liability under the Wage Act or the overtime statute." *Gallagher*, 86 N.E.3d at 501-02. To hold that § 148B applies in this situation would subject *all* companies holding an ownership interest in a subsidiary to automatic employer liability as to each of its subsidiary's employees. Such a result would improperly eradicate the formal distinction between separate corporate entities, which generally is overcome only in "rare particular situations." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 128 (1st Cir. 2006).

## II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY JUDGMENT IN EHI'S FAVOR BECAUSE EHI CANNOT BE HELD LIABLE AS PLAINTIFF BAH'S JOINT EMPLOYER AS A MATTER OF LAW

Under Federal Rule of Civil Procedure 56, summary judgment shall be entered where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   Where the record presented demonstrates that a rational trier of fact could not find for the nonmoving party, there is no genuine issue for trial. *Scott v. Harris*, 550 U.S. 372, 380 (2007).   To defeat summary judgment, the non-moving party must come forward with affirmative evidence of "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (citation omitted).   The non-moving party may not rely upon "conclusory allegations, improbable inferences, [or] unsupported speculation," to defeat summary judgment. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

As set forth above (*supra* at 10-12), the First Circuit has instructed the Court to consider four relevant factors in determining whether EHI qualifies as Plaintiff Bah's joint employer. *Baystate*, 163 F.3d at 675.   "[I]t is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer." *Id.* at 676.[15]

Here, the facts set forth in EHI's Rule 56.1 Statement of Facts and supporting exhibits thereto conclusively establish that ***not one*** of the four *Baystate* factors supports an employment

---

[15]   As discussed above, the joint employer standard under Massachusetts law either mirrors or is narrower than the FLSA standard.   EHI therefore treats the analysis herein as equally applicable to Plaintiff's Massachusetts claim. But, for the avoidance of doubt, EHI notes that it is also entitled to summary judgment under the narrower, common law standard because EHI and ERAC-Boston respect their separate corporate formalities and do not commingle their corporate assets. *See Rogier,* 2016 WL 5890024, at *4-5; SOF ¶¶ 2-3, 117.

relationship between EHI and Plaintiff.  Because the facts demonstrate clearly and irrefutably that

EHI did not employ Plaintiff Bah in his capacity as an Assistant Branch Manager, Plaintiff Bah

cannot prevail on his claims against EHI.  Consequently, all claims asserted against EHI fail as a

matter of law, and judgment should be entered in EHI's favor.

### 1. EHI Did Not Have the Power to Hire or Fire Plaintiff Bah.

First, the facts are clear and cannot be disputed that EHI lacked the power to hire and fire

Plaintiff Bah.  SOF ¶¶ 24, 27, 116.  EHI has no involvement in the hiring or firing of Assistant

Branch Managers, including Plaintiff. *Id.* ¶¶ 27, 30-36.  Such power rests exclusively with ERAC-

Boston. *Id.*  Indeed—consistent with EHI's other operating groups—ERAC-Boston, and ERAC-

Boston alone, interviews, hires, reviews, disciplines, promotes, and fires its Assistant Branch

Managers, including Plaintiff Bah. *Id.* ¶¶ 24-26, 39.  In fact, ERAC-Boston interviewed and hired

Plaintiff Bah for his initial position as an ERAC-Boston Management Trainee (*id.* ¶ 30), ERAC-

Boston made the decision to promote Plaintiff to Assistant Branch Manager in July 2016 (*id.* ¶

32), and, ultimately, ERAC-Boston terminated Plaintiff Bah in January 2017 for failing a drug test

in violation of ERAC-Boston's Drug & Alcohol Use Policy (*id.* ¶ 34-35).  No one from EHI played

a role in any of these decisions regarding Plaintiff Bah. *Id.* ¶¶ 36.  Nor did EHI have any authority

to do so. *Id.*[16]  Indeed, ERAC-Boston's LLC Agreement expressly delegates to ERAC-Boston the

authority, among other things, "to hire or terminate the employment of any officer or employee of

the Company."  Ex. 9, ERAC-Boston LLC Agreement at 3.

---

[16]  Plaintiffs may argue that EHI had some authority over ERAC-Boston employees because ERAC-Boston has a board of three LLC Managers (who are also officers and directors of EHI) with legal authority to take several actions for the subsidiary, including hiring and firing of personnel. *See* Compl. ¶ 23; *see also* SOF ¶¶ 37-38.  This argument, however, amounts to nothing.  The LLC Managers possess these powers not as individuals but "as members of the board by majority vote." *In re Enterprise*, 735 F. Supp. 2d at 343.  And it is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite the common ownership." *Id.* (quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)).  In any event, the LLC Managers do not hire or fire Assistant Branch Managers.  SOF ¶ 37.  They have delegated that authority to Mr. Duffy and his team. *Id.* ¶ 38.

