## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MAMADOU ALPHA BAH,

              Plaintiff,

v.

ENTERPRISE HOLDINGS, INC. and
ENTERPRISE RENT-A-CAR COMPANY
OF BOSTON, LLC,

              Defendants.

Case No. 1:17-cv-12542-MLW

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

Jason C. Schwartz (admitted *pro hac vice*)
Joshua S. Lipshutz (BBO #675305)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
Telephone:  (202) 955-8500
Fax:  (202) 467-0539
jschwartz@gibsondunn.com
jlipshutz@gibsondunn.com

*Counsel for Defendant Enterprise Holdings, Inc.*

Barry J. Miller (BBO #661596)
Hillary J. Massey (BBO #669600)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800
Fax:  (617) 946-4801
bmiller@seyfarth.com
hmassey@seyfarth.com

*Counsel for Defendants Enterprise Holdings, Inc. and Enterprise Rent-A-Car Company of Boston, LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 2

LEGAL STANDARD............................................................................................. 3

ARGUMENT ........................................................................................................ 4

I.   THE COURT SHOULD DISMISS BAH'S CLAIMS AGAINST EHI FOR FAILURE TO
     STATE A CLAIM UNDER RULE 12(B)(6) AND FOR LACK OF STANDING UNDER
     RULE 12(B)(1)................................................................................................ 4

     A.  Bah's SAC Fails to Adequately Allege Joint Employment Under *Baystate* .......... 6

     B.  The Court Should, Once Again, Disregard Bah's Reliance on Allegations
         That Are Based on the "Legally Invalid" Integrated Enterprise Doctrine............ 15

II.  THE COURT SHOULD DISMISS BAH'S WILLFULNESS CLAIMS AND APPLY THE
     PRESUMPTIVE, TWO-YEAR LIMITATIONS PERIOD ......................................... 16

     A.  The Standard for "Willfulness" Under the FLSA Is a High Bar .......................... 17

     B.  The SAC's Threadbare and Conclusory Allegations of "Willfulness"
         Cannot Survive a Motion to Dismiss.................................................................... 17

CONCLUSION...................................................................................................... 19

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adedapoidle-Tyehimba v. Crunch, LLC*,
    2013 WL 4082137 (N.D. Cal. Aug. 9, 2013) ........................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................3, 14, 17, 18

*Baystate Alternative Staffing, Inc. v. Herman*,
    163 F.3d 668 (1st Cir. 1998).............................................................................5, 6, 11, 13

*Beck v. Boce Grp., L.C.*,
    391 F. Supp. 2d 1183 (S.D. Fla. 2005) ...............................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................3

*Burke v. Wells Fargo Bank, N.A.*,
    2015 WL 2125906 (D.N.H. May 5, 2015).........................................................................9

*Cavallaro v. UMass Mem'l Health Care, Inc.*,
    971 F. Supp. 2d 139 (D. Mass. Jan. 28, 2013).......................................................8, 13, 14, 16

*Cavallaro v. UMass Mem'l Healthcare, Inc.*,
    678 F.3d 1 (1st Cir. 2012)...........................................................................5, 10, 11, 13, 16

*Chao v. A-One Med. Servs., Inc.*,
    346 F.3d 908 (9th Cir. 2003) .............................................................................................15

*Chesley v. DirectTV, Inc.*,
    2015 WL 3549129 (D.N.H. June 8, 2015).................................................................17, 18

*Colson v. Avnet, Inc.*,
    687 F. Supp. 2d 914 (D. Ariz. 2010) ................................................................................18

*Doe I. v. Wal-Mart Stores, Inc.*,
    572 F.3d 677 (9th Cir. 2009) .............................................................................................16

*Galloway v. Chugach Gov't Servs., Inc.*,
    199 F. Supp. 3d 145 (D.D.C. 2016)..................................................................................17

*Hamilton v. Partners Healthcare Sys., Inc.*,
    209 F. Supp. 3d 379 (D. Mass. 2016), *aff'd*,
    879 F.3d 407 (1st Cir. 2018)...................................................................................4, 5, 10, 13

*Hosseini v. Capital One, N.A.*,
    217 F. Supp. 3d 441 (D. Mass. 2016) ....................................................................4

*Hukill v. Auto Care, Inc.*,
    192 F.3d 437 (4th Cir. 1999) .............................................................................11

*Hurd v. NDL, Inc.*,
    2012 WL 642425 (D. Md. Feb. 27, 2012) ...........................................................18

*In re Enter. Rent-A-Car Wage & Hour Emp't Practice Litig.*,
    735 F. Supp. 2d 277 (W.D. Pa. Aug. 13, 2010) .......................................7, 11, 13, 14

*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*,
    683 F.3d 462 (3d Cir. 2012) ...............................................................10, 13, 14

*Lin v. Comprehensive Health Mgmt., Inc.*,
    2009 WL 976835 (S.D.N.Y. Apr. 9, 2009) ...........................................................16

*Maddock v. KB Homes, Inc.*,
    631 F. Supp. 2d 1226 (C.D. Cal. 2007) ................................................................9

*Martin v. Sprint United Mgmt. Co.*,
    273 F. Supp. 3d 404 (S.D.N.Y. 2017) .......................................................10, 11, 15

*McBain v. Behr Paint Corp.*,
    2017 WL 1208074 (N.D. Cal. Apr. 3, 2017) ........................................................16

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 (1988) ........................................................................................17

*Mell v. GNC Corp.*,
    2010 WL 4668966 (W.D. Pa. Nov. 9, 2010) .........................................................18

*Mhoon v. Metro. Gov't of Nashville*,
    2016 WL 6250379 (M.D. Tenn. Oct. 26, 2016) ....................................................13

