UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
MAMADOU ALPHA BAH,              )
      Plaintiff,               )
                               )
            v.                 )     C.A. No. 17-12542-MLW
                               )
ENTERPRISE RENT-A-CAR COMPANY  )
OF BOSTON, LLC, and            )
ENTERPRISE HOLDINGS, INC.,     )
      Defendants.              )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                    November 13, 2020

## I.   SUMMARY

Plaintiff Mamadou Alpha Bah seeks to represent assistant branch managers who have worked for defendants Enterprise Rent-A-Car Company of Boston, LLC ("ERAC-Boston"), and Enterprise Holdings, Inc. ("EHI"). Bah alleges that ERAC-Boston and EHI violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201 et seq., and the Massachusetts Overtime Law, Mass. Gen. Laws ch. 151, §1B. Both laws require that employers must pay employees overtime pay when they work more than 40 hours per week unless the employee is classified as exempt from overtime. See 29 U.S.C. §§207(a)(1), 213(a)(1); Mass. Gen. Laws ch. 151, §§1A, 1B.

Plaintiff claims that until November 2016, defendants willfully misclassified assistant branch managers as exempt from the overtime requirements. In November 2016, defendants sent him and other assistant branch managers a memorandum informing them

that they would be reclassified as "non-exempt" because of an anticipated new Department of Labor ("DOL") regulation (the "Reclassification Memo").   Plaintiff alleges that the class members should have been classified as "exempt" previously and are entitled to back pay.  Although plaintiff's direct employer was ERAC-Boston, he alleges that EHI was a "joint employer" and, therefore, also liable for the misclassification of assistant branch managers.

In 2018, the court dismissed plaintiff's claims against EHI without prejudice.  See Dkt. Nos. 55, 56.  In the Complaint, plaintiff had not distinguished between ERAC-Boston and EHI, but instead referred to both as "Enterprise."  In doing so, plaintiff had relied on a theory that ERAC-Boston and EHI should be treated as an integrated enterprise despite First Circuit precedent rejecting this theory and establishing a different test for determining joint employer status.  Therefore, the court granted EHI's motion to dismiss.

On October 15, 2018, plaintiff filed a First Amended Complaint (the "FAC"), with two sets of substantive changes in response to the court's ruling.  See Dkt. No. 63.  First, plaintiff separated the allegations to refer specifically to ERAC-Boston and EHI, rather than only to "Enterprise" as a single integrated unity. See, e.g., FAC ¶10.  Second, plaintiff alleged that EHI made the decision to reclassify assistant branch managers as "non-exempt."

2

See id. ¶25.  He also alleged that Dwayne Walker, who sent the
Reclassification Memo, was an employee of EHI and cited a Dwayne
Walker's LinkedIn profile.  See id.  Defendants moved to dismiss
the FAC.  See Dkt. No. 65.  They also submitted a letter sent to
counsel for plaintiff stating, in effect, that plaintiff knew or
should have known that Walker was employed by ERAC-Boston, and
threatening to seek sanctions under Federal Rule of Civil Procedure
11 if the erroneous statement was not corrected.  See Dkt. No. 60,
at 3 of 7.  After a hearing on February 6, 2020, plaintiff moved
for leave to amend the FAC.  See Dkt. No. 85.  The court's focus,
therefore, is now on plaintiff's Second Amended Complaint (Dkt.
No. 92) (the "SAC") and defendants' Motion to Dismiss it (Dkt. No.
93) (the "Motion").

In the Motion, defendants argue that plaintiff has failed
plausibly to allege (1) that EHI was his "joint employer," and
(2) that any failure to pay required overtime wages was "willful."
For the reasons explained in this Memorandum, the court is denying
the Motion.  In essence, the court finds that plaintiff has alleged
facts stating a plausible misclassification claim.  In addition,
the court finds that because willfulness relates to defendants'
affirmative statute of limitations defense, in the circumstances
of this case it cannot properly be decided on a motion to dismiss.
As the statute of limitations issue has practical significance for
the future of this case, the parties are being ordered to confer

and report concerning how it should be addressed in the next phase of the litigation.

II.   PROCEDURAL HISTORY

Plaintiff filed the complaint for this putative collective and class action on December 21, 2017.  See Dkt. No. 1.  He also filed a motion asking the court to certify the case conditionally as a collective action under the FLSA and to authorize an associated notice to potential opt-in plaintiffs.  See Dkt. No. 5. Defendants filed a motion to stay the class certification motion. See Dkt. Nos. 18, 19.  The court granted the stay pending a decision on whether or not the case would be dismissed.  See Dkt. No. 19.

On February 15, 2018, defendant ERAC-Boston answered the complaint.   See Dkt. No. 27.   However, defendant EHI moved to dismiss the claims against it, or in the alternative, for summary judgment on the issue of whether it was a joint employer of plaintiff.  See Dkt. No. 24.

The court held a hearing on the motion to dismiss on September 17, 2018.   See Dkt. No. 55.   The court allowed the motion to dismiss because plaintiff had relied on a legally invalid integrated enterprise liability theory, rather than on the test articulated by the First Circuit for joint employer status, based on the economic reality shown by the totality of the alleged circumstances.   See Sept. 17, 2018 Tr. 44:16-45:5 (Dkt. No. 57) (citing Baystate Alternative Staffing v. Herman, 163 F.3d 668 (1st

4

Cir. 1998)). The court held that plaintiff had failed to distinguish the actions of ERAC-Boston from those of EHI, his alleged joint employer. See id. at 45:21-46:11. Rather, plaintiff referred to EHI and ERAC-Boston collectively as "Enterprise" throughout most of the complaint. See id. Therefore, plaintiff had failed plausibly to allege facts supporting the conclusion that he had an employment relationship with EHI. See id. at 45:21-47:24 (citing Cavallaro v. UMass Memorial Healthcare, Inc., 678 F.3d 1, 10 (1st Cir. 2012)). However, the court noted that it was possible Bah could allege such a plausible claim against EHI. Therefore, the court dismissed the claims against EHI without prejudice, and ordered the parties to confer concerning whether the case could be resolved by agreement and, if not, how the case should proceed. See Dkt. No. 56.

