**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MAMADOU ALPHA BAH, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiff,<br><br>ENTERPRISE HOLDINGS, INC. and ENTERPRISE RENT-A-CAR COMPANY OF BOSTON, LLC<br><br>Defendants. | Civil Action No. 1:17-cv-12542 |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS**

**I.  INTRODUCTION**

In their Memorandum in Opposition to Plaintiff's Motion for Equitable Tolling, Dkt. 199, Defendants urge the Court to take the unduly harsh route of holding that opt-ins cannot benefit from equitable tolling, despite the fact that notice of this case was not issued to them until years after their limitations periods had run. Plaintiff filed a motion seeking authorization to provide notice of the case to these Opt-in Plaintiffs the same day the case was filed in December 2017, but consideration of that motion was stayed until 2022.

Nevertheless, Defendants argue that Plaintiff has failed to establish that Opt-in Plaintiffs acted diligently to pursue their rights, and that extraordinary circumstances did not preclude them from advancing their claims. Defendants are wrong on both fronts. With respect to diligence, Defendants rely on cases like Alvarez v. BI Inc., 2018 WL 2288286, at *16 (E.D. Pa. May 17, 2018), to argue that a lack of awareness of this case

1

or even of their rights under the law are irrelevant to whether they had constructive or actual notice of their rights in order to diligently pursue them. According to Defendants, the mere existence of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.*, is enough to put Opt-in Plaintiffs on notice for the purposes of equitable tolling considerations. As explained below, harsh cases like Alvarez have been roundly criticized and are minority outliers. Especially in cases involving the complex considerations of the FLSA overtime exemptions or misclassification issues, courts have failed to fault plaintiffs for their ignorance of their rights, prior to the issuance of notice. See, e.g., Kennedy v. Pioneer Natural Resources Company, 2021 WL 8442021, at *4 (W.D. Tex. Nov. 5, 2021); Klick v. Cenikor Foundation, 509 F. Supp. 3d 951, 957 (S.D. Tex. 2020).

      Second, Defendants argue that the significant delay in the adjudication of Plaintiff's Motion for the Issuance of Notice (Dkt. 5) does not present the kind of extraordinary circumstances that justify equitable tolling. Defendants' assertion runs counter a veritable mountain of caselaw as set forth in Plaintiff's Memorandum Regarding Equitable Tolling (Dkt. 195 at 10-13), and in Section II.B below. Indeed, "[c]ourts routinely grant equitable tolling in the FLSA collective action context to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of collective actions." Antonio-Morales v. Bimbo's Best Produce, Inc., 2009 WL 1591172, at *1 (E.D. La. Apr. 20, 2009) (collecting cases). The whole point of notice, as explained in Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989), is to let employees know they have a claim, because it is recognized that employees generally will not be aware of their claims, and notice furthers the remedial effect of the FLSA.

At bottom, equitable tolling is manifestly warranted for these Opt-in Plaintiffs, and the Court should permit them to proceed in this matter.

## II. ARGUMENT

As Plaintiff's Memorandum of Law Regarding Equitable Tolling (Dkt. 195) has explained in detail, equitable tolling of the Opt-in Plaintiffs' claims is amply warranted in this matter, given the fact that the Court did not authorize Plaintiff to issue notice of this case to potential opt-ins until nearly four-and-a-half years after Plaintiff initially submitted his conditional certification motion. Defendants, however, wrongly argue that the Court should instead focus only on each opt-in plaintiff's individual circumstances and decline to apply equitable tolling. Defendants' argument should be rejected.

To begin, Defendants focus narrowly on two factors in determining whether equitable tolling is appropriate here – whether the Opt-in Plaintiffs were able to establish (on an individual level) that they were reasonably diligent in asserting their claims and whether extraordinary circumstances prevented them from asserting their claims within the FLSA's limitations period. While the Court has indicated its proclivity toward that approach, see Memorandum Order at 3-4, Dkt. 161, Plaintiff respectfully maintains that this analysis is unduly myopic.

Indeed, the First Circuit has adopted several factors in determining whether equitable tolling is justified, including: "(1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to a party opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit." Neves v. Holder, 613 F.3d 30, 36 n.5 (1st Cir.

