UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAMADOU ALPHA BAH,                )
        Plaintiff,                )
                                  )
        v.                        )    C.A. No. 17-12542-MLW
                                  )
ENTERPRISE RENT-A-CAR COMPANY     )
OF BOSTON, LLC, and               )
ENTERPRISE HOLDINGS, INC.,        )
        Defendants.               )

MEMORANDUM & ORDER

WOLF, D.J.                                    October 24, 2023

I.   SUMMARY

      Plaintiff Mamadou Alpha Bah was an assistant branch manager
for Enterprise Rent-A-Car Company of Boston, LLC ("ERAC Boston").
He has brought individual and collective claims against defendants
ERAC Boston and Enterprise Holdings, Inc. ("EHI") under the Fair
Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §201, et seq,
alleging that the defendants violated the FLSA when they failed to
pay overtime to assistant branch managers until November 27, 2016.
On June 28, 2022, the court conditionally certified a nationwide
collective and authorized Bah to issue notice to putative class
members. Mem. & Order (Dkt. No. 161).

      The FLSA imposes a two-year statute of limitations generally,
and a three-year statute of limitations if a defendant's violation
of the FLSA was willful. 29 U.S.C. §255(a). In an FLSA collective
action, the limitations period continues to run against each

1

individual plaintiff until that plaintiff files a written opt-in consent. 29 U.S.C. §256(b); 29 C.F.R. §790.21(b)(2)(II). Here, using the most generous possible three-year statute of limitations, the limitations period ran on January 1, 2020.[1] That is 954 to 1027 days before the putative plaintiffs filed their opt-in consent forms.

For their claims to survive, the putative opt-in plaintiffs must persuade the court to apply equitable tolling, a doctrine that "extends statutory deadlines in extraordinary circumstances for parties who were prevented from complying with them through no fault or lack of diligence of their own." Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010). It is a rare remedy that courts are to apply sparingly. Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 (1st Cir. 2009).

In general, equitable tolling requires a court to perform an individualized "'fact intensive' inquiry." Holland v. Fla., 130 S.

---

[1]    An FLSA cause of action accrues on a payday-by-payday basis. See 29 C.F.R. §790.21(b). The court has determined that "it appears that the last paycheck that allegedly violated [the FLSA] was provided to assistant branch managers on December 2, 2016." Order (Dkt. No. 103). The longest possible statute of limitations for FLSA claims is three years. 29 U.S.C. §255(a). That would make the statute of limitations deadline December 2, 2019. The court tolled 30 days at the beginning of the case. Jan. 10, 2018 Order (Dkt. No. 13). Therefore, the correct statute of limitations deadline is January 1, 2020.

Ct. 2549, 2565 (2010). Accordingly, on June 28, 2022, this court ordered that:

> After putative opt-in plaintiffs are identified, the court will decide individually whether the doctrine of equitable tolling operates to permit each to maintain his or her claim despite the usual two-year or three-year statute of limitations. . . . Any person wishing to opt-in shall . . submit an opt-in consent form, and provide affidavits and evidence supporting his or her contention that: (a) there were extraordinary circumstances that prevented him or her from pursuing his or her claim before either or both statutory deadlines; and (b) he or she was reasonably diligent in pursuing his or her rights.

Mem. & Order (Dkt. No. 161).

For the reasons described below, the declarations do not provide facts sufficient to prove that any putative opt-in plaintiff was reasonably diligent or that there were extraordinary circumstances preventing him or her from asserting his or her claim in a timely manner. Bah's argument that the court should take a categorical approach to equitable tolling that disregards the individual facts of the putative plaintiffs is unpersuasive, at least in the circumstances of this case.

## II.   THE APPLICABLE STANDARDS

To receive the benefit of equitable tolling, a plaintiff bears the burden of demonstrating that he has satisfied two required elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Neves, 613 F.3d at 36 (quoting Pace v. DiGuglielmo, 125 S.Ct. 1807

(2005)). These "two components" are essential elements, "not merely factors of indeterminate or commensurable weight." Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct. 750, 756 (2016). In addition, the First Circuit has identified five criteria that courts may consider "as factors within the Supreme Court's two-part standard:"

> (1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to a party opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit.