Courts regularly reject claims against alleged joint employers where, as here, this factor weighs so heavily in defendant's favor, even on the pleadings. *See, e.g.*, *Lin v. Comprehensive Health Mgmt., Inc.*, 2009 WL 976835, at *2 (S.D.N.Y. Apr. 9, 2009) (dismissing complaint that lacked any allegation that defendant "had power to mak[e] hiring or firing decisions"); *Zhao v. Bebe Stores, Inc.*, 247 F. Supp. 2d 1154, 1156 (C.D. Cal. 2003) (granting summary judgment for alleged joint employer that "did not have the authority to recruit, hire, fire, layoff, or recall [the plaintiff] employees").

The first *Baystate* factor therefore weighs strongly against a finding of joint employer status.

### 2. EHI Did Not Supervise Plaintiff Bah or Control His Work Schedules or Conditions of Employment.

The second *Baystate* factor also weighs heavily in EHI's favor.  First, there can be no dispute that ERAC-Boston, not EHI, exclusively supervised and oversaw Plaintiff's work as an Assistant Branch Manager.  *See* SOF ¶¶ 43-46, 88-89, 93, 102.  Indeed, while he was an Assistant Branch Manager at the Lowell branch, Plaintiff Bah was "supervised or directed on a day-to-day basis" by his Branch Manager, an ERAC-Boston employee.  *Id.* ¶ 93.  In turn, ERAC-Boston Branch Managers report to Area Managers, who report to Regional Vice Presidents, all of whom are employees of ERAC-Boston.  *Id.* ¶¶ 91-92, 95-99.  Ultimately, all employees of ERAC-Boston report to the General Manager, who is an executive officer of ERAC-Boston and who works solely for ERAC-Boston as its operational leader.  *Id.* ¶ 100.  Plaintiff Bah was never supervised by anyone from EHI.  *Id.* ¶ 102  In fact, no EHI personnel supervise the work of any Assistant Branch Manager nationwide.  *Id.* ¶ 101.

Second, ERAC-Boston had absolute control over Plaintiff Bah's work assignments and work schedules as an Assistant Branch Manager.  *Id.* ¶¶ 41-45; Ex. 6, Duffy Decl. ¶ 76 ("While

he was an Assistant Branch Manager . . . Mr. Bah's work schedule was set by his Branch Manager."). Moreover, ERAC-Boston alone decides where it will open and operate branch locations, SOF ¶¶ 13, 15, what days and hours those branches will be open for business, *id.* ¶¶ 13-14, 45, and the locations to which its employees, including Assistant Branch Managers, will be assigned, *id.* ¶¶ 13, 41-42, 45. For example, ERAC-Boston employees assigned and transferred Plaintiff Bah to numerous different ERAC-Boston branches. *See id.* ¶¶ 31. EHI has no control or oversight over any of these decisions with respect to ERAC-Boston or any of its other Groups. *Id.* ¶ 45; *see also* Ex. 9, ERAC-Boston LLC Agreement at 2-3 (delegating extensive authority to ERAC-Boston).

Finally, ERAC-Boston promulgated all work rules and policies applicable to Plaintiff Bah. *See, e.g.,* SOF ¶ 65. For example, ERAC-Boston implements the job description, duties, and responsibilities of its Assistant Branch Managers and has discretion to modify those as it sees fit. *Id.* ¶ 66. EHI does publish and offer policies to its operating groups for a fee as part of its service package. *Id.* ¶¶ 48, 67, 72. These policies include the Business Ethics Guide and Personnel Policies Summary, both of which are collections of best practices based on input from General Managers of the various operating groups. *Id.* ¶¶ 67-68, 72-73. As Mr. Duffy explained, however, "when [he] disagree[s] with a recommended policy or believe[s] that a different or modified policy would better suit [ERAC-Boston], [he] can adopt a different or modified policy for ERAC-Boston." Ex. 6, Duffy Decl. ¶ 81. For example, ERAC-Boston has implemented its own policies regarding, *inter alia*, leave, alcohol, cell phones, and overtime. *Id.* ¶ 82; SOF ¶¶ 70, 78, 79. EHI did not and does not approve, deny, or otherwise oversee those policy determinations. *See id.* ¶¶ 71, 75. And Mr. Duffy's sworn testimony as to the non-mandatory nature of these policies is corroborated by the text of these policies themselves. *See infra* at 14 (citing Ex. 1 and Ex. 2).

Because EHI's published policies are indisputably suggested and not mandated, all the terms and conditions of Plaintiff Bah's employment were controlled by ERAC-Boston not EHI. *Cf. Martin v. Sprint United Mgt. Co.*, 273 F. Supp. 3d 404 (S.D.N.Y. 2017) (noting that a putative joint employer would not exercise "control" if its published commision schedules were "merely suggestions" and the direct employer understood it "was free to set pay rates without pushback"). Indeed, EHI's "*suggested* policies and practices" grant EHI "no more authority over the conditions of [Assistant Branch Manager's] employment than would a third-party consultant who made suggestions for improvements to [ERAC-Boston's] business practices." *In re Enterprise*, 683 F.3d at 471; *see also supra* at 15-16 (collecting cases holding that a parent's indirect effect on its subsidiary does not constitute joint employer control).