*Ochoa v. Pearson Educ., Inc.*,
    2012 WL 95340 (D.N.J. Jan. 12, 2012) ...............................................................18

*Ogala v. Chevron Corp.*,
    2014 WL 2089901 (N.D. Cal. May 19, 2014) .......................................................13

*Patel v. Wargo*,
    803 F.2d 632 (11th Circ. 1986) .........................................................................15

*Pruell v. Caritas Christi*,
    2013 WL 2420918 (D. Mass. May 31, 2013) .....................................................4, 16

*PSW, Inc. v. Visa U.S.A., Inc.*,
    2006 WL 519670 (D.R.I. Feb. 28, 2006) ............................................................9

*Quinteros v. Sparkle Cleaning, Inc.*,
    532 F. Supp. 2d 762 (D. Md. 2008) ..................................................................16

*Rowlett v. Mich. Bell*,
    2013 WL 308881 (W.D. Mich. Jan. 25, 2013) ..................................................18

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) ............................................................................4, 9

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ..............................................................................................7

*Vasto v. Credico (USA) LLC*,
    2017 WL 4877424 (S.D.N.Y. Oct. 27, 2017) ..............................................10, 11

*Wong v. Bann-Cor Mortg.*,
    2011 WL 2314198 (W.D. Mo. June 9, 2011) ....................................................12

**Statutes**

29 U.S.C. § 207(a)(1) ................................................................................................4

29 U.S.C. § 213(a)(1) ................................................................................................2

29 U.S.C. § 255(a) ..................................................................................................17

M.G.L c. 151, § 1A ..................................................................................................4

M.G.L c. 151, § 1A ..................................................................................................4

**Regulations**

85 Fed. Reg. 2820 (Jan. 16, 2020) ....................................................5, 7, 9, 10, 13, 14

## INTRODUCTION

Plaintiff Mamadou Bah's Second Amended Complaint ("SAC") fails to plead sufficient and legally relevant facts to support his claim that Defendant Enterprise Holdings, Inc. ("EHI") acted as his joint employer or that EHI and Enterprise Rent-A-Car Company of Boston, LLC ("ERAC-Boston") willfully violated the Fair Labor Standards Act ("FLSA").  After nearly two years of litigation and two failed attempts at amendment, enough is enough.  Only one reasonable inference can be drawn from the latest pleading—that no such facts exist.  At long last, these claims should be dismissed with prejudice.

Since the beginning, there has been no dispute that ERAC-Boston was Bah's direct employer and has the ability and means to pay any judgment that may issue in this case.  Bah nonetheless insists on repeatedly trying to bring a claim against EHI, ERAC-Boston's parent company, under a joint employer theory.  This Court has given Bah every opportunity to frame a viable claim against EHI.  Over a year ago, this Court made it crystal clear that it would apply the joint employer standard set forth in the First Circuit's binding decision in *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668 (1st Cir. 1998), to measure the sufficiency of Bah's pleading against EHI.  It afforded Bah an opportunity to amend his complaint to satisfy that standard, if he could.  And yet, despite having a clear roadmap for what is required of him to state a claim, Bah is no closer to pleading a valid claim against EHI today than he was two years ago.  If anything, over the past several months, Bah has been forced to water down his claim against EHI even further in order to avoid possible Rule 11 sanctions, making it more clear than ever that he simply cannot allege facts in good faith that would render EHI his joint employer.

This Court also warned Bah that it was "very likely" to "grant the motion to dismiss on willfulness" because the First Amended Complaint ("FAC") contained little more than legal conclusions in support of this claim.  Dkt. 82 at 60:18-19.  Ignoring the Court's clear guidance,

1

the SAC adds no new allegations to aid Bah's anemic claims that Defendants willfully violated the FLSA.  That should be the end of the story.

After giving Bah multiple chances to keep his baseless lawsuit against EHI alive, this Court should reject Bah's insufficient claims of joint employer liability and should grant both Defendants' motion to dismiss Bah's willfulness claims.[1]

## BACKGROUND

Bah alleges that he worked in multiple Enterprise Rent-A-Car branch locations in and around Boston from May 2014 through January 2017.  SAC ¶ 4.[2]  He does not dispute that at all relevant times his direct employer was ERAC-Boston.  *See* Dkt. 57 at 4.  In July 2016, ERAC-Boston promoted Bah to Assistant Branch Manager.  SAC ¶ 4.  As an Assistant Branch Manager, Bah was paid on a salary basis, at a flat weekly rate, plus an incentive bonus based on his branch's net profits.  *Id.* ¶ 22.  As a manager, he was classified as exempt for purposes of overtime pay under federal and state law.  *Id.*; *see also* 29 U.S.C. § 213(a)(1).  On November 27, 2016, in anticipation of impending U.S. Department of Labor ("DOL") changes to the exemption regulations that would have increased the minimum salary requirements for exempt employees, ERAC-Boston reclassified Bah (and its other Assistant Branch Managers) as non-exempt to "preserv[e] [his incentive-based] pay structure."  Ex. 4 at 1.

Bah now claims that his original exempt classification was incorrect and seeks back-pay damages for overtime compensation.  SAC at 12-13.  None of the significant litigation to date, however, has focused on the merits of these allegations.  Instead, for two years, the parties have

---

[1]  As suggested by the Court, Dkt. 91, Defendants incorporate all arguments concerning futility that they presented in their Opposition to Bah's Motion to Amend, Dkt. 87.

[2]  Defendants assume the truth of the SAC's factual allegations for purposes of this motion only. Defendants reserve all defenses to Bah's allegations.

litigated whether Bah has alleged sufficient facts to allow him to bring these claims against EHI as his "joint employer" under the FLSA and state law. *Id.* ¶¶ 7, 25.