On October 1, 2018, plaintiff reported that he planned to file an amended complaint. See Dkt. Nos. 59, 60. Defendants attached to their report a letter they had sent to plaintiff's counsel stating that, in their view, plaintiff could not file an amended complaint that alleged EHI was a joint employer without violating Federal Rule of Civil Procedure 11(b), which provides that in signing a pleading, an attorney represents that, after a reasonable inquiry, he believes the factual contentions being made

are true.[1]   See Dkt. No. 60, at 3 of 7.   Among other things, the
letter stated that Dwayne Walker, who had sent the Reclassification
Memo, was not employed by EHI.   Id.   Rather, he was a Vice-
President of ERAC-Boston, as plaintiff knew or should have known
because plaintiff's supervisor indirectly through higher managers
reported to Walker.   Id.

On October 15, 2018, Bah filed the FAC.   See Dkt. No. 63.
Among other things, it alleged that Walker was an employee of EHI
as one basis for the claim that EHI was plaintiff's joint employer.
See id. ¶25.   On October 29, 2018, defendants moved to dismiss.
See Dkt. No. 65.   EHI again asserted that plaintiff had failed to
allege a plausible claim that EHI was plaintiff's joint employer
within the meaning of the FLSA and the Massachusetts Overtime Law,
Mass. Gen. Laws ch. 151, §1B.   See Dkt. No. 66.   This time, however,
ERAC-Boston did not answer the FAC.   See Dkt. No. 65.   Instead, it
joined the second half of EHI's motion that requested dismissal of
the amended complaint to the extent it alleged that any FLSA
violation was "willful."   See Dkt. Nos. 65, 66.

On January 21, 2020, defendants filed a notice of supplemental
authority to inform the court that the DOL had promulgated a new
regulation regarding the interpretation of "joint employer" within

---

[1]     Plaintiff moved to strike the letter as inappropriately
filed.   See Dkt. No. 61.   The court denied the motion to strike at
the February 6, 2020 hearing.   See Dkt. Nos. 79, 80.

the meaning of the FLSA, which was consistent with the First Circuit's decision in Baystate, 163 F.3d 668.  See Dkt. No. 77.

At a hearing on February 6, 2020, defendants argued that plaintiff and his counsel did not have a good-faith basis to believe that Walker, who sent the Reclassification Memo, was an employee of EHI.   Tr. 24:14-28:3 (Dkt. No. 82).   Instead, defendants asserted that, as an employee of ERAC-Boston, plaintiff knew or should have known that Walker was a regional Vice-President of ERAC-Boston, with a scope of responsibility limited largely to the North Shore region of Massachusetts.   Id. at 25:17-22. Defendants reminded the court that defendants had sent plaintiff's counsel a letter stating that the allegation that Walker worked for EHI was false.   Id.; see Dkt. No. 60 Ex. 1.

The court discussed whether continued reliance on this allegation by plaintiff's counsel would raise the possibility of sanctions under Federal Rule of Civil Procedure 11.   See Feb. 6, 2020 Tr. 25:24-26:21 (Dkt. No. 82).  In particular, the court noted that a litigant's obligations under Rule 11(b) is "not measured solely as of the time [that papers] are filed or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they ceased to have any merit."  Id. at 26:4-11 (quoting Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment); see also Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co., No. 11-

10230-MLW, 2020 WL 949885, *1, *36 (Feb. 27, 2020) (Fed. R. Civ. P. "11(b) provides that by presenting a pleading to a court an attorney is representing that he or she has made a reasonable inquiry and that all factual contentions are supported by evidence. . . . In addition, Rule 11 requires that an attorney not continue to advocate positions based on false statements after he or she learns they are not true."). Therefore, the court offered plaintiff an opportunity to file a second amended complaint, while reserving the right to reject it as futile. See Dkt. No. 80; Feb. 6, 2020 Tr. 53:12-22 (Dkt. No. 82).

Plaintiff requested leave to amend the FAC to omit the allegation that Walker was employed by EHI. See Dkt. No. 85. Defendants opposed amendment. See Dkt. No. 87. The court ordered plaintiff to file the SAC, but reserved the right to determine in deciding defendants' motion to dismiss whether the amendment should be denied as futile. See Dkt. No. 91.

On March 16, 2020, plaintiff filed the SAC. Dkt. No. 92. The SAC contains the same allegations as the FAC, except for two changes. First, plaintiff clarified the circumstances of the November 9, 2016 Reclassification Memo. Id. ¶24. He alleged that it was accompanied by a list of frequently asked questions ("FAQs") that was in a different font than the cover memorandum. Id. Second, plaintiff removed the allegation that Walker was an employee of EHI in Glencoe, Missouri. Id. ¶25.

8

On March 30, 2020, defendants filed the Motion to dismiss the SAC. Dkt. No. 93. The Motion was fully briefed on April 21, 2020. See Dkt. Nos. 94, 96, 99. On October 6, 2020, plaintiff filed a Notice of Supplemental Authority informing the court that the Southern District of New York has held that the portions of the DOL's Final Rule that would apply here violate the Administrative Procedure Act. See Dkt. No. 101 (citing State of New York v. Scalia, No. 1:20-cv-1689-GHW, 2020 WL 5370871, *1 (S.D.N.Y. Sept. 8, 2020)).[2] Defendants filed a response on October 14, 2020. See Dkt. No. 102.

III. MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A plaintiff must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). This means that the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). A claim is facially plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference

---

[2]    The defendant-intervenors in State of New York v. Scalia, a group of franchise and trade associations, have appealed that decision to the Second Circuit (Case No. 20-3806).

that the defendant is liable for the misconduct alleged." Id. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted). The plausibility standard does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

In considering a motion to dismiss under Rule 12(b)(6), the court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz v. Marao Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007) (emphasis in original). However, the court must disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008); see also Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011). The court "neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996).

On a Rule 12(b)(6) motion, "the district court may properly consider only facts and documents that are part of or incorporated

into the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009). However, in certain circumstances the court may consider other documents as well. There are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see also Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55-56 & n.3 (1st Cir. 2012); Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998). When such documents contradict an allegation in the complaint, the document "trumps the allegation[]." See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000).

IV.   FACTS

Plaintiff alleges the following in the SAC.

Plaintiff worked in various branches owned and operated by the rental car company ERAC-Boston from May 2014 to January 2017. SAC ¶4 (Dkt. No. 92). He was an assistant branch manager from July 2016 to January 2017. Id.

Until November 27, 2016, plaintiff and other assistant branch managers employed by defendants were classified as "exempt" from the requirements of the FLSA to pay for overtime worked. SAC ¶13. Therefore, they were not paid overtime for working more than 40 hours in a particular week. Id. ¶¶4, 22. Instead, they received

a weekly salary and a bonus based on the branch's net profit.  Id. Management trainees and management assistants employed by defendants were classified as non-exempt from overtime.  Id. ¶16. Non-exempt management trainees and management assistants did receive overtime pay.  Id. ¶22.  Compensation for non-exempt and exempt employees was comparable.  Id.  Plaintiff often received greater compensation when he was a non-exempt management trainee and management assistant than he did as an exempt assistant branch manager.  Id.

Plaintiff routinely worked more than 40 hours per week.  SAC ¶15.  He spent more than half his time performing non-exempt work such as cleaning cars and completing rental car paperwork.  Id. ¶16.  As assistant branch manager, plaintiff's work was the same as that done by employees who were classified as non-exempt.  Id. His job did not require him to exercise discretion or independent judgment on matters of any significance.  Id. ¶17.  For example, he could not reprimand lower-level employees on his own.  Id.

Plaintiff alleges that in or about November 2016, EHI decided that assistant branch managers should be reclassified as non-exempt due to new DOL regulations.  SAC ¶23.  EHI is the corporate parent of ERAC-Boston and is based in Missouri.  Id. ¶¶5, 6.  EHI allegedly imposes employment policies for employees on a nationwide basis.  Id. ¶7.  It was allegedly based on EHI's policy, practice, and/or recommendation that its subsidiaries had

previously classified assistant branch managers as exempt from
overtime.  Id. ¶14.

When the policy changed, plaintiff received the
Reclassification Memo, which was addressed to assistant branch
managers and dated November 9, 2016.  SAC ¶24.  The
Reclassification Memo was accompanied by a list of FAQs that was
in a different font than the cover memorandum.  Id.  The FAQs
stated that "Enterprise Holdings will be implementing changes" to
reclassify assistant branch managers as non-exempt due to the new
regulations.  Id.  They also stated that assistant branch managers'
job duties and responsibilities would not change.  Id.  Plaintiff
and other assistant branch managers did not receive backpay for
overtime wages for the period of time they had worked prior to
November 27, 2016.  Id.

Plaintiff alleges that EHI and ERAC-Boston are joint
employers.  SAC ¶25.  The three managers of ERAC-Boston are the
president of EHI and two of the directors of EHI.  Id. ¶26.  These
managers have retained the authority to hire or fire assistant
branch managers even if they have delegated it.  Id. ¶27.  EHI has
created and imposed employment policies on its regional
subsidiaries, including ERAC-Boston.  Id. ¶¶28, 30.  One policy
manual issued by EHI states: "All employees are required to comply
with the business practice standards outlined in this section."
Id. ¶29.  Some of EHI's policies and programs were "recommended."

Id. ¶30.  EHI handles customer requests, customer reservations, and customer service evaluations.  Id. ¶31.  EHI developed job descriptions used by the regional subsidiaries and distributes employee satisfaction surveys.  Id.  EHI established a profit-sharing plan for employees, administers employee benefits, maintains employment records, and recommends salary ranges for employees nationwide.  Id. ¶¶33, 34.  When the assistant branch managers were reclassified as non-exempt, EHI did not provide or ensure that they received backpay for overtime.  Id. ¶32.

Defendants' violation of the FLSA was alleged to be willful because defendants failed to pay overtime to employees who should have been classified as non-exempt, and knew or showed reckless disregard for whether their actions were unlawful.  SAC ¶35.

Plaintiff seeks to certify this suit as a collective action under the FLSA and as a class action under the Massachusetts Overtime Law.  Id. ¶¶36-39.  The Office of the Attorney General of Massachusetts issued a right to sue letter.  Id. ¶40.

V.  DISCUSSION

As explained earlier, the court ordered plaintiff to file the SAC, but reserved the right to determine in deciding defendants' motion to dismiss whether the amendment could be denied as futile. See Dkt. No. 91.  The court invited plaintiff's counsel to file another amended complaint if he was not comfortable maintaining the allegation that Walker was employed by EHI, rather than ERAC-

14

Boston, as required by his obligations under Rule 11 not to allege facts he does not believe to be true or to advocate a position based on a purported fact after learning that it is not true.  See Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment; Ark. Teacher Ret. Sys., 2020 WL 949885 at *1, *36.  Having been advised by defendants' counsel that Walker was not employed by EHI, and of information suggesting that plaintiff knew or should have known this, plaintiff's counsel does not allege in the SAC that Walker was employed by EHI.