3

2010) (quoting Jobe v. I.N.S., 238 F.3d 96, (1st Cir. 2001)).[1] Application of this five-factor test demonstrates that the Court should grant equitable tolling for all of the putative Opt-in Plaintiffs' claims.

### A. Opt-in Plaintiffs Lacked Constructive and Actual Notice of their Claims and Demonstrated Reasonable Diligence in Pursuing Those Claims

Defendants argue that Plaintiff failed to establish that the Opt-in Plaintiffs were diligent in pursuing their rights. Not so. Plaintiff, in his Memorandum of Law Regarding Equitable Tolling (Dkt. 195 at 14-16), explained that the Opt-in Plaintiffs acted with reasonable diligence by timely opting in upon receiving notice of their claims. It is entirely unreasonable to expect the Opt-in Plaintiffs to have acted on their claims prior to receiving notice of this lawsuit. To reiterate, the merits of this case turn on the proper application of complex overtime regulations and legal positions, and these employees were not in the position of being able to discern whether or not they had been misclassified as exempt from overtime. Similar concerns are often present in FLSA collective actions, and for that reasons courts typically act quickly in authorizing notice to be distributed to potential opt-ins who may have a claim in the case. See, e.g.,

---

[1]   See also Kelley v. N.L.R.B., 79 F.3d 1238, 1248 (1st Cir.1996) (quoting Kale, 861 F.2d at 752); Roberts v. TJX Companies, Inc., 2017 WL 1217114, at *7 (D. Mass. Mar. 31, 2017); Gonpo v. Sonam's Stonewalls & Art, LLC, 2017 WL 9673710, at *12 (D. Mass. Dec. 14, 2017), report and recommendation adopted in part, rejected in part, 2018 WL 1725695 (D. Mass. Apr. 9, 2018) (" The First Circuit considers five criteria for equitable tolling within this two-part standard established by the Supreme Court.").Many of the cases cited by Defendants explicitly utilize this five-factor test, a fact which Defendants ignore. See, e.g., Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 n.9 (1st Cir. 2009); Mercado v. Ritz–Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41 (1st Cir. 2005); Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 752 (1st Cir. 1988). Likewise, cases across several other Circuits have tolled claims in substantially similar contexts. The Sixth Circuit for example utilizes these same factors, and has specifically credited plaintiffs' assertions that, as here, ascertaining overtime exempt status was difficult prior to discovery in the case and thus plaintiffs there lacked notice. See Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 187 (6th Cir. 2008).

Larsen v. Clearchoice Mobility, Inc., 2011 WL 3047484, *2 (N.D. Ill. July 25, 2011) (explaining that "delaying the notification procedure . . . could have the undesirable effect of preventing potential opt-in plaintiffs from presenting their FLSA claims."). In this matter Plaintiff's Motion for the Issuance of Notice was stayed through the pendency of three motions to dismiss, and a stay during the First Circuit's (and then the Supreme Court's) consideration of Waters v. Day & Zimmerman NPS, Inc., No. 20-1831 (1st Cir.). As a result, the Opt-in Plaintiffs remained justifiably unaware of the claims in this case or of the fact that they may have had rights to pursue under the FLSA. Defendants raise several arguments to the contrary, each of which should be rejected.

Curiously, Defendants argue that, as a bright-line rule, the Opt-in Plaintiffs' awareness of this case is irrelevant to the question of whether they diligently asserted their rights, relying on Hintergerger v. Catholic Health Sys., 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009), and Alvarez v. BI Inc., 2018 WL 2288286, at *16 (E.D. Pa. May 17, 2018). However, those cases do little to support Defendants' argument. In Hintergerger, the court acknowledged that courts in the Second Circuit had found tolling appropriate during "a court-imposed stay pending the Court's resolution of a dispositive motion . . . ." See Hintergerger, 2009 WL 3464134, at *14 (citing Lee v. ABC Carpet & Home, 236 F.R.D. 193, (S.D.N.Y. May 22, 2006)). Thus, Hintergerger actually supports Plaintiff's argument, since the Court here stayed consideration of Plaintiff's motion to authorize notice for more than four years. Likewise, while Alvarez, concluded that a mere delay in opt-in plaintiffs' receiving notice of a FLSA collective action did not justify equitable tolling, this out-of-circuit case is an outlier.[2] Defendants' argument that