Neves, 613 F.3d at 36 n.5.

Equitable tolling's "diligence prong" covers "affairs within the litigant's control." Menominee, 136 S. Ct. at 756. A putative plaintiff's knowledge of the facts supporting his claim and subsequent failure to act indicate that the plaintiff has not been diligent. Sandoz v. Cingular Wireless, L.L.C., 700 Fed. App'x. 317, 321 (5th Cir. 2017); Wanshen Li v. MW S. Station, Inc., No. CV 15-12961-FDS, 2017 WL 2407256, at *7 (D. Mass. June 2, 2017).

The "extraordinary-circumstances prong" of the equitable tolling test covers "matters outside [a litigant's] control." Menominee, 136 S. Ct. at 756. One such basis for equitable tolling is a plaintiff's "excusable ignorance" of his statutory rights. Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 752 (1st Cir. 1988). Excusable ignorance does not apply any time a plaintiff is subjectively unaware of his rights. Id. Rather, it is reserved for

4

situations when outside circumstances, such as the employer's misconduct or failure to post required notices, caused the plaintiff's ignorance. Id. Excusable neglect does not obviate the diligence requirement. In deciding whether to order equitable tolling, a "court should also assess any countervailing equities against the plaintiff. For example, did he diligently pursue his claim . . .." Id. at 753.

A court deciding whether a plaintiff's ignorance is excusable "should initially determine whether the plaintiff had either actual" knowledge – that is, whether he had learned or been told of his rights – or "constructive knowledge" – that is, knowledge that can be attributed to him because, for example, his employer posted required notices. Id. at 752-53. In the context of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621, et seq, the First Circuit has stated that the plaintiff need only be aware that the defendant's conduct is proscribed by statute for example, that older workers are protected from discrimination and need not be aware of "all the filing periods and technicalities contained in the law." Id. at 754. In Gonpo v. Sonam's Stonewalls & Art, LLC, No. 3:16-CV-40138-MGM, 2017 WL 9673710 (D. Mass. Dec. 14, 2017) (Robertson, M.J.), report and recommendation adopted in relevant part, rejected in part, No. CV 16-40138-MGM, 2018 WL 1725695 (D. Mass. Apr. 9, 2018) (Mastroianni, J.), the court considered excusable neglect as a ground for equitable tolling in

5

an FLSA case. Id. at *14. The court determined that the plaintiffs had not, as Kale requires, established that they lacked actual and constructive notice. Id. at *13-14. More specifically, their affidavits did not state that their employer had failed to post required FLSA notice in the workplace. Id. at *14. This court finds Gonpo to be correctly reasoned.

III.    BAH'S ARGUMENT

Here, 1,475 putative plaintiffs filed opt-in consent forms. 1,192 filed declarations concerning their grounds for equitable tolling.

Bah now argues that rather than performing an individualized inquiry into whether the facts represented in the declarations demonstrate that the putative plaintiffs acted with diligence and faced extraordinary circumstances, as the court indicated it intended to do, the court should perform a categorical analysis. Bah argues that the requisite diligence is that of the named plaintiff and his counsel, not the putative plaintiffs. He further contends that the passage of time between filing the motion for conditional certification and issuance of notice (the "Motion for Notice"), and the court authorizing notice to be sent, is an extraordinary circumstance that warrants equitable tolling for every putative plaintiff. Bah argues that this approach is justified because the FLSA is complicated, and its class action

procedure, which is also employed in ADEA cases, see Hoffmann-La Roche Inc. v. Sperling, 110 S. Ct. 482, 486 (1989),  is unique.

IV.  DISCUSSION

A. The Individualized Inquiry.

The putative plaintiffs' declarations do not prove that their unique facts constitute the requisite diligence or extraordinary circumstances to justify equitable tolling. In this case, 1,192 of the 1,475 putative plaintiffs filed declarations stating their grounds for equitable tolling.

The court does not find equitable tolling to be justified for the 285 putative plaintiffs who did not file declarations. The court ordered them to do so. June 28, 2022, Mem. & Order (Dkt. No. 161). They failed to comply. There is no factual basis for a finding of equitable tolling concerning them.