"Based upon the[se] undisputed facts, this factor weighs in [EHI]'s favor." *See In re Enter.*, 735 F. Supp. 2d at 345-46.

### 3.   EHI Did Not Determine Plaintiff's Rate or Method of Payment.

ERAC-Boston set Plaintiff Bah's rate of pay.  SOF ¶¶ 46.  Indeed, each operating group has exclusive authority to set the compensation for their respective Assistant Branch Managers. *Id.* ¶ 50.  EHI does aggregate compensation data from its operating groups across the country and share that data with the groups in developing compensation guidelines called the Management Compensation Guide. *Id.* ¶ 47.  EHI offers the Management Compensation Guide to its operating groups as a service, among other services that it provides to them in exchange for fees. *Id.* ¶ 48. ERAC-Boston, and all other operating groups, however, have discretion to vary from the Management Compensation Guide as they deem appropriate when setting pay for their Assistant Branch Managers. *Id.* ¶¶ 49-51.  Indeed, as Mr. Duffy has stated, in practice, he has adopted portions of the Management Compensation Guide and disregarded other portions in favor of different compensation plans ERAC-Boston creates independently. *Id.* ¶ 51.  Mr. Duffy does not

seek EHI's approval when he disregards or deviates from the guidelines contained in EHI's Management Compensation Guide. *Id.* ¶ 50.

ERAC-Boston also pays and provides benefits to its own employees. *Id.* ¶¶ 58, 106. EHI does negotiate with benefits providers and makes its own benefits offerings available to its groups in exchange for fees. *Id.* ¶ 59. And the operating groups—including ERAC-Boston—generally elect to offer the benefits packages that EHI makes available to their respective employees because EHI can negotiate superior benefits packages by leveraging economies of scale. *Id.* ¶¶ 60-61; *see Hukill v. Auto Care, Inc.*, 192 F.3d 437, 443-44 (4th Cir. 1999) (in the context of the FMLA, explaining that a parent's practice of providing administrative service to its subsidiaries "is not unusual in today's business climate and is of no consequence . . . Firms too tiny to achieve the realizable economies of scale or scope in their industry will go under unless they can integrate some of their operations with those of other companies, whether by contract or by ownership . . ."). Importantly, as EHI's Benefits Summary Plan makes clear, these benefits are offered through the operating groups at their own election: "[a]t their own discretion, each Group may elect to provide other benefits specific to *their employees*." *Id.* ¶ 63.

Finally, ERAC-Boston also had final discretion over the classification decision at issue in the lawsuit: whether Plaintiff Bah and other ERAC-Boston Assistant Branch Managers were to be classified as exempt from receiving overtime. *Id.* ¶¶ 52, 55-57. Indeed, ERAC-Boston alone made the decision to originally classify its Assistant Branch Managers as exempt and later to change that classification. Ex. 6, Duffy Decl. ¶¶ 60-64 ("It was my decision, alone, to change Assistant Branch Managers' classification to non-exempt starting November 27, 2016."). While EHI recommended both that its operating groups review the classification statuses of their employees and that Assistant Branch Managers be converted to non-exempt status before the new

Department of Labor regulations became effective on December 1, 2016, it is undisputed that ERAC-Boston maintained complete discretion and authority to disregard this recommendation and to retain or to modify the classification status of its Assistant Branch Managers, including Plaintiff Bah, and all other ERAC-Boston employees.  SOF ¶¶ 53-57.

It is well-settled that EHI's offering of health benefits and consolidated compensation guidelines (both offered for a fee) is not the kind of control relevant to the joint employment inquiry.  *See, e.g., Martin*, 273 F. Supp. 3d at 404 (explaining that suggested pay rates do not exemplify employer "control"); *In re Enterprise*, 735 F. Supp. 2d at 342-44 (holding that "the services offered by [EHI] were [not] a means of exercising control over the branch managers and assistant branch managers"); *Maddock*, 631 F. Supp. 2d at 1235-37; *Beck*, 391 F. Supp. 2d at 1188-90.  Likewise, even if EHI's "recommendation [regarding classification status] may have influenced [ERAC-Boston]'s classification decision, that does not establish control [by EHI] over that decision."  *Martin*, 273 F. Supp. 3d at 404.

Therefore, this factor is also in EHI's favor.