Bah further claims that the purported overtime violations were "willful," *id.* ¶ 35, and, on that basis, seeks certification of a nationwide collective action of all Assistant Branch Managers who worked for any EHI operating subsidiary over the past three years, Dkt. 5 at 1-2.

After briefing and argument, this Court granted Defendants' first Motion to Dismiss. Dkt. 57. Bah filed his FAC, ignoring the basis for this Court's Order and re-alleging the same theories and facts that this Court rejected. *See* Dkt. 63. Bah's FAC also included several inaccurate statements, falsely alleging that ERAC-Boston manager Dwayne Walker worked for EHI. *Id.* ¶¶ 24-25. This allegation was central to Bah's renewed attempt to implicate EHI in this lawsuit. *See* Dkt. 82 at 7:20-24 (The Court: "I thought that the allegation that Mr. Walker worked for [EHI] and [EHI] made the decision to reclassify would be significant in the analysis given the nature of the allegations, all the allegations."); *id.* at 45:1-7 (The Court: "I thought this was your strongest point . . . ."). As a result, Bah resisted Defendants' request to withdraw his factually unfounded statements until this Court emphasized the pleading requirements of Rule 11. Dkt. 85. Faced with the prospect of sanctions, Bah sought leave to retract his false allegations, Dkt. 91, and subsequently filed his SAC, Dkt. 92.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff bears the burden of pleading facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In applying this standard, the Court "isolate[s] and ignore[s] statements in the complaint that simply offer legal

labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

The Court may also consider "implications from documents attached to or fairly incorporated into the complaint" and "facts susceptible to judicial notice." *Schatz*, 669 F.3d at 55 (quotation marks omitted). Where a conflict exists between the complaint's factual allegations and these extrinsic documents, "the documents trump the complaint's allegations." *Hosseini v. Capital One, N.A.*, 217 F. Supp. 3d 441, 444 n.2 (D. Mass. 2016) (quoting *Schatz*, 669 F.3d at 55 n.3) (alteration omitted).[3]

## ARGUMENT

### I.   THE COURT SHOULD DISMISS BAH'S CLAIMS AGAINST EHI FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) AND FOR LACK OF STANDING UNDER RULE 12(B)(1).

Only an "employer" can be held liable for unpaid overtime under both federal and state law. *Pruell v. Caritas Christi*, 2013 WL 2420918, at *1, *3 (D. Mass. May 31, 2013); *see also* 29 U.S.C. § 207(a)(1); M.G.L c. 151, § 1A (same). As a result, if Bah "fail[s] to allege a plausible FLSA employment relationship [with EHI], there is no case or controversy and [he] do[es] not have standing." *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 389 (D. Mass. 2016), *aff'd*, 879 F.3d 407 (1st Cir. 2018).

As this Court ruled years ago, the joint employer inquiry turns on the four factors set forth by the First Circuit in *Baystate*, namely whether the alleged joint employer:

> (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.

---

[3]   Here, the Court may consider all exhibits attached via the contemporaneously filed Declaration of Travis S. Andrews, including the Business Ethics Guide excerpts, Personnel Policies Summary excerpts, and Reclassification Memo, because they are referenced throughout and integral to the SAC.

163 F.3d at 675.  The correctness of that ruling has been since confirmed by new DOL regulations expressly adopting this test.  *See* Joint Employer Status Under the Fair Labor Standards Act, 85 Fed. Reg. 2820, 2821 (Jan. 16, 2020); *see also* Dkt. 82 at 40:5-8 (The Court: "I thought the most important part of the regulation is it confirms the [U.S.] Department of Labor's view that *Baystate*'s the test, and that it is the test, not the case that the plaintiffs were relying on[.]").[4]

Under *Baystate*, no one factor is dispositive.  163 F.3d at 675.  Instead, the court must take into account the totality of the circumstances to ensure that only those putative employers who actually exhibit "control over the [plaintiff's] . . . relationship" are brought within the ambit of joint employer liability.  *Id.*  Liability attaches only when there was "an actual employment relationship between the employee and *each* joint employer."  *Hamilton*, 209 F. Supp. 3d at 390 (emphasis added).  Whether Bah has adequately alleged that EHI was his joint employer under this standard—and thus whether he has standing—"is a question of law" ripe for determination on a motion to dismiss.  *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 9 (1st Cir. 2012).

Application of the well-established joint employer standard here requires dismissal.  Bah has failed, yet again, to put forth factual allegations that plausibly suggest he had an employment relationship with EHI.  Just like his original complaint, Bah's SAC omits (and sometimes obfuscates) critical facts like who hired him, who fired him, who set his work schedule and hours, who supervised and directed his daily work, who determined his salary rate, who paid him, who maintained his personnel file, and even whether he ever interacted with any employees or officers of EHI during his time as an ERAC-Boston Assistant Branch Manager.

---

[4] As this Court previously recognized, it is "appropriate to apply the *Baystate* test to the [Bah's] Massachusetts state law claims."  Dkt. 57 at 51:13-19 (concluding that "the result is the same with regard to the Massachusetts Wage Act").

Indeed—except for a handful of new allegations—the SAC is based primarily on the same (but watered down) allegations that this Court already held to be insufficient to state a claim. And the "new" allegations cannot save the day because—rather than set out factual allegations relevant to the joint employer inquiry—Bah parroted each and every one of these allegations directly from the summary judgment opinions in *In re Enterprise*. *See* SAC ¶¶ 26-34. This was a surprising (and ultimately fatal) choice given that those opinions considered each of the facts that Bah has elected to parrot and held that, taken together, under a test virtually identical to *Baystate*, they failed as a matter of law to establish that EHI jointly employed its operating subsidiaries' Assistant Branch Managers. The same holds true here.