It is in the interest of justice to allow the filing of the SAC in order to permit plaintiff's counsel to satisfy his duty of candor under Rule 11(b) and to eliminate the possibility that the decision on EHI's motion to dismiss might be infected by a possible failure to do so.  See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Therefore, the court is addressing the SAC and the motion to dismiss it.[3]

The Motion includes two arguments for dismissal.  First, EHI argues it should be dismissed from the case because plaintiff has failed to allege a plausible claim that EHI was his joint employer within the meaning of the FLSA and Massachusetts Overtime Law.

---

[3]     Accordingly, defendants' Motion to Dismiss the FAC (Dkt. No. 65) is moot.

15

Second, both EHI and ERAC-Boston ask the court to dismiss the SAC to the extent it alleges that any violation was "willful."

A.  Plaintiff has Plausibly Alleged that EHI was his Joint Employer.

As explained earlier, plaintiff brings his claims against both EHI and ERAC-Boston.  The parties agree that plaintiff was employed by ERAC-Boston.  Plaintiff argues that EHI also jointly employed him and is, therefore, also liable on plaintiff's overtime claims.  As indicated earlier, plaintiff has plausibly alleged facts sufficient to support an inference that EHI was his joint employer.  Therefore, the court is not dismissing EHI.

1.  Legal Standard.

The FLSA requires that employers pay employees overtime when they work more than 40 hours per week, unless the employee is classified as exempt from overtime. See 29 U.S.C. §§207(a)(1), 213(a)(1).  Similarly, the Massachusetts Overtime Law provides that employers must pay overtime wages to non-exempt employees who work more than 40 hours per week.  See Mass. Gen. Laws ch. 151, §§1A, 1B.  Liability under both overtime provisions attaches only to an "employer."  See Pruell v. Caritas Christi, No. 09-11466-GAO, 2013 WL 2420918, *3 (D. Mass. May 31, 2013).  If a plaintiff fails to plead adequately an employment relationship with a particular entity -- the alleged "employer" -- the plaintiff lacks standing to sue that entity.  See Manning v. Bos. Med. Ctr. Corp.,

725 F.3d 34, 43 (1st Cir. 2013); <u>Hamilton v. Partners Healthcare</u>
<u>Sys., Inc.</u>, 209 F. Supp. 3d 379, 393 (D. Mass. 2016), <u>aff'd on</u>
<u>other grounds</u>, 879 F.3d 407 (1st Cir. 2018).

The FLSA's definitions of "employee," "employer," and
"employ" are broad, and "comprehensive enough to require [their]
application to many persons and working relationships" that were
not considered employment at common law. <u>Baystate</u>, 163 F.3d at
675 (quoting <u>Rutherford Food Corp. v. McComb</u>, 331 U.S. 722, 729
(1947)). Therefore, while at common law an employer was the entity
that directly employed an individual, "[t]wo or more employers may
jointly employ someone for purposes of the FLSA." <u>Bonnette v.</u>
<u>Cal. Health & Welfare Agy.</u>, 704 F.2d 1465, 1469 (9th Cir. 1983).
"All joint employers are individually responsible for compliance
with the FLSA." <u>Id.</u> (citing 29 C.F.R. §791.2(a) (1981)); <u>see also</u>
DOL Rule, 29 C.F.R. §791.2(f) ("For each workweek that a person is
a joint employer of an employee, that joint employer is jointly
and severally liable . . . .").

Bah previously argued that the integrated-enterprise theory
of liability, rather than the <u>Baystate</u> test, should apply to his
claims. The court rejected this contention at the hearing on
September 17, 2018. <u>See</u> Tr. 7:24-11:21, 51:13-19 (Dkt. No. 57).

Under the integrated-enterprise theory, "two nominally
separate companies may be so interrelated that they constitute a
single employer subject to liability." <u>Torres-Negron v. Merck &</u>

Co., 488 F.3d 34, 41 (1st Cir. 2007).  "The factors considered in determining whether two or more entities are a single employer under the integrated-enterprise test are: (1) common management; (2) interrelation between operations; (3) centralized control over labor relations; and (4) common ownership."  Id. at 42.  The integrated-enterprise test is used to determine employer liability for some types of federal statutory claims.  See, e.g., Torres-Negron, 488 F.3d at 41 (Title VII liability); Engelhardt v. S.P. Richards Co., 472 F.3d 1, 4 n.2 (1st Cir. 2006) (Family Medical Leave Act liability).  It may also be used to determine FLSA jurisdictional coverage.  See Cavallaro v. UMass Mem'l Health Care, Inc., 971 F. Supp. 2d 139, 148 (D. Mass. 2013).  It is not, however, the proper test for determining whether an employer may be held liable under the FLSA in the First Circuit, at least.  See Hamilton, 209 F. Supp. 3d at 392-93 & n.10.

Rather, in deciding if a defendant is an "employer," the First Circuit has instructed courts to "look[] . . . to the economic reality of the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer."  Baystate, 163 F.3d at 675 (internal quotation omitted).  Baystate directs a court to consider at least the following four factors to determine if an alleged employer is subject to FLSA liability: "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee

18

work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Id. (citing Bonnette, 704 F.2d at 1470). "[It] is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer." Id. at 676.