---

[2]   See, e.g., Charles v. Progressions Behavioral Health Services, Inc., 2018 WL 4924169, at *6 (E.D. Pa., Oct. 9, 2018) ( "Courts both in and outside of the Third Circuit have also

5

knowledge of a particular case is irrelevant to whether the Opt-in Plaintiffs acted with diligence is simply wrong.[3]

Next, Defendants contend that the Opt-in Plaintiffs' subjective unawareness of the right to overtime under these circumstances is irrelevant. Defendants generalize that mere ignorance of statutory rights is insufficient to justify equitable tolling. However, the crux of Plaintiff's argument is not just that they were unaware that the FLSA exists, or that it provides for the right to receive overtime in some circumstances – it is that these employees would have no way to know that they were misclassified by Defendants as non-exempt, as they were not attorneys and not equipped to engage in a complex legal analysis of back pay in light of a changing regulatory landscape.

In support of this argument, Defendants rely heavily on Kale v. Combined Ins. Co. of America, 861 F.2d 746, 752 (1st Cir. 1988). Once again, however, this case actually supports Plaintiff's argument. In Kale, the First Circuit explained that an

---

concluded that the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case" can justify equitable tolling) (quoting Yahraes v. Rest. Assocs. Events Corp., 2011 WL 844963, at *2) (E.D.N.Y. Mar. 8, 2011)); DePalma v. Scotts Co. LLC, 2017 WL 1243134, at *5 (D.N.J. Jan. 20, 2017) (approving and adopting magistrate judge recommendation that court delay alone supported equitable tolling); Ornelas v. Hooper Homles, Inc., 2014 WL 7051868, at *4 (D.N.J. Dec. 12, 2014) (noting that equitable tolling is appropriate due to court delay in resolving a motion for the issuance of notice, because tolling in such circumstances is "in the interests of justice."); Bosley v. Chubb Corp., 2007 WL 9604965, at *1 (E.D. Pa. Feb. 20, 2007) (finding court delay to be one of two factors supporting equitable tolling).

[3] Defendants also rely on Wanshen Li v. MW S. Station, Inc., 2017 WL 2407256, at *6-7 (D. Mass. June 2, 2017), for the proposition that the Opt-in Plaintiffs should have been aware of the violations asserted here. But Wanshen Li involved a straightforward unpaid wages claim, where the plaintiffs alleged that they were not paid for many hours that they worked. See id. Plaintiffs there had argued that they were unaware of their rights under the FLSA because of language barriers and because the employer had not posted mandated FLSA notice posters. See id. at 7. However, the plaintiffs also testified that they had signed off on timecards that they knew were false. See id. The facts of this case are easily distinguishable.

individual's ignorance that would support equitable tolling is "ignorance of the unlawfulness of the defendant's conduct that is proscribed by the statute." Id. Here, the Opt-in Plaintiffs could not reasonably be expected to have known, absent receiving notice, that they had been misclassified as exempt from overtime. Moreover, the court in Kale went on to explain that even if a plaintiff has no knowledge of his or her rights, and this "ignorance is due to misleading conduct by the defendant," then equitable tolling is justified. Here, Defendants took lengths to make it look like they were complying with the law without actually doing so. As Plaintiff alleged, in November 2016 Enterprise Holdings made the decision to reclassify its assistant branch managers as non-exempt from the FLSA's overtime requirements in light of new regulations. (Second Am. Compl. ¶ 24, Dkt. 92.) The assistant branch managers had every reason to think that Defendants had complied with the law. Indeed, in their memorandum and FAQs regarding the reclassification, Defendants insisted that they had complied with the law (when in fact they did not do so). Defendants frame this conduct as being "transparent" with the Opt-in Plaintiffs, but in effect, this "transparency" only served to obscure the unlawfulness of Defendants' intention not to remit back pay for the overtime that was owed prior to the reclassification.[4]

---

[4] Defendants also cite to Viciedo v. New Horizons Computer Learning Ctr., 246 F. Supp. 2d 886, 904 (S.D. Ohio 2003). Yet there, plaintiffs claimed that the employer had explicitly told them that they would not be receiving overtime, despite having earned it. The Court there held that that statement actually informed the plaintiffs of the existence of their claim; such statements from the employer did not "prevent the Plaintiffs from discovering the existence of their claim." Here, however, Defendants conduct was arguably calculated to prevent Plaintiffs from discovering their non-exempt status and therefore employees remained reasonable uninformed.