The majority of the putative plaintiffs - 1,186 - filed what the parties call "Template Declarations," evidently drafted by Bah's counsel, that present identical grounds for tolling. The court has considered the declarations of Kyle Kwoka and Caroline Lopez, who the parties agreed are representative of the putative plaintiffs who filed Template Declarations. Each Template Declaration states that the putative plaintiff was not aware of his or her potential claims or this case. See e.g., Kwoka Decl. (Dkt. No. 186-1 at 594). They say nothing else. The court interprets the Template Declarations to, at best, be an effort to

7

support an argument for excusable neglect. However, the Template Declarations do not indicate that the defendants misled the putative plaintiffs or failed to post required notices. Moreover, as explained earlier, excusable neglect does not eliminate the requirement that a putative plaintiff be reasonably diligent. See Menominee, 136 S. Ct. at 756; Neves, 613 F.3d at 36. The Template Declarations are silent as to diligence. They do not justify equitable tolling for the 1,186 putative opt-in plaintiffs who filed them.

Six of the putative plaintiffs submitted unique declarations. Bah failed to obey the order to address in his memorandum why each of these declarations justify equitable tolling. Therefore, the court may consider the argument waived and disregard the declarations. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); DiGiovanni v. Jani-King Intern., Inc., 968 F. Supp. 2d 447, 450 (D. Mass. 2013). Moreover, the fact that these declarations are unique does not mean that they provide more information supportive of equitable tolling than the Template Declarations. Indeed, Bah agreed that they are not materially different than the Template Declarations, and that if the Template Declarations were insufficient, then so too were the unique declarations. See Oct. 12, 2023 Tr. at 27:23-28:2.

8

Traci Dowd's declaration (Dkt. No. 186-1 at 291), contains even less information than the Template Declarations. The most detailed declaration is from Joy Epps, who states:

> I was paid base salary, plus a bonus, based on how the branch did for that month. I was not paid any time and a half, as each week I worked 50-60 hours weekly. I didn't file a claim before the dates mentioned in the letter, 12/2/2018 or 12/2/2019 because I was under the assumption per our HR department and leadership at the time that we were base salary plus bonus employees.

Epps Decl. (Dkt. No. 186-1 at 331). This information is insufficient to prove either the required diligence or excusable neglect. Epps' statements do not show that she lacked constructive notice because the defendants failed to post required notices. Cf. Kale, 861 F.2d at 752 (noting that "there may be a valid claim for equitable tolling" when an employer fails to conspicuously post legally required notices). Moreover, the defendants submitted an affidavit stating that there was a practice of posting required FLSA notices at the location where Epps worked, Bennett Decl. (Dkt. No. 199-4), and filed comparable declarations concerning the posting of FLSA notice at the locations where Kwoka, Lopez, and each of the other assistant branch managers with individualized declarations worked. Further, Epps's declaration does not state that she lacked actual notice because the defendants misled her. She instead states that HR and leadership told her how they compensated her position. That is an accurate factual statement. Statements that "simply inform the Plaintiffs of facts that might

9

give rise to their claims" are not misleading employer conduct. Viciedo v. New Horizons Computer Learning Ctr., 246 F. Supp. 2d 886, 904 (S.D. Ohio 2003). In any event, the fact that Epps' declaration does not provide any information concerning her diligence is fatal to her request for equitable tolling. Therefore, the six individual declarations, including Epps's, are insufficient to justify equitable tolling.

## V.   THE CATEGORICAL THEORY

Under the existing jurisprudence, the equitable tolling inquiry could end here. However, the court is nevertheless addressing Bah's argument that it should apply equitable tolling on categorical grounds. More specifically, Bah argues that the court should: (1) rely on the alleged diligence of the named plaintiff and his counsel rather than on the lack of diligence of the putative plaintiffs; and (2) hold that the time it took putative plaintiffs to receive notice was an extraordinary circumstance.