### 4.   ERAC-Boston, Not EHI, Maintained Plaintiff's Employment Records.

The fourth *Baystate* factor also weighs firmly against joint employer status.  ERAC-Boston maintained Plaintiff Bah's personnel file and employment records.  SOF ¶¶ 103-105.  Indeed, all operating groups have complete control over the records of their Assistant Branch Managers.  *Id.* ¶¶ 103-104.  ERAC-Boston has its own human resources department.  *Id.* ¶ 107.  It keeps its own personnel files for Assistant Branch Managers.  *Id.* ¶ 103.  As Plaintiff's sole employer, ERAC-Boston was also responsible for paying Plaintiff's payroll taxes and his unemployment and workers' compensation insurance.  *Id.* ¶ 108.  And EHI maintains no personnel files for Assistant Branch Managers, including Plaintiff.  *Id.* ¶¶ 104-105.

*   *   *

In sum, while it is the "totality of the circumstances, and not any one factor which determines whether a worker is the employee" of an alleged joint employer, *Baystate*, 163 F.3d at 675, Plaintiff Bah cannot show that EHI exhibited *any* of the relevant indicia of joint employment. Rather, each of the four *Baystate* factors cuts squarely and firmly against joint employer status.

To quickly recap, ERAC-Boston personnel hired Plaintiff Bah, promoted him to Assistant Branch Manager, supervised and directed his work in that position on a day-to-day basis, told him where he would work and when he would work, determined his compensation package, paid him, and kept his personnel file, and ultimately terminated him.  Meanwhile, EHI did not have control over any of those determinations.  The extent of EHI's involvement in Plaintiff Bah's employment was EHI's provision of administrative services—including negotiated benefits packages and suggested policy guidelines—all of which ERAC-Boston had authority to accept or reject at its own discretion.

On these facts, it is not surprising that Plaintiff Bah himself (and his counsel in this action) considered ERAC-Boston alone, and *not EHI*, to be his "employer" when they filed his charge at the   Massachusetts Commission Against Discrimination (challenging the decision by ERAC-Boston to terminate his employment) under penalty of perjury in 2017 (*see* Ex. 12 at 6 (identifying only "Enterprise Rent-a-Car" (from Boston) as his "employer" despite that the form allowed him to list "more than one"), and when they filed his unemployment compensation proceeding (*see* Ex. 13 at 1 (listing "Enterprise Rent-A-Car Company Of Boston, LLC" as Plaintiff's employer).  Or that Plaintiff Bah acknowledged in writing that he was employed by ERAC-Boston and "not employed by the corporate parent or any other related or affiliated company."  Ex. 14, Bah Signed Acknowledgment at 1; *see also* SOF ¶¶ 85-86.

Likewise, on this litany of facts, no reasonable factfinder could determine that EHI had

authority to hire or fire Plaintiff Bah, supervised or controlled the conditions of his employment, determined the rate or method of his pay, or maintained his employment records.  Taken together, these factors are fatal to his ability to make out "joint employment," and his overtime claims against EHI must be dismissed as a matter of law.  *See In re Enterprise*, 683 F.3d at 471 ("The evidence in the instant case so favors [EHI] that we conclude no reasonable juror could find that [EHI] was the plaintiffs' employer, and that the grant of summary judgment to [EHI] . . . was correct."); *see also, e.g., Lewis v. Vollmer of Am.*, 2008 WL 355607, at *5 (W.D. Pa. Feb. 7, 2008) (granting summary judgment on joint employer status in favor of parent company defendant who had filed a motion to dismiss or, in the alternative, motion for summary judgment with a supporting declaration from the direct employer); *Local 773 Int'l Bhd. Of Teamsters v. Cotter & Co.*, 691 F. Supp. 875, 881 (E.D. Pa. 1988) (holding parent company of hardware store chain not a joint employer despite significantly more evidence of control, including discipline and day-to-day supervision of drivers).

## **CONCLUSION**

For the foregoing reasons, EHI respectfully requests that the Court dismiss Plaintiff's overtime claims against EHI for failure to state a claim.  In the alternative, EHI respectfully requests that the Court enter summary judgment in its favor on the issue of joint employer status.

Dated: February 15, 2018

/s/ Jason C. Schwartz
Jason C. Schwartz (admitted *pro hac vice*)
Joshua S. Lipshutz, BBO #675305
Ryan C. Stewart (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

Barry J. Miller (BBO No. 661596)
Hillary J. Massey (BBO No. 669600)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Fax: (617) 946-4801
bmiller@seyfarth.com
hmassey@seyfarth.com

*Counsel for Defendant Enterprise Holdings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of Febuary, 2018, I filed the foregoing Memorandum of Law with this Court using the CM/ECF filing system.  This system sends notifications of such filing and service to all counsel of record.

 /s/ Jason C. Schwartz
Jason C. Schwartz (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5303
Telephone: (202) 955-8500
Fax: (202) 467-0539
jschwartz@gibsondunn.com

*Counsel for Defendants*