## A. Bah's SAC Fails to Adequately Allege Joint Employment Under *Baystate*.

Despite his third opportunity to plead, Bah still fails to sufficiently allege that EHI was his joint employer under the *Baystate* test. Although Bah has now twice revised and supplemented his original allegations, the revisions only strengthen EHI's arguments for dismissal. In fact, each and every "new" allegation has already been analyzed in extensive litigation and deemed insufficient to support joint employer liability for EHI as a matter of law.

### 1. Bah does not allege that EHI had the power to hire or fire him.

Like both of his prior pleadings, the SAC is devoid of any allegations that EHI "had the power to hire and fire [him or other Assistant Branch Managers]." *Baystate*, 163 F.3d at 675. Tellingly, Bah does not identify the individuals involved in interviewing and hiring him, "promot[ing] [him] to the position of Assistant Branch Manager," or ultimately terminating him for failing a drug test. *See* SAC ¶¶ 11-12. Yet there is no disputing that all of these critical facts are within his personal knowledge. The only reason they are not pleaded is because all of them would weigh *against* a finding of joint employment.

6

Unable to allege that EHI had the power to hire or fire him, Bah is left to allege that EHI "maintains a website, www.erac.com/recruit" through which individuals seeking potential employment can "submit an online application for a position in their desired region." SAC ¶ 31. But that is far from enough to establish joint employer liability. In fact, Bah copied this allegation verbatim from an opinion *granting* summary judgment in EHI's favor on this very issue. *See In re Enter. Rent-A-Car Wage & Hour Emp't Practice Litig.*, 735 F. Supp. 2d 277, 287 (W.D. Pa. Aug. 13, 2010) (explaining that EHI "maintains an external job recruiting website, www.erac.com/recruit, [where] [p]rospective employees select a part of the country where they would like to work" (citation omitted)). That fact was not enough to establish joint employment there, nor can it here. Accepting applications and then routing them to the employer—a task also performed by third-party recruiting websites like Monster.com—is simply not the same or even indicative of authority to hire and fire those employees who apply.

Similarly, it is irrelevant that Ms. Nicholson, Mr. Taylor, and Mr. Short, who serve on the Board of Managers of ERAC-Boston and as EHI officers, "retained" "authority to revoke th[e] delegation" of the power to hire or fire ERAC-Boston personnel. *See* SAC ¶¶ 26-27. These individuals possessed this authority, not as EHI officers, but as members of the Board of ERAC-Boston LLC. *See In re Enter.*, 735 F. Supp. 2d at 343. It is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership." *Id.* (quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)) (alteration omitted). In any event, the DOL has clarified that "to be a joint employer under the [FLSA] the [putative employer] must actually exercise—directly or indirectly—one or more of the four control factors." 85 Fed. Reg. at 2821. And, as this Court previously recognized, "even assuming the delegation [to hire or fire]

came [from Enterprise Holdings, Inc.], if they delegated it, they didn't revoke it, and they didn't exercise the authority . . . , the [DOL] regulation indicates . . . you have to actually exercise the authority, not have some power to do it that you don't exercise." Dkt. 82 at 37:21-38:2.

Because "the amended complaint makes no specific allegations that any corporate defendant other than [ERAC-Boston] had the power to hire or fire" Bah, this factor necessarily weighs in favor of dismissal. *Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F. Supp. 2d 139, 148-49 (D. Mass. Jan. 28, 2013).

### 2. Bah does not allege that EHI supervised him or had control over his work schedule or conditions of employment.

The second *Baystate* factor also strongly favors dismissal. Bah still has not put forward a single allegation that EHI (1) supervised his work or (2) played any role in—much less had control over—his work schedule and conditions of employment. He again fails to identify his immediate supervisor or who directed and oversaw his work, set his work schedule, decided to which branch he would be assigned, and instructed him regarding work habits or interactions with customers—all facts which are directly relevant, well within his personal knowledge, and critical to this inquiry. *See Cavallaro*, 971 F. Supp. 2d at 149. The simple reason all three iterations of Bah's pleading have omitted these critical facts is that Bah knows it was ERAC-Boston, *not* EHI, who supervised him and controlled his work schedule and conditions of employment.

Instead, Bah proffers the same conclusory (and baseless) allegation that EHI "dictat[es]" or otherwise "imposes" "employment policies" on all of its operating groups.[5] SAC ¶¶ 7, 29. This Court has already concluded that this allegation is insufficient to withstand a motion to dismiss. *See* Dkt. 1 ¶¶ 7, 23; Dkt. 57 at 50:15. And it should do so again. All Bah can point to in support of this

---

[5] EHI maintains that Bah has no reasonable, good-faith basis to allege that EHI "dictates" (rather than recommends) policies for its operating subsidiaries, and expressly reserves its rights under Rule 11. *See* Dkt. 61 at 1.

claim is EHI's "Business Ethics" and "Personnel Policies Summary" handbooks, SAC ¶ 29, which on their face belie his claim. *See Schatz*, 669 F.3d at 55 n.3 (noting documents "trump" inconsistent allegations); *see also* Dkt. 29 at 14-15 (collecting cases).  As even Bah's own allegations recognize, the handbooks "dictat[e] policy for all" U.S. employees of "*Enterprise Holdings* [defined as EHI]"— that is, employees of the corporate parent, and not the operating subsidiaries.  SAC ¶ 29 (emphasis added).  For operating subsidiaries like ERAC-Boston, by contrast, these policies expressly make clear (on their title pages no less) that each operating group "at their own discretion . . . may elect to implement its own business practices unique to its operations and employees."  Ex. 2, Business Ethics Guide at 3; *see also* Ex. 3, Personnel Policies Summary at 3 (same for personnel policies). As a result, and as Bah admits elsewhere, these are nothing more than "recommended policies and programs" and "best practices."  SAC ¶ 30.[6]

As the DOL has made clear, providing "a sample employee handbook" or "other forms and documents for use in operating the [business]" "does not make joint employer status more or less likely under the [FLSA]."  85 Fed. Reg. at 2861-62.  Indeed, courts have consistently held that the act of recommending policies or training materials to a subsidiary does not transform a parent company into a joint employer.  *See, e.g.*, *Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1235-37 (C.D. Cal. 2007) (explaining that providing "training materials, procedures, and other information to management personnel in its subsidiaries" "support[s] the assertion that [the parent] possesse[d] influence over management personnel at [its] subsidiaries," but it does "not permit the further inference" "that [the parent] supervised and controlled the scheduling or working conditions of [the subsidiaries' employees]"); *see also Beck v. Boce Grp., L.C.*, 391 F. Supp. 2d 1183, 1188-90 (S.D.