On January 16, 2020, the DOL promulgated a final new rule which includes regulations related to the FLSA and interpretation of joint employer status under it. See Joint Employer Status Under the Fair Labor Standards Act, 85 Fed. Reg. 2820 (Jan. 16, 2020), codified at 29 C.F.R. §791.2 (2020) (the "DOL Rule"). Section 791.2 became effective on March 16, 2020. It endorses as relevant the four-factor test applied by the First Circuit in Baystate, following Bonnette. See 29 C.F.R. §791.2(a)(1). The regulation may make it more difficult for a plaintiff to prove joint employer status than the Baystate test because it provides that "[t]he potential joint employer must actually exercise -- directly or indirectly -- one or more of [the four] indicia of control to be jointly liable . . . ." 29 C.F.R. §791.2(a)(3)(i); see New York v. Scalia, 2020 WL 5370871 at *28-29 (invalidating the DOL Rule as applied to vertical joint employers). To the extent there is a difference, the court is applying the Baystate test.[4]

---

[4]    In the commentary accompanying the promulgation of the DOL Rule, the DOL rejected the Fourth Circuit test as stated in Salinas

EHI and plaintiff previously agreed that the Baystate test may be used to decide plaintiff's Massachusetts state law claims. See Sept. 17, 2018 Tr. 7:24-11:21, 51:13-19 (Dkt. No. 57).   EHI argues that is still the correct approach.   See Dkt. No. 94, at 5 n.4.   However, plaintiff now argues that a broader test applies to the state-law claims.   See Dkt. No. 96, at 9 n.5 of 22.   More specifically, plaintiff argues that under Massachusetts law, the test for employment status is articulated in Mass. Gen. Laws ch. 149, §148B. See id. (citing Depianti v. Jan-Pro Franchising Int'l, Inc., 990 N.E.2d 1054 (Mass. 2013)).   That section, however, is directed at whether an individual is an employee or an independent contractor, and not at whether an entity is that individual's "joint employer" for the purposes of wage liability.   See Depianti, 990 N.E.2d at 1064.   Plaintiff also notes that at least one Massachusetts court has applied the integrated-enterprise theory in determining liability under the FLSA.   See Fitzgerald v. The Chateau Restaurant Corp., Inc., No. 14-01990-J, 2016 WL 344155, *3-4 (Mass. Super. Ct. Jan. 4, 2016). Other Massachusetts courts, however, have not.   See Garcia v. Right at Home, Inc., 33 Mass. L. Rptr. 346, 2016 WL 3144372, *3 (Mass. Super. Ct. 2016) (applying Baystate test); Rogier v. Chambers, 33 Mass. L. Rptr. 523, 2016 WL

---

v. Commercial Interiors, Inc., 848 F.3d 125 (4th Cir. 2017) on which Bah relies.   See 85 Fed. Reg. at 2857.

5890024, *4 n.12 (Mass. Super. Ct. 2016) (applying common law test, which is less favorable to employees).

The court has previously applied the <u>Baystate</u> test to both the federal and state law claims. <u>See</u> Sept. 17, 2018 Tr. 51:13-19 (Dkt. No. 57). It is the law of the case. In any event, as the SAC survives the Motion to dismiss under the <u>Baystate</u> test, it is not material whether a different test should be utilized in deciding the motion to dismiss the state-law claims. Therefore, the court is applying the <u>Baystate</u> test in deciding the state-law claims. Thus, the following analysis concerning the FLSA claims is equally applicable to the state-law claims.

## 2. <u>Analysis.</u>

As explained earlier, <u>Baystate</u> instructs that a court deciding if a defendant is an "employer" should "look[] . . . to the economic reality of the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer." <u>Baystate</u>, 163 F.3d at 675. A court should consider at least the following four factors in that analysis: "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." <u>Id.</u> "[It] is the totality of the circumstances, and not any one factor,

which determines whether a worker is the employee of a particular alleged employer." Id. at 676.

>    a.   Plausibly has plausibly alleged that EHI
>         determined his rate and method of payment.

The allegations in the SAC plausibly allege that EHI determined plaintiff's rate and method of payment, the third Baystate factor. This factor "address[es] the extent of a putative employer's control over the economic aspects of the working relationship." Baystate, 163 F.3d at 676. Here, plaintiff alleges that EHI imposed employment policies for its employees on a nationwide basis. See SAC ¶7 (Dkt. No. 92). Until November 2016, plaintiff and other assistant branch managers were classified as "exempt" employees based on EHI's policy, practice, and/or recommendation. See id. ¶14. In or about November 2016, EHI allegedly decided that assistant branch managers should be reclassified as non-exempt due to new DOL regulations. See id. ¶23.

The reclassification of assistant branch managers from exempt to non-exempt status for overtime was announced in the Reclassification Memo. See id. ¶24. Defendants filed a copy of the Reclassification Memo in support of the Motion. See Dkt. No. 95-4. As plaintiffs do not challenge its authenticity, the court is considering the Reclassification Memo as incorporated into the SAC. See Rivera, 575 F.3d at 15.

The Reclassification Memo was sent to the assistant branch managers at ERAC-Boston by Walker.  See Dkt. No. 95-4.  Because plaintiff deleted from the SAC the allegation that Walker was employed by EHI, the court infers that Walker was employed by ERAC-Boston.

However, several aspects of the Reclassification Memo support an inference that EHI made the decision to reclassify assistant branch managers as non-exempt.  Although the Reclassification Memo was sent by Walker, it was accompanied by the FAQs, which are in a different font.  It would be reasonable to infer that the different fonts indicate that the FAQs, at least, were written by someone other than Walker.[5]

The FAQs state that "Enterprise Holdings will be implementing changes" to reclassify assistant branch managers as non-exempt due to the new regulations.  Id.  At the February 6, 2020 hearing, defendants sought to introduce evidence that "Enterprise Holdings" could refer either to EHI or ERAC-Boston pursuant to a licensing agreement. See Feb. 6, 2020 Tr. 25:2-14 (Dkt. No. 82).  However, at this stage, the court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the

---

[5] The court notes that the FAQs, which are an important factor in its decision to deny EHI's motion to dismiss the SAC, were not submitted to the court until plaintiff's third complaint was filed. This fact may have implications for the statute of limitations equitable tolling issue discussed below.

plaintiff." Rodriguez-Ortiz, 490 F.3d at 96 (emphasis omitted).
It is reasonable to infer that "Enterprise Holdings" refers to
EHI.