Furthermore, courts have emphasized the inherent difficulties present when determining whether a FLSA exemption was lawfully applied. In McLaughlin v Boston Harbor Cruis Lines, Inc., 419 F.3d 47, 48 (1st Cir. 2005), the First Circuit reversed a 12(b)(6) order dismissing a case since questions of application of the FLSA's overtime exemptions are fact intensive. See

Defendants argue further that the fact that the FLSA exists is, alone, sufficient to put employee on constructive notice of their rights. Were that the case, then equitable tolling would **never** be appropriate in FLSA cases, which is obviously not the case.[5] In support of this proposition, Defendants cite the unpublished decision Archer v. Sullivan Cty. Tenn., 129 F.3d 1263, 1997 WL 720406, at *4 (6th Cir. 1997). Subsequent courts have forcefully rejected Archer's conclusion. See, e.g., Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 188 (6th Cir. 2008) (implicitly rejecting Archer and applying equitable tolling where an employee was unable to determine her exempt or non-exempt status until discovery had taken place); Thompson v. Direct General Consumer Prods., Inc., 2014 WL 884494, at *8 (M.D. Tenn. Mar. 5, 2014) (explaining that Archer "suffers from several logical deficits" including that it would mean that all plaintiffs are on constructive notice of the FLSA, rendering the "equitable-tolling inquiry into notice-related factors meaningless"); Asp v. Milardo Photography, Inc., 573 F. Supp. 2d 677, 697-98 (D. Conn. 2008) (describing Archer as being "in the minority opinion"); Baden-Winterwood, 484 F.Supp.2d at 828 ("[E]quity demands that this Court

---

also Walsh v. Unitil Serv. Corp., 57 F.4th 353, 359 (1st Cir. 2023) (reversing a grant of summary judgment with regard to the application of the FLSA's administrative exemption, as it was a question of fact); Tuck v. Shroyer, 2022 WL 17345229, at *5 (D.N.H. Nov. 30, 2022) ("To determine whether a person is an administrative employee, the court must undertake an extensive, fact-intensive analysis and consider all the circumstances of a person's employment, relating their job functions to the purposes of the company for which they work."); Hobson v. Local 689, Amalgamated Transit Union AFL-CIO, 2022 WL 3028073, at *2 (D. Md. Aug. 1, 2022) (rejecting argument at motion to dismiss stage that plaintiff was an administrative employee as a matter of law and pointing to absence of facts in the complaint demonstrating the plaintiff's primary duties); Moran v. GTL Const., LLC, 2007 WL 2142343, at *3 (S.D.N.Y. July 24, 2007) ("Because the burden of proving that the plaintiff is an exempt employee falls on the defendant and requires an examination of the totality of the facts, the court cannot decide, as a matter of law and based solely on information from Plaintiff's complaint, that Plaintiff is an exempt administrative employee.").

5       Nor would the issuance of notice itself in FLSA cases ever be necessary.

give little weight to the fact that the mere existence of the FLSA placed Plaintiffs on constructive notice of [it]").[6]

So too should the Court reject Defendants' contention that the Opt-in Plaintiffs were aware of the facts underlying their claims, which were purportedly sufficient to trigger a duty to inquire as to the legality of their compensation. Defendants rely on Sandoz v. Cingular Wireless, L.L.C., 700 F. App'x 317, 321 (5th Cir. 2017), but there, the court held that the timesheets and paycheck memos given to employees triggered a duty to inquire why their pay fell below the minimum wage, because the records excluded hours that the employees had worked. In contrast, this case does not concern a simple and clear minimum wage violation.[7]

---

[6] Defendants also insist that the fact that they posted wage-hour rights posters at their branches serves as constructive notice to the opt-in plaintiffs. Notably, Defendants did not include a copy of this poster as an exhibit to their brief, leaving the Court to surmise which posters they refer to. Presumably, Defendants refer to the "FLSA Minimum Wage Poster," WH1088 REV 07/16 (attached as Exhibit A). While this poster mentions overtime, it goes no further than mentioning that a right to overtime exists and that "Certain occupations and establishments are exempt from the…overtime pay provisions." Moreover, these posters are required to be posted in all workplaces, and courts nevertheless have granted equitable tolling even where the employer has displayed the poster. See Kutzback v. LMS Intellibound, LLC, 233 F. Supp. 3d 623, 630 (W.D. Tenn. Feb. 10, 2017).