There is no binding authority that requires or encourages the court to take this approach. The court understands that the Supreme Court has emphasized the importance of efficiency in putative plaintiffs receiving notice of §216(b) class actions. Hoffmann-La Roche Inc. v. Sperling, 110 S. Ct. 482, 486 (1989). However, the Supreme Court has not said that the standard for the equitable tolling is different in FLSA cases or suggested that Bah's proposed

10

approach is permissible. The First Circuit has not addressed equitable tolling for FLSA class actions.

A single concurring opinion from the Sixth Circuit that provides some support for Bah's argument. Clark v. A&L Homecare & Training Ctr., LLC, 68 F.4th 1003, 1011 (6th Cir. 2023) (Bush, J. concurring). Otherwise, the Fifth Circuit appears to be the only other circuit to have addressed the issue. In Sandoz v. Cingular Wireless, L.L.C., 700 F. App'x 317, 321 (5th Cir. 2017), the Fifth Circuit refused to apply equitable tolling despite protracted litigation, explaining that the proper inquiry is "whether an external obstacle 'prevented timely filing,' not on whether an external obstacle prevented timely filing in a specific suit." The Fifth Circuit further stated that when "an employee's own inaction relegates opt-in notice from a specific suit as the only means of discovering an FLSA violation, [it] will not transform routine litigation into an extraordinary circumstance." Id. at 321.

Some district courts have applied equitable tolling based on the time it took a court to issue notice and the named plaintiff's diligence. See, e.g., Bergman v. Kindred Healthcare, Inc., 949 F. Supp. 2d 852, 860 (N.D. Ill. 2013). Among these, some have found that the named plaintiff established the requisite diligence by promptly filing a motion for conditional certification and issuance of notice. See, e.g., Klick v. Cenikor Found., 509 F. Supp. 3d 951, 957 (S.D. Tex. 2020). Other district courts have

taken a contrary approach. See, e.g., Hintergerger v. Catholic
Health Sys., 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009). In
Alvarez v. BI Inc., 2018 WL 2288286 (E.D. Pa. May 17, 2018), the
court explained:

> in order for a plaintiff "to receive the benefit of
> equitable tolling" for a claim, he or she must have
> exercised [diligence] . . . . And while a potential opt-
> in plaintiff who has not received a court-approved
> notice may have no knowledge of the collective action,
> it cannot be said that a potential plaintiff had no
> knowledge of his or her claim or right to pursue that
> claim, either individually or collectively. . . .
> Tolling the statute of limitations for all potential
> opt-in plaintiffs, based only on delay in issuing a
> court-approved notice of the collective action, which
> will occur in every collective action, alters the
> statutory scheme and would be inconsistent with the
> directives of . . . the Supreme Court that equitable
> tolling be applied sparingly . . . . Accordingly, I
> conclude that Plaintiffs have not met their burden of
> demonstrating that equitable tolling . . . . However, my
> decision is without prejudice to any individual opt-in
> plaintiff seeking equitable tolling based on that
> individual's circumstances.

Id. at *16-17 (emphasis added).

Other judges in the District of Massachusetts have, upon
finding the established equitable tolling standard not satisfied
in FLSA cases, declined to adopt a categorical, non-individualized
approach to equitable tolling. Gardner v. Fallon Health & Life
Ins. Co., Inc., No. CV 4:19-40148-TSH, 2021 WL 4459525, at *6 (D.
Mass. Sept. 29, 2021) (Hillman, J.); Pike v. New Generation Donuts,
LLC, 2016 WL 707361, at *5-6 (D. Mass. Feb. 20, 2016) (Saylor,
J.); O'Donnell v. Robert Half Int'l, Inc., 534 F. Supp. 2d 173,

182 (D. Mass. 2008) (Gorton, J.); Roberts v. TJX Cos., Inc., 2017
WL 1217114, at *7-8 (D. Mass. Mar. 31, 2017) (Burroughs, J.). In
Tidd v. Adecco USA, Inc., 2008 WL 4286512, at *5 (D. Mass. Sept.
17, 2008) (O'Toole, J.), the court granted a motion to dismiss and
later granted the plaintiffs leave to amend to correct their
pleading failures. Id. at *1, *5. The court then conditionally
certified the collective and permitted notice to be sent to
putative plaintiffs. Id. at *5. However, the court refused to
categorically grant equitable tolling because:

> The plaintiffs have not alleged any extraordinary
> circumstance to warrant equitable tolling nor have they
> pointed to any wrongdoing by the defendants that would
> justify a tolling order. Indeed, the circumstances of
> this case are not substantially different from other
> FLSA cases, and acceptance of the plaintiffs' argument
> would essentially mean that equitable tolling should
> occur in every FLSA collective action, changing the
> principle of equitable tolling from the exception to the
> norm.