---

[6] *See, e.g.*, *PSW, Inc. v. Visa U.S.A., Inc.*, 2006 WL 519670, at *8 (D.R.I. Feb. 28, 2006) (dismissing claims and holding the court need not "accept all of Plaintiff's allegations as true" where allegations were "inconsistent and contradictory"); *Burke v. Wells Fargo Bank, N.A.*, 2015 WL 2125906, at *1-2 (D.N.H. May 5, 2015).

Fla. 2005).  As the Third Circuit has explained, EHI's provision of "*suggested* policies and practices" gives EHI "no more authority over the conditions of [Plaintiff Bah's] employment than would a third-party consultant who made suggestions for improvements to the subsidiaries' business practices." *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.,* 683 F.3d 462, 471 (3d Cir. 2012).  This is particularly true with respect to policies, like those here, "related to quality control, legal obligations, or standards to protect the health and safety of the employees or public." 85 Fed. Reg. at 2834; *see also, e.g.*, Ex. 2 at 2; Ex. 3 at 2 (showing entries for "Fair Competition and Antitrust Laws," "Foreign Corrupt Practices Act," and "Legal Compliance," "Sexual Harassment," and "Equal Opportunity Employer").  *See Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 426 (S.D.N.Y. 2017); *Vasto v. Credico (USA) LLC*, 2017 WL 4877424, at *9, *10 (S.D.N.Y. Oct. 27, 2017).

In fact—even if these policies could show (and they do not) "centralized control [that] extend[ed] to system-wide policies" "and that each component entity implement[ed] the policies as a result of [that] centralized control,"—that would still be "insufficient to suggest that [EHI] actually exercised authority over plaintiff's work."  *See Cavallaro*, 971 F. Supp. 2d at 149-50; *see also Hamilton*, 209 F. Supp. 3d at 390 (dismissing joint employer claim alleging defendants had "centrally organized and controlled" "human resources … including through the . . . maintenance of system-wide policies" (quotation marks omitted)).

Bah also includes a few allegations regarding EHI's provision of customer service support to its operating subsidiaries.  SAC ¶ 31 (alleging that EHI "maintains a call center and website through which customer reservations are made for the Enterprise subsidiaries throughout the country," EHI "handles customer requests for roadside assistance," EHI "oversees a customer service evaluation program").  But again—as demonstrated more fully in Defendants' Memorandum of Law in Support of their Motion to Dismiss Bah's FAC, Dkt. 66—Bah merely recycles these allegations (often verbatim) from the factual record in *In re Enterprise*, which the court held could

not support a claim that EHI was a joint employer.  *See* Dkt. 66 at 11-12.  The same holds true here.

Providing "customer service" support cannot reasonably show that EHI exercised actual control over

Bah or other subsidiary employees.  *See Martin*, 273 F. Supp. 3d at 426 ("Courts have widely held

that exercising quality control by having strict standards and monitoring compliance with those

standards does not constitute supervising and controlling employees' work conditions." (quotation

marks and alteration omitted)); *Vasto*, 2017 WL 4877424, at *9, *10.

The same is true with respect to Bah's claim that EHI "distributes employee satisfaction

surveys to the employees of the regional subsidiaries."  SAC ¶ 31.  Distributing surveys regarding

employee satisfaction is not the same as supervising or controlling employees' work schedules and

conditions of their employment.  *See In re Enter.*, 735 F. Supp. 2d at 288 (granting EHI summary

judgment as to joint employer liability despite this same fact).[7]

Because Bah has failed to allege any facts plausibly suggesting that EHI exercised any

control over him whatsoever, the second *Baystate* factor weighs in favor of dismissal here.

### 3.  Bah does not plausibly allege that EHI determined his rate or method of payment.

Bah also fails to plead the third *Baystate* factor—whether "the alleged employer . . .

determined the rate and method of payment."  163 F.3d at 675.  Unlike *Baystate*, Bah does not allege

that EHI "determined the worker's hourly wages, chose a method of payment, collected time sheets,

and issued worker's paychecks."  *Cavallaro*, 971 F. Supp. 2d at 149-50.  Instead, he relies

exclusively on his allegation that EHI "made" the decision to "reclassify[ ] [him and all other

Assistant Branch Managers] as non-exempt from overtime."  SAC ¶ 32.  As detailed in EHI's

---

[7]  *See also Hukill v. Auto Care, Inc.*, 192 F.3d 437, 443-44 (4th Cir. 1999) (A parent's practice of providing administrative services to its subsidiaries "is not unusual in today's business climate and is of no consequence . . . . Firms too tiny to achieve the realizable economies of scale or scope in their industry will go under unless they can integrate some of their operations with those of other companies, whether by contract or by ownership." (quotation marks omitted)).