In addition to informing assistant branch managers that they
will be reclassified as non-exempt, the FAQs state that those
employees "will be entitled to meal and/or rest period breaks, as
per our Group policies" and describe the three primary components
of those employees' pay structure. See Dkt. No. 95-4. The pay
structure includes a profit-sharing plan that plaintiff alleges
was established by EHI. See id.; SAC ¶33 (Dkt. No. 92). The FAQs
also refer to another memorandum purportedly covering timekeeping
policies and state that employees would receive 10.6 hours of pay
per paid day off. Dkt. No. 95-4, at 5. All of these policy
details are relevant to plaintiff's rate and method of payment.

Significantly, the Reclassification Memo states that non-
exempt employees "will be entitled to meal and/or rest period
breaks permitted under the law of the state you work in." Id. at
2 (emphasis added). Even accepting that the Reclassification Memo
was sent by Walker, who was responsible only for ERAC-Boston's
North Shore region within Massachusetts, the quoted language
supports the reasonable inference that it was drafted by EHI to
apply to employees in more than one state, and that Walker was
merely communicating a decision made by EHI.

24

Therefore, the allegations in the SAC state a plausible claim that EHI made the decision to reclassify assistant branch managers as non-exempt and determined how to calculate their pay, including breaks and paid time off.  A reasonable factfinder could plausibly conclude EHI provided documents to its regional subsidiaries, including ERAC-Boston, and directed them to inform employees of the change in classification.  Therefore, plaintiff has plausibly alleged that EHI had the authority to control his rate and method of payment and exercised it.[6]

> b.   Plaintiff has Plausibly Alleged that EHI Maintained at least some of his Employment Records.

Plaintiff has also alleged facts relevant to the second and fourth Baystate factors.  The fourth factor is "whether the alleged employer . . . maintained employment records."  Baystate, 163 F.3d at 675.  The Reclassification Memo discusses what appears to be a centralized database ("WorkBrain") for employees to enter their time, and to request vacation and time off.  See Dkt. No. 95-4, at 5.  In addition, EHI administers employee benefits and maintains those records.  See SAC ¶¶33-34 (Dkt. No. 92).  Therefore,

---

[6]   The DOL Rule requires that an alleged employer must have exercised its right to control the employee, not merely had the right to do so.  See 29 C.F.R. §791.2(a).  The Baystate test does not.  See 163 F.3d at 675.  Again, the court is applying the Baystate test, but notes that plaintiff has plausibly alleged that EHI exercised that right with regard to plaintiff's rate and method of payment.

plaintiff has plausibly alleged that EHI maintained his employment records.[7]

> c.   Plaintiff has Plausibly Alleged that EHI Supervised and Controlled his Conditions of Employment.

The second Baystate factor is "whether the alleged employer . . . supervised and controlled employee work schedules or conditions of employment." Baystate, 163 F.3d at 675. This factor "address[es] the extent of a putative employer's control over the nature and structure of the working relationship." Id. In Baystate, for example, the First Circuit held that this factor indicated joint employer status where the putative employer "dictated the times at which workers were to report to the agencies' offices; screened workers for minimum qualifications; decided which workers would be assigned to particular job sites; sometimes transported workers to job sites at client companies; instructed workers about appropriate dress and work habits; and prohibited workers from contacting directly a client company about potential job opportunities." Id. at 676. "Direct supervisory oversight" is not required. Id. Nor must an employer "look over

---

[7]   Plaintiff also alleges that EHI maintains a website, www.erac.com/recruit, through which prospective employees from around the country may apply for a position in any region. See SAC ¶31 (Dkt. No. 92). Plaintiff does not allege that EHI maintains those records or performs any screening of these applications. Therefore, the court is not relying on this allegation in deciding whether EHI is plausibly alleged to be plaintiff's joint employer.

his workers' shoulders every day in order to exercise control."
Id.

Plaintiff does not allege that EHI supervised or controlled
his work schedule. However, plaintiff does allege facts relevant
to whether EHI supervised and controlled the conditions of his
employment. As described earlier, it is plausible that the
Reclassification Memo and FAQs were written by EHI and provided to
ERAC-Boston by EHI. The Reclassification Memo states: "we don't
expect any changes to your job duties and responsibilities." See
Dkt. No. 95-4, at 2. Similarly, the FAQs state that assistant
branch managers' responsibilities would not change. Id. at 4.
Rather, the assistant branch managers were told that, "[y]ou
continue to be a key member of our management team, responsible
for assisting with the management of the branch, direction,
training and coaching of other employees, and improving overall
branch performance." Id. This is consistent with plaintiff's
allegation that EHI "developed job descriptions used by the
regional subsidiaries." See SAC ¶31 (Dkt. No. 92). Plaintiff
also alleges that all assistant branch managers across EHI's
regional subsidiaries shared a common job description, were not
authorized to issue any type of written reprimand or warning to
lower-level employees, and were subject to common corporate
policies and procedures created by EHI. See id. ¶¶17-20. For
example, the FAQs refer to common timekeeping procedures that non-

exempt employees were required to follow.  <u>See</u> Dkt. No. 95-4.
These allegations all permit a plausible inference that EHI
controlled the conditions of plaintiff's employment.