[7] See also Kennedy, 2021 WL 8442021, at *4 ("Dissimilar to the plaintiffs in Sandoz who had unambiguous and explicit notice in the form of their paychecks that they were allegedly being paid below minimum wage, potential opt-in plaintiffs in this case were paid a day-rate and are not expected to know: 1) the intricacies distinguishing independent contractors and employees under the FLSA; 2) that they were not receiving sufficient overtime pay; and 3) being misclassified and not receiving overtime pay may constitute a violation under the FLSA."); Klick, 509 F. Supp. 3d at 957 ("[I]n contrast to the dicta in the non-binding Sandoz opinion, district courts often consider the diligence exercised by the plaintiff bringing the action rather than only or even primarily the diligence (or lack thereof) of the potential opt-in plaintiffs.") (internal citations omitted).
   Defendants assert that Plaintiff's arguments are fatal to his assertion that Defendants' FLSA violations were willful, in that Plaintiff argued that even Defendants may have been unsure as to how the new FLSA regulations would ultimately cohere. To the contrary, Plaintiff argued that Defendants willfully violated the FLSA because it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Defendants at the very least knew that it was

Contrary to Defendants' argument, numerous cases have applied equitable tolling in the more complex context of employees advancing claims that turn on the application of the FLSA's exemptions. For example, in Blake v CMB Const., the court held that equitable tolling was appropriate where the employer "engag[ed] in a general course of conduct likely to confuse administrative staff employees with regard to their overtime compensation rights," including "misleading plaintiff with regard to her 'salaried' employment status" and "failing to correct the obvious confusion concerning administrative staff overtime pay rights under the Act . . . ." 1993 WL 840278, at *6 (D.N.H. Mar. 30, 1993); see also Kennedy, 2021 WL 8442021, at *4. At bottom, given the complex nature of the claims in this case, the Court should find that the Opt-in Plaintiffs acted with diligence.

### B. The Delay in Notice of this Case is an Extraordinary Circumstance that Justifies Equitable Tolling

Defendants contend that the delay in the issuance of notice in this case does not amount to extraordinary circumstances that justify equitable tolling. The Court should reject this argument. Plaintiff moved for the Court to authorize the issuance of notice on the very same day the case was filed, December 21, 2017, and it was not ultimately ruled upon until June 28, 2022 (Dkt. 161). Courts across the country have held that these circumstances are extraordinary and support equitable tolling.

In addition to those cases cited in Plaintiff's Memorandum Regarding Equitable Tolling (Dkt. 195 at 10-13),[8] other courts have similarly regarded court delays on

---

advisable to reclassify their assistant branch managers, but intentionally declined to provide backpay despite the fact that the assistant branch manger's job duties did not change.

[8] Defendants suggest that Plaintiffs incorrectly cited the Supreme Court's Menominee Indian Tribe of Wisconsin v. United States, 577 U.S. 250, 256, 136 S. Ct. 750, 756, 193 L. Ed. 2d 652 (2016). However, Plaintiff cited this case for the proposition that the extraordinary

10

conditional certification motions as circumstances outside of the parties' control, and therefore proper grounds for equitable tolling. See, e.g., Ferguson v. Texas Farm Bureau, 307 F. Supp. 3d 577, 582 (W.D. Tex. 2018) (tolling FLSA collective action claims after parties waited 10 months for conditional certification); Davis v. Flare Ignitors & Rentals, Inc., 2012 WL 12539328, at *2 (W.D. Tex. Mar. 19, 2012) (holding that because the motion was pending for eight months, "the Court finds it equitable—and therefore orders—that the statute of limitations as it applies to any additional opt-in plaintiffs is tolled from the date on which this motion was filed…."); Shidler v. Alarm Security Group, LLC, 919 F.Supp.2d 827, 831 (S.D. Tex. 2012) (equitable tolling granted where an agreed motion for conditional certification was pending for seven months). It simply is misleading for Defendants to claim that "[this] argument… has been routinely rejected as "unavailing" by courts in this Circuit and others."); Hernandez v. Caviness Packing Co., 2008 WL 11183755, 2008 U.S. Dist. LEXIS 121617 (N.D. Tex. 2008) (tolling FLSA limitations period for entire nine month pendency of motion to certify collective action as time pending was not attributable to the parties; Hinkle v. Phillips 66 Co., 2020 WL 10352343, at *2 (W.D. Tex. Dec. 30, 2020) (tolling FLSA collective action claims due to more than a year wait for conditional certification).[9]