Id.

There is only one case, Pineda v. Skinner Services, Inc.,
2020 WL 5775160 (D. Mass. Sept. 28, 2020) (Saylor, J.), in which
a court in the District of Massachusetts applied tolling on
somewhat categorial grounds. Id. at *10. However, Pineda was a
unique case in which the court confirmed that it was applying
equitable tolling not because it was legally correct to do so, but
because the lack of clarity in one of its prior oral rulings had

caused the plaintiffs to reasonably rely on tolling. Id. at *10-11.

Consistent with the FLSA decisions of other judges in the District of Massachusetts and the First Circuit's general equitable tolling jurisprudence, this court does not find it appropriate, at least in the circumstances of this case, to categorically apply equitable tolling.

First, FLSA class actions are unusual in that the statute of limitations continues to run against each putative plaintiff until he or she opts in. See 29 U.S.C. §216(b). The reality in many FLSA cases is that the entire statutory period might pass before putative plaintiffs receive court-authorized notice of the collective action. The Supreme Court has encouraged district judges to become involved early in collective action litigation to minimize the risk of delay in issuing notice as promptly as possible. See Hoffmann, 110 S. Ct. at 486. This court did that. However, even if notice is not sent as quickly as a plaintiff would like, that alone does not justify disregarding the statutory scheme that Congress enacted. In addition to providing for notice to potential opt-in plaintiffs, Congress included a statute of limitations in the FLSA. Statutes of limitations often operate to bar valid claims. Despite this, equitable tolling remains a rare remedy. Neves, 613 F.3d at 36. Bah's proposed approach would make

14

equitable tolling common and disrupt the balance struck by Congress in enacting the FLSA. See id. That would not be appropriate.

Second, this court finds that the diligence of the putative plaintiffs, not the named plaintiff and his counsel, is the proper focus of the equitable tolling inquiry. In FLSA cases putative plaintiffs have the option to bring individual suits and are not bound by a judgment in the collective action unless they opt-in. Johnson v. VCG Holding Corp., 802 F. Supp. 2d 227, 233 (D. Me. 2011). They can also consent to opt-in to a case before the court authorizes the sending of notice. Roberts v. TJX Companies, Inc., No. 13-CV-13142-ADB, 2017 WL 1217114, at *8 (D. Mass. Mar. 31, 2017) (Burroughs, J.). Bah argues that the overtime issue here is so complicated that the putative plaintiffs could not have been expected to have taken any action to pursue their claims, and therefore their lack of diligence is irrelevant. However, courts regularly enforce statutes of limitations requiring individuals to have acted with diligence in a range of complex cases, including habeas cases, immigration cases, and discrimination cases. See, e.g., Neves, 613 F.3d at 37 (immigration case); Kale, 861 F.2d at 756 (discrimination case); Pace, 125 S. Ct. at 1814-1815(habeas case). The court is not persuaded that FLSA cases in general, or this case in particular, are so uniquely complex that individual plaintiffs are absolved of any responsibility for pursuing their claims diligently.