original motion, that allegation conflicts with the text of the ERAC-Boston Reclassification Memorandum (Ex. 4), on which it is explicitly based.  The Memorandum was directed specifically "To: All [ERAC-Boston, subregion 'FF'] Assistant Managers," *not* to all Assistant Branch Managers on a nationwide basis.  *Id.*  And the mere fact that one question in the FAQ portion refers to "Enterprise Holdings" (SAC ¶ 24) cannot change this result or be used to give rise to a plausible inference that Enterprise Holdings, <u>Inc.</u> made that decision.  It is beyond dispute that ERAC-Boston has permission to use "Enterprise Holdings" as a "doing business as" ("d/b/a") trade name (*see* Ex. 5, Master Licensing Agreement at 1, 10), and, in fact, has registered a Business Certificate with the Commonwealth of Massachusetts under the name "Enterprise Holdings" (*see* Ex. 6 at 1).[8]

Importantly, Bah has been forced to withdraw key allegations attempting to link EHI employees to the Reclassification Memorandum.  *Compare* Dkt. 92 ¶¶ 24-25 *with* Dkt. 63 ¶¶ 24-25 (removing false allegations that Mr. Walker—the ERAC-Boston manager who authored the Reclassification Memorandum—worked for EHI).  As this Court previously observed, "the allegation that Mr. Walker worked for [EHI]" was Bah's "strongest point." (Dkt. 82 at 7:20-24, 45:1-7).  Without this key allegation, Bah simply cannot demonstrate a plausible link between EHI and this memorandum.

Bah is therefore left to allege that his original classification was based on EHI's "policy, practice, *and/or recommendation*."  SAC ¶ 14 (emphasis added).  But that does not suffice.  Bah may not hide behind the vagueness created by his disjunctive allegation to skirt the requirements of Rule 11 and at the same time maintain that he has asserted a plausible claim against all Defendants under Rule 12.  Indeed, courts frequently find allegations using the "'and/or' phraseology" are not well-pled.  *Wong v. Bann-Cor Mortg.*, 2011 WL 2314198, at *12 (W.D. Mo.

---

[8]  The Court may take judicial notice of these public records and materials fairly incorporated by reference in the SAC.  *Schatz*, 669 F.3d at 55.

June 9, 2011); *see also Ogala v. Chevron Corp.*, 2014 WL 2089901, at *2-3 (N.D. Cal. May 19, 2014). "Because the 'and/or' indicates that [EHI] might or *might not* have" imposed a "policy" or "practice" on ERAC-Boston, "the allegation[ ] [is] insufficiently specific." *See Mhoon v. Metro. Gov't of Nashville*, 2016 WL 6250379, at *3 (M.D. Tenn. Oct. 26, 2016).

But even if the Reclassification Memorandum "tend[ed] to support the claim that [EHI] determined Bah's rate and method of payment" (and it does not), that—in this Court's words—"is not sufficient to state a plausible claim that [EHI] is Bah's employer." Dkt. 57 at 50:15-24; *see also Cavallaro*, 971 F. Supp. 2d at 149-50. At most, Bah's complaint would then "include allegations against [EHI] that are relevant to [one subpart of] one of the *Baystate* factors"—Bah's "method of [his] payment." *Cavallaro,* 971 F. Supp. 2d at 150. "However, based on the totality of the circumstances, that one factor is not sufficient" to support a claim of joint employer liability. *Id.*

Bah's allegation that EHI "established a profit sharing plan" for ERAC-Boston employees, Dkt. 63 ¶¶ 33-34, also does not support a finding of a joint employer relationship. As the DOL Final Rule makes clear, "[t]he potential joint employer's practice of . . . offering an association health plan or association retirement plan to the employer or participating in such a plan with the employer . . . does not make joint employer status more or less likely under the Act." 85 Fed. Reg. at 2859. Court decisions predating the Final Rule are in accord. *E.g.*, *In re Enter.*, 735 F. Supp. 2d at 288-89; *In re Enter.*, 683 F.3d 426; *Cavallaro*, 971 F. Supp. 2d at 149-50 (dismissing joint employer claim despite allegation that defendants had "centralized" "employee-benefit plans"); *Hamilton*, 209 F. Supp. 3d at 390; *see also* Dkt. 82 at 30:19-23. Neither does Bah's allegation that EHI "recommended salary ranges" to ERAC-Boston, SAC ¶ 33, support a claim that EHI then "determined the rate and method of payment" for Bah, as *Baystate* requires. 163 F.3d at 675; *see also In re Enter.*, 735 F. Supp. 2d at 289. To the contrary, it establishes the opposite—that EHI can make only a recommendation, while ERAC-Boston is the actual decision-maker.

Because Bah's allegations have no impact on the joint employer analysis as a matter of law, the third *Baystate* factor weighs in favor of dismissal here.

### 4. Bah does not allege that EHI maintained his employment records.

Finally, Bah asserts that EHI "has maintained employment records for Enterprise employees across the country, including but not limited to the employees' benefit plan selections." SAC ¶ 34. This allegation, however, suffers from the same fundamental deficiency that necessitated dismissal of the original pleading: Bah continues to refer collectively to both defendants as "Enterprise," obfuscating for which "employees" he claims EHI "maintained employment records." *Id.* In any event, the first portion of that allegation—that EHI "has maintained employment records" is merely a "formulaic recitation" of the fourth *Baystate* factor and therefore should be afforded no weight. *Iqbal*, 556 U.S. at 678.

The only specific allegation that Bah musters on this factor is that EHI maintained records of "employees' benefit plan selections." SAC ¶ 34. But, again—even if this allegation were deemed to include ERAC-Boston employees such as Bah—the fact that EHI supplied administrative services and support to subsidiaries, including "employee benefit plans," is insufficient to establish joint employment as a matter of law. *See* 85 Fed. Reg. at 2859; *In re Enter.*, 683 F.3d at 466 (explaining that EHI's "human resources department also negotiates health plans which are offered to employees of [EHI] and to employees of the subsidiaries. Participation in such plans is not required, but if a subsidiary's employee enrolls in the various benefit programs, [EHI] bills that subsidiary for the benefits the employee elects"); *see also In re Enter.*, 735 F. Supp. 2d at 288-89.