In addition, plaintiff alleges that EHI has controlled the
conditions of employment by creating and imposing a variety of
employment policies and practices on the regional subsidiaries, in
the form of a Business Ethics Guide and Personnel Policies Summary.
The document states, in part: "All employees are required to comply
with the business practice standards outlined in this section."
<u>See</u> SAC ¶¶28-29 (Dkt. No. 92).  It also states, evidently with
regard to other sections, that  "[t]hese policies and practices
. . . include a dress code, best practices for hiring and selection
of employees, general job descriptions, employee performance
review forms, a suggested management track for employee
advancement, recommended policies and programs, including paid
time off policy, paternity leave policy, and breath alcohol testing
program, and a compensation guide for employee salaries."  <u>Id.</u>
¶¶30-31.

EHI argues that these allegations are insufficient to satisfy
the second factor.  In its view, plaintiff does not allege that
EHI imposed the responsibilities and conditions on him, but only
that EHI drafted a job description and responsibilities that the
regional subsidiaries have used.  For example, the Personnel
Policies Summary states that "[a]t their own discretion, each group

may elect to implement its own personnel policies unique to its operations and employees." See Dkt. No. 95-3, at 4 of 4.  However, as explained earlier, it is plausibly alleged that EHI may have decided to change plaintiff's exempt classification and drafted the Reclassification Memo and FAQs that refer to the paid time off and other policies.  In any event, whether the Business Ethics Guide and Personnel Policies Summary was mandatory or recommended is not ultimately material.

Finally, plaintiff alleges that EHI oversees customer service and employee satisfaction surveys.  See SAC ¶31 (Dkt. No. 92). Therefore, it is also reasonable to infer that EHI required employees to follow those policies and had some means available to supervise them.  At a minimum, these nationwide policies and practices further support the court's conclusion that plaintiff has plausibly alleged that EHI supervised and controlled his conditions of employment.

> d.   Plaintiff has not Plausibly Alleged that EHI had the Ability to Hire and Fire him.

With regard to "whether the alleged employer [ ] had the power to hire and fire the employee[]," Baystate, 163 F.3d at 675, plaintiff relies on three allegations.  First, plaintiff alleges that EHI has written and distributed to its regional subsidiaries guides such as the Business Ethics Guide and Personnel Policies Summary, which include best practices for hiring and selection of

employees and general job descriptions. See SAC ¶¶29-30 (Dkt. No. 92). Second, plaintiff alleges that EHI maintains a website through which prospective employees submit applications to the regional subsidiaries. See id. ¶31. Third, plaintiff alleges that EHI had the power to hire and fire him because all of the managers of ERAC-Boston were directors of EHI and one is its president. Id. ¶26. He asserts that even if they had delegated that power to ERAC-Boston, they retained the authority to hire and fire its employees.

However, these allegations, taken as true, would not show that EHI had the power to hire and fire plaintiff. Plaintiff describes both the Business Ethics Guide and Personnel Policies Summary as providing "best practices." See Dkt. No. 96, at 14 of 22. Providing "hiring best practices and job descriptions" could not be found to constitute the authority to hire and fire employees. See id. The allegation that EHI maintains a website for routing applications to the regional subsidiaries is not likely to prove, or to contribute to proving, that EHI itself had the power to hire ERAC-Boston's employees.

Plaintiff's contention that EHI had the authority to hire and fire him because all of the managers of ERAC-Boston were directors of EHI and one was its president is essentially a reiteration of plaintiff's integrative-enterprise theory which the court has previously found inapplicable to the question of whether EHI was

plaintiff's joint employer.  See Sept. 17, 2018 Tr. 44:16-47:24
(Dkt. No. 57) (citing Cavallaro, 678 F.3d at 10).

### 3.   Conclusion Concerning the FLSA Claim.

As  explained  earlier,  "it  is  the  totality  of  the
circumstances, and not any one factor, which determines whether a
worker  is  the  employee  of  a  particular  alleged  employer."
Baystate, 163 F.3d at 676.  Here, even if EHI lacked the power to
hire  and  fire  the  assistant  branch  managers,  plaintiff  has
plausibly  alleged  that  EHI  supervised  and  controlled  their
conditions of employment, determined their rate and method of
payment,  and  maintained  some  of  their  employment  records.
Plaintiff has, therefore, plausibly alleged that EHI was his joint
employer.   Accordingly,  the  court  is  not  dismissing  the  claims
against EHI.

### B.   The Motion to Dismiss the Allegations that Defendants Acted Willfully is being Denied.

At the February 6, 2020 hearing the court stated that it would
likely allow the defendants' motion to dismiss the claim that the
alleged  violation  of  the  FLSA  was  "willful"  because  the  few
relevant allegations were merely conclusory.  See Feb. 6, 2020 Tr.
at 55-60 (Dkt. No. 82).  However, the court took the question under
advisement.

The court continues to believe that the only allegations relevant to willfulness in the SAC, paragraph 35[8]  and Count I,[9] are conclusory and "formulaic recitation[s]" of the willfulness standard that are insufficient to state a plausible claim that defendants acted willfully.  <u>Twombly</u>, 550 U.S. at 555.

However, the court now realizes that willfulness is an element of defendants' affirmative statute of limitations defense, rather than an element of plaintiff's FLSA claim.  Therefore, in the circumstances of this case it is not appropriate to dismiss plaintiff's contention that the alleged violation was willful.

28 U.S.C. §207 is the basis for Bah's claim that he and others were, until November 27, 2016, improperly deemed exempt employees not entitled to overtime pay.  <u>See</u> SAC Count 1 (Dkt. No. 92). Willfulness is not mentioned in §207.  29 U.S.C. §255(a) provides the statute of limitations for a §207 claim.  Ordinarily, there is a two-year statute of limitations, but if the violation is willful, the statute of limitations is three years.  <u>See</u> 29 U.S.C. §255(a); <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 129 (1988).