---

circumstance prong for equitable tolling as one beyond the plaintiff's control that stood in his way and prevented timely filing, and not, as Defendants interpreted, for a case where tolling was granted. Defendants also inaccurately read Holliday v. J S Express Inc, 2013 WL 2395333, at *8 (E.D. Mo. May 30, 2013), and Plaintiff's interpretation of its holding. There, although tolling was not granted for a portion of the requested period, it *was* granted for the four-month period in which the court considered the pre-trial motion, as Plaintiff accurately stated. See id. ("However, the Court will permit tolling for the time necessary to consider this pre-trial Motion. Therefore, the Court will toll the statute of limitations from January 15, 2013, when Plaintiffs filed their certification Motion, until the sixty-day notice period begins to run.").

[9]   Defendants' reliance on Sandoz, 700 F. App'x at 321, is unavailing. The Sandoz court acknowledged that litigation delays in fact can constitute an extraordinary circumstance for the purposes of equitable tolling: "We do not hold that protracted litigation can never constitute an

11

Finally, Defendants rely on Pike v. New Generation Donuts, LLC, 2016 WL 707361, at *6 (D. Mass. Feb. 20, 2016), for the proposition that where plaintiffs are in large part responsible for litigation delays, equitable tolling is inapplicable. Yet in Pike, unlike here, the court denied equitable tolling in large part because plaintiffs there failed to plead a collective action and request opt-in notices until three years after the initial complaint and because plaintiffs jointly stipulated to a stay. See Pike, 2016 WL 707361, at *6. Here, however, Plaintiff indicated his intention to bring a collective action from the beginning and moved for the Court to authorize the issuance of notice on the very same day the case was filed. [10]

---

extraordinary circumstance . . . ." Id. Defendants also to cite to Roberts v. TJX Companies, Inc., 2017 WL 1217114, at *8 (D. Mass. Mar. 31, 2017). However, in that case, the court simply declined to address equitable tolling prior to determining which (if any) untimely individuals would elect to opt in. See id. Additionally, Defendants rely on Tidd v. Adecco USA, Inc., 2008 WL 4286512, at *5 (D. Mass. Sept. 17, 2008), and Titchenell v. Apria Healthcare Inc., 2012 WL 3731341, at *7 (E.D. Pa. Aug. 29, 2012), as cases that refused to grant equitable tolling due to litigation delays. However, those cases are out of step with the broad remedial purpose of the FLSA. See Zhang v. Ichiban Grp., LLC, 2020 WL 1030651, at *7 (N.D.N.Y. Mar. 3, 2020) (noting that equitable tolling issues "often arise as to individual opt-in plaintiffs", and that allowing equitable tolling is "[i]n keeping with the FLSA's broad remedial purpose . . . .").

[10]   Defendants fault Plaintiff for not filing a motion for equitable tolling earlier in the case. However, this Court specifically deferred that issue until after the conditional certification motion was considered, as the Court believed that resolving it before the Opt-in Plaintiffs may be an impermissible advisory opinion. See Memorandum and Order at 8-9, Dkt. 126.
  Plaintiff made clear throughout this case his intent to seek notice for Opt-Ins and equitable tolling.  Plaintiff raised this issue at the very outset of the case when opposing Defendants' motion for a stay (Dkt. 30) and in seeking to obtain discovery prior to having to oppose Defendants' summary judgment motion (Dkt. 34). Plaintiff again raised the tolling issue during the hearing of September 20, 2018 (Hearing Tr. at 53-55, Dkt. 57), and the Court indicated that the issuance of notice (which would then implicate the tolling issue) was not appropriate until the confines of the putative class were decided. After the case was permitted to proceed on the Second Amended Complaint, the parties submitted a joint statement on December 3, 2020 (Dkt. 107), in which Plaintiff proposed that the parties address equitable tolling as a part of supplemental briefing on Plaintiff's motion for the issuance of notice. Plaintiff reiterated this request in a second joint statement submitted on February 17, 2021 (Dkt. 114). On September 2, 2021, the Court adopted Plaintiff's proposal. See Memorandum and Order at 7-9, Dkt. 126. Then on June 28, 2022, the Court granted conditional certification but declined to decide the issue of equitable tolling until the Opt-in Plaintiffs had been provided notice and given the opportunity to opt in to the case. See Memorandum and Order at 3-5, Dkt. 161.