Moreover, even if Bah and his counsel's diligence was the focus for analysis, Bah was not reasonably diligent. Bah filed the Motion for Notice on December 21, 2017, the same day that he filed his initial complaint. Mot. for Not. (Dkt. No. 5). On February 15, 2018, the defendants filed their First Motion to Dismiss Bah's claims against EHI. 1st Mot. to Dismiss (Dkt. No. 24). Without EHI, there would be no §216(b) collective to certify because the employees of ERAC Boston are members of a separate class under Massachusetts state law. Therefore, the court decided to rule on the First Motion to Dismiss before ruling on the Motion for Notice and stayed briefing on the Motion for Notice. Mar. 1, 2018 Order (Dkt. No. 37). On September 17, 2018, the court allowed the First Motion to Dismiss the claims against EHI because of Bah's defective pleading and legal theory. Sept. 18, 2018 Order (Dkt. No. 56); see also Sept. 17, 2018 Tr. at 44:21-49:19 (Dkt. No. 57). The court then ruled that the motion for notice was moot since absent EHI there could be no §216(b) collective to certify or give notice of. See Order (Dkt. No. 56). Bah's counsel stated to the court that she understood there was no tolling in effect. Sept. 17, 2018 Tr. at 53:16-55:21 (Dkt. No. 57).

On October 15, 2018, Bah filed his First Amended Complaint, attempting to remedy his pleading defects and maintain claims against EHI. 1st Am. Compl. (Dkt. No. 63). Before Bah filed the First Amended Complaint, the defendants sent his counsel a letter

16

warning him that the factual allegations on which he was relying to assert his claims against EHI were untrue and that including them in the First Amended Complaint would violate Fed. R. Civ. P. 11. Oct. 1, 2018, Status Report (Dkt. No. 60). Bah failed to heed this warning. His First Amended Complaint contained the disputed allegations. On October 28, 2018, the defendants filed their Second Motion to Dismiss. 2nd Mot. to Dismiss (Dkt. No. 65).

The court did not hold a hearing on Second Motion to Dismiss until February 6, 2020, about 14 months after it was fully briefed. Prior to the hearing, the longest possible statute of limitations expired. Bah never filed a motion to toll the statute of limitations. He took no action on the issue. Therefore, the court did not consider tolling further before the limitations period expired.

At the February 6, 2020 hearing, rather than finding Rule 11 violations and sanctioning Bah's counsel, the court took the case under advisement and provided Bah the opportunity to withdraw his claims against EHI or to amend the First Amended Complaint. Feb. 6, 2020 Order (Dkt. No. 80).

Bah chose to amend and filed his Second Amended Complaint on March 16, 2020. 2nd Am. Compl. (Dkt. No. 92). That was about two and half months after the latest possible statute of limitations had expired. The defendants filed their Third Motion to Dismiss on March 30, 2020. 3rd Mot. to Dismiss (Dkt. No. 93). The court denied

it on November 13, 2020. Nov. 13, 2020 Order (Dkt. No. 103). Bah again made no request during this time to toll the statute of limitations. The court later ruled that it would decide conditional certification before analyzing equitable tolling. Sept. 2, 2021 Order at 8 (Dkt. No. 126). That decision could have had no effect on Bah's decision not to seek tolling before the statute of limitations expired and while the Second and Third Motions to Dismiss were pending.

As the First Circuit wrote in Neves, equitable tolling is reserved for circumstances where a litigant has "no fault or lack of diligence." 613 F.3d at 36. A party should not receive the benefit of equitable tolling due to its own errors. As a result of Bah's pleading errors, there was no operative compliant for which to authorize notice until after the statute of limitations had passed. It is not sufficient that Bah filed a Motion for Notice at the outset of the case that was denied as moot.

Third, looking to the second element of equitable tolling – extraordinary circumstances – even if some of the time that passed before notice was sent to the putative plaintiffs in this case was an extraordinary circumstance, not all of it was. The mere passage of time is not extraordinary. Unopposed filings and instantaneous decisions are not to be reasonably expected. Judges have many cases. Disputed matters require time for argument, analysis, and decision. Therefore, were the court to toll any time, it would not

toll the full amount between the filing of a motion and the court issuing a decision. See Thompson v. Direct Gen. Consumer Prods., 2014 WL 884494, at *10 (M.D. Tenn. Mar. 5, 2014). The court would instead consider the time it took for the parties to fully brief the motion or issue and then allocate a reasonable amount of time for the court to carefully consider and decide it.