Furthermore, that EHI is alleged to have had access to Bah's benefit plan selections "do[es] not indicate that [EHI] play[ed] an active role in *maintaining* [his] records . . . [and] exercised control over the economic aspects of [his] employment." *Cavallaro*, 971 F. Supp. 2d at 150 (holding insufficient allegations that defendants had "centralized [ ] payroll records" and "use[d] a centralized, web-based human resources tool for employees, called HR *Connect*"). Importantly, Bah does not

allege that EHI maintained his personnel file or records relating to wages paid and hours worked. *See Martin*, 273 F. Supp. 3d at 437-38 (holding fact that alleged joint employer maintained "a file containing each agent's name, photograph, [contract], and background check results" did not satisfy this factor because the alleged joint employer "never maintained employment records on the matter most relevant to overtime obligations under the FLSA: the *hours* worked by [the] individual [employees]" (quotation marks omitted)).

## B. The Court Should, Once Again, Disregard Bah's Reliance on Allegations That Are Based on the "Legally Invalid" Integrated Enterprise Doctrine.

Bah's original Complaint was based on the faulty premise that EHI could be held liable under the FLSA using the single integrated enterprise test. Dkt. 1 ¶ 7. The Court correctly rejected that theory as "fundamentally" "invalid." Dkt. 57 at 44:21-23; 47:19-24. Specifically, the Court held that "the integrated enterprise test . . . is not [ ] a proper test for determining whether [EHI] is an employer that can be individually held liable under the FLSA." *Id.* at 49:11-50:3. It dismissed Bah's Complaint and ordered that he "take a breath" and determine what relevant allegations, if any, he could make in an amended complaint. *Id.* at 41:5-15.

Bah declined to follow this Court's guidance. In fact, he continues to assert the same (and even additional) allegations in support of the single integrated enterprise doctrine, which this Court and others have held to be inapplicable here. *See, e.g.*, *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986) ("[T]he enterprise analysis is different from the analysis of who is liable under the FLSA."); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003). For instance, Bah continues to allege: (i) that Defendants are "joint employers" because their "operations are interrelated," (ii) that they "share common management and directors," and (iii) that "they share common ownership and centralized control of labor relations." SAC ¶ 7. Bah also inserts new allegations relying on this "invalid" theory, alleging: (i) Defendants are "joint employers because,

15

among other reasons, they are an integrated enterprise," *id.* ¶ 25, and (ii) EHI and ERAC-Boston share common management through Pamela Nicholson, Andrew Taylor, and Rick Short, who are officers or directors (LLC managers) of both entities, *id.* ¶¶ 26-27.

What is past is prologue. These allegations, like the ones Bah included in his original Complaint, have no bearing on the joint-employer analysis. *See Cavallaro*, 971 F. Supp. 2d at 147-49 (rejecting argument that the court should consider additional factors including "whether there is common ownership among the employers"). Accordingly, the Court should disregard these allegations or strike them as immaterial pursuant to Fed. R. Civ. P. 12(f).

\*     \*     \*

"Simply put, the [C]omplaint does not set forth a plausible claim that [EHI] exercised sufficient control over [Bah's] employment conditions to be considered an employer under the FLSA." *Cavallaro,* 971 F. Supp. 2d at 150. Courts routinely dismiss joint employer wage and hour claims in similar circumstances, and this Court should do the same. *See, e.g.*, *Pruell*, 2013 WL 2420918, at \*3 (dismissing joint employer claims despite allegations that defendant managed "a centralized [ ] system that handles payroll and human resources globally"); *Lin v. Comprehensive Health Mgmt., Inc*., 2009 WL 976835, at \*2 (S.D.N.Y. Apr. 9, 2009) (dismissing complaint that lacked allegations that defendant "had power to mak[e] hiring or firing decisions").[9]

## II.  THE COURT SHOULD DISMISS BAH'S WILLFULNESS CLAIMS AND APPLY THE PRESUMPTIVE, TWO-YEAR LIMITATIONS PERIOD.

As this Court observed, Bah offers "only two direct allegations concerning willfulness that just allege that [Defendants' conduct] was willful." Dkt. 82 at 55:9-11. This does not suffice.

---

[9]  *See also, e.g.*, *McBain v. Behr Paint Corp.*, 2017 WL 1208074, at \*5 (N.D. Cal. Apr. 3, 2017) (dismissing joint employer claim against parent company); *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 775-76 (D. Md. 2008) (dismissing joint employer claim); *Doe I. v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (affirming dismissal of joint employer claim); *Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 WL 4082137, at \*3, \*5 (N.D. Cal. Aug. 9, 2013) (dismissing joint employer claim).

Because Bah has not even attempted to add any allegations to address this Court's "inclin[ation] to dismiss the claim of willfulness," *id.* at 55:12-13, this Court should dismiss Bah's conclusory allegations of willfulness and limit his claims against both Defendants to the FLSA's two-year limitations period.[10]

### A.  The Standard for "Willfulness" Under the FLSA Is a High Bar.

As the Supreme Court has recognized, "Congress intended to draw a significant distinction between ordinary [FLSA] violations and willful violations" because of the explicit "two-tiered statute of limitations." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988).  An FLSA violation may be deemed "willful" only if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133.  Thus, "[a] plaintiff must be able to show that her employer was aware of its obligations under the FLSA and chose not to comply with the law or recklessly disregarded its statutory duties." *Galloway v. Chugach Gov't Servs., Inc.*, 199 F. Supp. 3d 145, 151 (D.D.C. 2016); *see also* Dkt. 82 at 58:18-21 (The Court:  "Well, willful, as I understand it, it has to be either the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.").