"A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not

---

[8]     "Defendants' failure [to comply with the FLSA] was a willful violation of the FLSA."  SAC ¶35 (Dkt. No. 92)

[9]     "Defendants' violation of the FLSA has been willful in that they knew or showed reckless disregard for whether their actions were unlawful under the FLSA."  <u>Id.</u> at Count 1.

entitled to relief." Jones v. Bock, 549 U.S. 199, 215 (2007). "While most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). "Dismissing a case under Rule 12(b)(6) on the basis of an affirmative defense requires that '(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'" Id. (quoting Rodi v. S. New Engl. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004)).

Accordingly, "the statute of limitations[] may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that 'the facts establishing the defense are clear on the face of the plaintiff's pleadings.'" Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quoting Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001)). "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to sketch a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate." Trans-Spec, 524 F.3d at 320 (internal quotation omitted); see also Jones, 549 U.S. at 215.

A FLSA cause of action for an overtime violation accrues on a paycheck basis.   See 29 C.F.R. §790.21(b); Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 198 (2d Cir. 2013).   Plaintiff alleges that prior to the pay period beginning November 27, 2016, defendants were violating the FLSA's overtime provision.   See SAC ¶13 (Dkt. No. 92).   The first paycheck reflecting that assistant branch managers had been reclassified as non-exempt was due on December 16, 2016.   See Reclassification Memo, at 4 of 5 (Dkt. No. 95-4).   Employees were "paid on a bi-weekly basis."   Id.   Therefore, it appears that the last paycheck that allegedly violated §207 was provided to assistant branch managers on December 2, 2016.

As explained earlier, Bah seeks to prosecute this case on his own behalf and on behalf of other assistant branch managers as a collective action under 29 U.S.C. §216(b).   The court has not yet ruled on his motion to certify a class conditionally for this purpose.   Whether the statute of limitations is two or three years, Bah timely filed and opted into this case on his own behalf when he filed it on December 21, 2017.

However, in a collective action under the FLSA, the limitations period continues to run against each employee until he or she files a written opt-in consent.   See 29 U.S.C. §256(b); 29 C.F.R. §790.21(b)(ii); Pineda v. Skinner Servs., Inc., No. 16-12217-FDS, 2020 WL 5775160, *8 (D. Mass. Sept. 28, 2020).

Therefore, any potential opt-in plaintiff usually must file an opt-in consent by the end of the limitations period to participate in the lawsuit. Id. at *8-9.

It is evident from the complaint that the statute of limitations for potential opt-in plaintiffs in addition to Bah began with the December 2, 2016 paycheck and expired no later than three years after that date, December 2, 2019. However, potential opt-in plaintiffs are not necessarily now barred from asserting their claims by the maximum possible three-year statute of limitations. In certain circumstances the judicial doctrine of equitable tolling applies. See, e.g., Sandoz v. Cingular Wireless, LLC, 700 F. App'x 317, 320-21 (5th Cir. 2017); Pineda, 2020 WL 5775160 at *9-10. Equitable tolling is an extraordinary remedy that must be used sparingly. See, e.g., Sandoz, 700 F. App'x at 320; Pineda, 2020 WL 5775160 at *9. As the First Circuit has written in another context, the doctrine of equitable tolling "extends statutory deadlines in extraordinary circumstances for parties who were prevented from complying with them through no fault or lack of diligence of their own." Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010).

When potential opt-in plaintiffs are prevented from joining a particular class or collective action suit until the statute of limitations has expired, this fact by itself may not justify equitable tolling. For example, the Fifth Circuit has held that

35

"[e]quitable tolling . . . focuses on whether an external obstacle prevented timely filing, not on whether an external obstacle prevented timely filing in a specific suit." Sandoz, 700 F. App'x at 321 (emphasis in original). In the Fifth Circuit at least, if "nothing prevented the [o]pt-in [p]laintiffs from discovering their claims and initiating a suit," the criteria for equitable tolling are not satisfied. Id.

The court has waited to decide the motion to dismiss before deciding whether to certify this case conditionally as a collective action. As the motion to dismiss is being denied, the court intends to address conditional certification in the next phase of this litigation. If this case is certified as a collective action, it is not clear whether any potential class members will opt in and argue that their claims are not time-barred because they are entitled to equitable tolling. Nor is it clear that the issue of whether the statute of limitations is two or three years will be material to any such claims.

In these circumstances, the court does not find that "the facts establishing the [statute of limitations] defense are definitively ascertainable from the complaint and the other allowable sources of information" or that "those facts suffice to establish the affirmative defense with certitude." Nisselson, 469 F.3d at 150. Therefore, the court is not granting defendants'

motion to dismiss the claim that defendants' alleged violation of the FLSA was willful.

However, as the issue of willfulness has practical significance for the future of the case, the court is ordering the parties to confer and report on how they propose it should be developed and addressed.

VI.   ORDER

For the foregoing reasons, it is hereby ORDERED that:

1.   Plaintiff's Motion for Leave to File the Second Amended Complaint (Dkt. No. 85) is ALLOWED.

2.   Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 93) is DENIED.

3.   Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 65) is MOOT.

4.   The parties shall confer and, by December 3, 2020, report, jointly if possible, concerning (a) whether they have agreed to settle this case; (b) if not, whether they wish to have this case stayed for mediation before a magistrate judge or private mediator; and (c) if not, how they propose the case proceed, including how the statute of limitations issue should be addressed expeditiously.



UNITED STATES DISTRICT JUDGE

37