12

Defendants also assert that equitable tolling is inappropriate since the Court found the pleadings in the initial Complaint and the First Amended Complaint to be insufficient to support joint employer allegations. While Plaintiff respectfully maintains that the Court was incorrect on this point, regardless it should have no bearing on the ability to invoke equitable tolling.[11] Indeed, in Hughes, 542 F.3d at 189, the court held that deficiencies that led a plaintiff to seek leave to amend a complaint did not serve as grounds to punish that plaintiff when later seeking tolling.[12]

### C. Defendants Would Not Be Prejudiced by Equitable Tolling Claims They Were Aware of Since the Commencement of This Case

In determining whether to allow equitable tolling, courts also examine what prejudice a defendant would suffer.[13] See Neves, 613 F.3d at 36 n.5. Defendants do not

---

[11]    Defendants' citation to Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005), is inapposite. In that case, the plaintiff failed to file an EEOC charge as a predicate to her Title VII suit, even though she filed a separate charge alleging age discrimination. The Court held that she had failed to exhaust administrative remedies for her Title VII claim and that, under those circumstances, she could not invoke equitable tolling.

[12]    Defendants assert that the Court acted promptly on the motions to dismiss Plaintiff's initial and first amended complaints, but the facts belie that assertion. The Court did not enter its decision permitting Plaintiff to proceed on his Second Amended Complaint as the operative pleading until nearly three years after this case was filed, November 13, 2020 (Dkt. 103), and even then, Defendants filed a Motion for Reconsideration (Dkt. 106), which the Court did not decide until September 2, 2021 (Dkt. 126).

[13]    Defendants suggest that, if equitable tolling is permitted, they would get to attack its application again after doing full discovery on each of the 1,192 Opt-in Plaintiffs. Given that the rationale for equitable tolling applies equally across the board, Defendants are incorrect – there is nothing that discovery could uncover that would change the basic rationale for allowing equitable tolling here. Moreover, Defendants' assertion that they have the right to conduct discovery on every single Opt-in Plaintiff is untrue. Courts routinely limit discovery to small portion of large collective actions, in order to obtain the economy that the FLSA collective action mechanism envisions. Flood v. Carlson Restaurants Inc., 2016 WL 322114 (S.D.N.Y. June 7, 2016) (ordering depositions of less than 1% of a 4500 person collective); Scott v. Bimbo Bakeries USA, Inc., 2012 WL 6151734 at *5–*6 (E.D. Pa. Dec. 11, 2012) (permitting depositions of 3% of 650 opt-ins); Rindfleisch v. Gentiva Health Servs., Inc., 2011 WL 7662026, at *1–2, 5 (N.D. Ga. Dec. 29, 2011) (permitting written discovery of 5% of the approximately 1,100 opt-ins and depositions of 3%); Craig v. Rite Aid Corp., 2011 WL 9686065, at *3-*5 (M.D. Pa. Feb. 7,

13

even attempt to show that they would suffer any meaningful prejudice should equitable tolling be applied, meaning this factor supports tolling. See Krua v. Price, 2023 WL 288377, at *4 (D. Mass. Jan. 18, 2023) ("Here, Defendants would not be prejudiced by the Court's exercise of its equitable tolling factor, as Rev. Krua had put them on notice of his equal-pay claims well in advance of statutory deadline.").[14]

### D. Equitable Tolling Applies to All Putative Opt-In Plaintiffs

In addition to the 1,186, Opt-in Plaintiffs who submitted declarations containing the same language, Defendants argue that the six Opt-in Plaintiffs who submitted personalized declarations cannot benefit from equitable tolling (Dkt. 186-1 at 291, 331, 372, 450, 882, 957-62).[15] Those six Opt-in Plaintiffs should benefit from equitable tolling for the same reasons that the rest of the Opt-in Plaintiffs should. Defendants distort these declarations to suggest that the Opt-in Plaintiffs were aware of their potential legal claims. Defendants are wrong. For example, the declaration of Traci Dowd (Dkt. 186 at

---

2011) (limiting discovery to approximately 4.5% of 1,073 opt-ins); Nelson v. Am. Standard, Inc., 2009 WL 4730166, at *3 (E.D. Tex. Dec. 4, 2009) (limiting written discovery to 7% of 1,328 opt-ins).