Here, the putative plaintiffs would need the court to toll 954 to 1027 days, if there was a willful violation involving a three-year statute of limitations, for their claims to be timely. If the court were to add up all of the time that accrued between the parties completing briefing and the court issuing its decision during various phases of this litigation, and during the stay while Waters v. Day & Zimmerman NPS, Inc., 464 F. Supp. 3d 455 (D. Mass. 2020) was on appeal, there are at most 1191 days to toll. Even if the court were to toll some of this time, it would toll far less than the minimum 954 days that plaintiffs would need for any of their claims to be timely, given the unextraordinary fact that the court requires time to develop its decisions. This period is not an "extraordinary circumstance" warranting equitable tolling.

Fourth, the "absence of prejudice to a party opponent" is a factor that the First Circuit has said a court may consider within the Supreme Court's two-part test for equitable tolling. Neves, 613 F.3d at 36 n.5. The court finds that there would be prejudice to the defendants if the court were to grant the tolling that Bah

19

requests. "Statutes of limitations are primarily designed to assure fairness to defendants" and may "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Burnett v. New York Cent. R. Co., 85 S. Ct. 1050, 1054 (1965) (internal quotation marks omitted). The events that gave rise to the litigation in this case took place seven or more years ago. The defendants could not have predicted who, if anyone, would ultimately consent to opt in to this case and try to collect relevant evidence for a nationwide class. This contributes to the conclusions that it would be prejudicial to the defendants for the court to apply equitable tolling.

VI.   CONCLUSION

In summary, the court recognizes that it is desirable that notice to putative plaintiffs be issued as soon as reasonably possible after a FLSA case is filed. However, when a motion to give immediate notice is opposed and a motion to dismiss is filed, it is generally most appropriate for the court to decide the motion to dismiss before notice is issued because, among other things, if putative plaintiffs opt into a case that is ultimately dismissed, they may have been lulled into not bringing their own case, or opting into another collective action, before the statute of limitations expired.

20

When this court dismissed Bah's original complaint, there was no case in which putative plaintiffs could have joined.  Nor was there such a case after Bah belatedly decided to, in effect, withdraw his First Amended Complaint to avoid the risk of having Rule 11 sanctions imposed, which he should have long foreseen. The Second Amended Complaint, which included changes to avert that risk was filed after the longest possible statute of limitations had run.  It was only after the court denied the motion to dismiss the Second Amended complaint that there was finally a case of which the court could appropriately authorize notice to be given.

As explained earlier, while providing notice to putative plaintiffs is an important feature of the FSLA, Congress also deemed it important to include statutes of limitations in the FLSA, as it does in many other statutes.  The Supreme Court and the First Circuit have developed a clear standard for equitable tolling of such statutes of limitations. None of the putative plaintiffs have presented evidence to justify equitable tolling pursuant to that standard.

Bah is essentially advocating for a rule and a result that would often be inconsistent with the balance Congress struck in incorporating statutes of limitations in the FLSA, require this court to find that the standard articulated by the Supreme Court and First Circuit for all other types of cases does not apply in FLSA cases, and make equitable tolling in many FLSA case the rule

21

rather than the rare exception. This court doubts that it would ever be permissible or appropriate for a district court to do that.

In any event, in this case, where Bah's conduct in the litigation contributed greatly to the passage of time before notice was sent, and the form Template Declarations did not even address the elements for establishing equitable tolling articulated by the First Circuit in cases such as Kale, this court does not find Bah's argument for a categorical rule for FLSA cases to be persuasive.

VII.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1.     Bah's request for equitable tolling (Dkt. No. 195) is DENIED with prejudice. As there are no putative plaintiffs with timely claims who have consented to opt-in, the conditionally certified collective is DECERTIFIED.

2.     Bah shall, by November 2, 2023, file any motion for the court to issue a final judgment pursuant to Fed. R. Civ. P. 54(b) and/or grant leave to file an interlocutory appeal concerning this decision to deny equitable tolling. EHI and ERAC Boston shall, by November 21, 2023, file any reply. The court does not intend to grant leave to file a reply or sur-reply.

3.     The parties may proceed with discovery on the schedule they jointly proposed on October 20, 2023 (Dkt. No. 210).

4.    The parties shall order the transcripts of the October 11 and 12, 2023 hearings.


UNITED STATES DISTRICT JUDGE