### B.  The SAC's Threadbare and Conclusory Allegations of "Willfulness" Cannot Survive a Motion to Dismiss.

At the pleading stage, Bah bears the burden to "allege facts, and not simply labels or conclusions, sufficient to support a plausible claim of [a] willful" violation of the FLSA.  *Galloway*, 199 F. Supp. 3d at 152-53 (citing *Iqbal*, 556 U.S. at 686).  "[I]t is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the

---

10  Claims asserted under the FLSA typically "must be brought within two years after the cause of action accrued." *Chesley v. DirecTV, Inc.*, 2015 WL 3549129, at *7 (D.N.H. June 8, 2015) (quoting 29 U.S.C. § 255(a)).  The statute of limitations is extended to three years for "willful"—as opposed to "ordinary"—violations. *Id.* (quotation marks omitted).

complaint to see if they could support more than an ordinary FLSA violation" and dismiss a complaint if it contains "no factual allegations which would support a claim that the [FLSA] violations were willful." *Mell v. GNC Corp.*, 2010 WL 4668966, at *8 (W.D. Pa. Nov. 9, 2010) (quotation marks omitted).

That is precisely the case here. Bah has not alleged a *single* fact supporting his claim of a "willful" violation. Instead, he offers the conclusory assertion (i) that "Defendants' failure to pay Plaintiff and other assistant branch managers time-and-a-half for their overtime hours . . . was a willful violation of the FLSA," SAC ¶ 35, and (ii) that "Defendants' violation of the FLSA has been willful in that they knew or showed reckless disregard for whether their actions were unlawful under the FLSA," *id.* at 12. Both of these are only "legal conclusions" of "willful[ness]" or mere "formulaic recitation[s]" of the willfulness standard. *Iqbal*, 556 U.S. at 678. Neither is entitled to any weight.

Courts routinely dismiss or strike willfulness allegations where, as here, the plaintiff fails to proffer any well-pled factual allegations in support. *See, e.g.*, *Hurd v. NDL, Inc.*, 2012 WL 642425, at *6 (D. Md. Feb. 27, 2012) (finding insufficient conclusory allegations that defendants "willfully violated [the] FLSA by misclassifying her as an exempt employee and denying her overtime" and asserting that defendants "knew, or had reason to know of their alleged FLSA violations" (quotation marks omitted)).[11] This Court should do the same here.

---

[11] *See also Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 921-22 (D. Ariz. 2010) (dismissing allegations where plaintiff alleged defendant "intentionally, willfully, and repeatedly violated the FLSA" (quotation marks omitted)); *Ochoa v. Pearson Educ., Inc.*, 2012 WL 95340, at *3 (D.N.J. Jan. 12, 2012) (finding insufficient allegations that defendant (i) "deliberately misclassified [plaintiff]," and (ii) "had no good faith basis for believing that their pay practices . . . were in compliance with the law" (quotation marks omitted)); *Rowlett v. Mich. Bell*, 2013 WL 308881, at *2 (W.D. Mich. Jan. 25, 2013) (dismissing FLSA claims where plaintiff made "the conclusory assertion that [Defendant] acted willfully," but "failed to allege any facts which would establish such" (quotation marks omitted)); *Chesley*, 2015 WL 3549129, at *7 (dismissing claims for willful FLSA violations where plaintiff alleged that defendants adopted a "fissured employment" scheme in an attempt to avoid the FLSA (quotation marks omitted)).

Notably, Bah will never be able to allege or prove that Defendants "willfully" violated the FLSA by classifying him and other Assistant Branch Managers as exempt because the district court in *In re Enterprise* effectively approved that classification when it granted full and final approval to the settlement (between various Enterprise operating groups, including ERAC-Boston, and the plaintiffs) in that action.  This Court may take judicial notice of (and consider) the filings in that case, including the court-approved settlement agreement, which expressly states that specific Enterprise subsidiaries—including ERAC-Boston—"intend to continue classifying their Assistant Branch Managers as exempt, based on the important managerial and administrative tasks performed by those employees and the substantial evidence supporting such an exemption in the record."  Ex. 7, Dkt. No. 897-2 at 23; Ex. 8, Dkt. No. 911.  Given the court's stamp of approval on the terms in that agreement, there is no plausible basis to argue that ERAC-Boston (or EHI) knew (or recklessly disregarded) that it would violate the law to maintain a classification specifically contemplated by a court-approved settlement.

At the motion hearing, this Court acknowledged it is "very likely . . . to grant the motion to dismiss on willfulness."  Dkt. 82 at 60:18-19.  Bah's SAC provides no reason for the Court to change its mind, and Bah's willfulness claims should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Bah's overtime claims against EHI for failure to state a claim and for lack of standing and dismiss or strike Bah's FLSA claims for willful violations, effectively limiting them to the ordinary two-year limitations period.

March 30, 2020

Respectfully submitted,

s/ Jason C. Schwartz
Jason C. Schwartz (admitted *pro hac vice*)
Joshua S. Lipshutz (BBO #675305)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
Telephone:  (202) 955-8500
Fax:  (202) 467-0539
jschwartz@gibsondunn.com
jlipshutz@gibsondunn.com

*Counsel for Defendant Enterprise Holdings, Inc.*

Barry J. Miller (BBO #661596)
Hillary J. Massey (BBO #669600)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800
Fax:  (617) 946-4801
bmiller@seyfarth.com
hmassey@seyfarth.com

*Counsel for Defendants Enterprise Holdings, Inc. and Enterprise Rent-A-Car Company of Boston, LLC*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party via the Court's CM/ECF system on March 30, 2020.

*<u>s/ Jason C. Schwartz</u>*            
Jason C. Schwartz