[14] See also Gray v. Phillips Petroleum Co., 858 F.2d 610, 616 (10th Cir.1988) (tolling statute of limitations where defendant did not show that any "significant prejudice" would result from allowing plaintiffs to proceed and defendant was "fully apprised" of the plaintiffs' claims); Thompson v. Direct Gen. Consumer Prod., Inc., 2014 WL 884494, at *9 (M.D. Tenn. Mar. 5, 2014) (finding insufficient prejudice to bar equitable tolling where defendant was on notice of the collective action since the initial complaint); Baden-Winterwood, 484 F.Supp.2d at 828-29 (defendant not prejudiced because it "had full knowledge that the named Plaintiff brought the suit as a collective action on the date of the filing" and "was fully aware of its scope of potential liability."); Kutzback, 233 F. Supp. 3d 623, 630-31 ("Plaintiffs assert that Defendants were aware of the potential scope of their liability upon the filing of the Complaint, and courts have held that such awareness is sufficient to conclude that they are not prejudiced by equitable tolling.").

[15] Defendants argue that Plaintiff waived argument as to these individuals by not discussing them specifically in his initial brief – however, as Plaintiff explained, there is no difference between any of the Opt-in Plaintiffs who submitted declarations (including these six) that would justify treating them differently with respect to equitable tolling.

14

291) states her hours of work and that she did not receive an overtime premium – it does not state that she was previously aware that her misclassification as non-exempt might have entitled her to overtime. In fact, the declaration of Joy Epps goes so far as to state that she did not realize her potential claim because of representations made by Defendants' HR department and leadership (Dkt. 186-1 at 331).[16] Likewise, Rachel Free attested that her managers never gave her a straight answer regarding her pay and that she was unaware of how to address any exemption status. (Dkt. 186-1 at 372.) Contrary to the picture that Defendants attempt to paint, although some of these declarants express disappointment with the wages they earned, they were not aware that unlawful conduct had occurred. Likewise, while Defendants contend that there were no extraordinary circumstances asserted in their declarations, they faced the same circumstances as all of the opt-in plaintiffs, the significant delay in notice of this lawsuit.

## III. CONCLUSION

For the foregoing reasons, and for the reasons described in Plaintiffs' Memorandum of Law Regarding Equitable Tolling (Dkt. 195), the Court should apply equitable tolling to the claims of the Opt-in Plaintiffs in this matter.[17]

---

[16] Derek Shaw asserted simply that he always felt underpaid, which does not suggest that he was aware of a legal claim. (Dkt. 186-1 at 957-58.) In the declaration of Carol Miller Harry (Dkt. 186-1 at 450), she stated that she was unaware of the claims in this lawsuit until she received notice. Finally, in the declaration of Diana Rivera (Dkt. 186-1 at 882), she gives no indication that she was aware of the potential of this lawsuit.

[17] Defendants do not seem to disagree that if the Court finds equitable tolling inapplicable, then the Opt-in Plaintiffs should be dismissed with prejudice so that they can appeal. Defendants simply note that they "reserve all rights" rights with respect to this issue. See Defendants' Memorandum at 20 n.13, Dkt. 199.

Dated: March 7, 2023

        Respectfully submitted,
        MAMADOU ALPHA BAH, on behalf of himself
        and all others similarly situated,

        By his attorneys,

        /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan, BBO #640716
        Thomas Fowler, BBO #688521
        LICHTEN & LISS-RIORDAN, P.C.
        729 Boylston Street, Suite 2000
        Boston, Massachusetts 02116
        (617) 994-5800
        sliss@llrlaw.com
        tfowler@llrlaw.com

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that on March 7, 2023, I filed the foregoing document with this Court using the CM/ECF system. This system sends notifications of such filing and service to all counsel of record.

        /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan